**Case No. 23-2983**
(District of Nevada Court Case No. 2:21-cv-00680-APG-VCF)

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

NICOLLE FOSTER,

        Plaintiff - Appellant,

  vs.

CREDIT ONE BANK, N.A.,

        Defendant - Appellee.

_____

**APPEAL
FROM THE UNITED STATES DISTRICT COURT,
DISTRICT OF NEVADA**

**OPENING BRIEF
OF PLAINTIFF-APPELLANT NICOLLE FOSTER**

ROBERT P. SPRETNAK, ESQ.
The Law Offices of Robert P. Spretnak
8275 S. Eastern Avenue, Suite 200
Las Vegas, Nevada 89123
Telephone: (702) 454-4900
Attorney for Nicolle Foster, Plaintiff - Appellant

## **TABLE OF CONTENTS**

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUE PRESENTED FOR REVIEW . . . . . . . . . . . . 2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

I.     THE STANDARD OF REVIEW IS DE NOVO . . . . . . . . . . . . . . . . . . 18

II.    SUMMARY JUDGMENT SHOULD BE GRANTED ONLY WHEN
       THERE ARE NO GENUINE ISSUES OF MATERIAL FACT AND
       ALL INFERENCES HAVE BEEN DRAWN IN FAVOR OF THE
       NON-MOVING PARTY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

III.   THE DISTRICT COURT ERRED IN DECIDING THAT
       DEFENDANT'S INTERFERENCE WITH NICOLLE FOSTER'S
       FMLA RIGHTS WAS NOT "WILLFUL" . . . . . . . . . . . . . . . . . . . . . . . 20

IV.    THE DISTRICT COURT ERRED IN DECIDING THAT
       NO REASONABLE JURY COULD FIND THAT CREDIT ONE'S
       FIRING OF NICOLLE FOSTER EITHER WAS UNLAWFUL
       INTERFERENCE OR WAS UNLAWFUL RETALIATION
       FOR OBJECTING TO INTERFERENCE WITH
       HER FMLA RIGHTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

       A.     Ms. Foster Properly Pled a Claim for Unlawful Retaliation
              under the FMLA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

B.     Ms. Foster Put Forth Admissible Evidence to Support Claims Both for Unlawful Interference and for Unlawful Retaliation under the FMLA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  34

V.     THE DISTRICT COURT ERRED IN DECIDING THAT NICOLLE FOSTER'S DISABILITY CLAIMS WERE NOT ACTIONABLE . . . . .  47

A.     Ms. Foster Put Forth Sufficient, Admissible Evidence That She Was Subjected to Unlawful Discrimination Based on Her Psychological Disability . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  47

B.     Ms. Foster Put Forth Sufficient, Admissible Evidence of Unlawful Retaliation in Response to Her Complaints of Overt Discrimination Based on Her Psychological Disability . . . .  53

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  56

STATEMENT OF RELATED CASES REQUIRED BY CIRCUIT RULE 28-2.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  57

CERTIFICATE OF COMPLIANCE PURSUANT TO FED. R. APP. P. 32(a)(7)(C) AND CIRCUIT RULE 32-1 . . . . . . . .  58

## TABLE OF AUTHORITIES

**CASES**                                                                    **Page(s)**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . .  19

*Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193
    (10th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  44

*Bachelder v. Am. W. Airlines*, 259 F.3d 1112 (9th Cir. 2001) . .  29, 33, 37, 40-41

*Bell v. Clackamas County*, 341 F.3d 858 (9th Cir. 2003) . . . . . . . . . . . . .  44, 54

*Bodett v. CoxCom, Inc.*, 366 F.3d 736 (9th Cir. 2004) . . . . . . . . . . . . . . . . .  19

*Bragdon v. Abbott*, 524 U.S. 624 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  49

*Brown v. Shinseki*, 336 Fed. Appx. 591 (9th Cir. 2009) . . . . . . . . . . . . . . . . .  52

*Carrasco v. San Ramon Valley Unified School Dist.*, 258 Fed. Appx. 114
    (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  43

*Chaly-Garcia v. United States*, 508 F.3d 1201 (9th Cir. 2007) . . . . . . . . . . . .  18

*Cohen v. Fred Meyer, Inc.*, 686 F.2d 793 (9th Cir. 1982) . . . . . . . . . . . . . . . .  43

*Collings v. Longview Fibre Co.*, 63 F.3d 828 (9th Cir. 1995), *cert. denied*,
    516 U.S. 1048 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  52

*Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018 (9th Cir. 2006) . . . . .  54

*Davis v. Team Elec. Co.*, 520 F.3d 1080 (9th Cir. 2008) . . . . . . . . . . . . . . . . .  19

*Diaz v. Fort Wayne Corp.*, 131 F.3d 711 (7th Cir. 1997) . . . . . . . . . . . . . . . .  41

*Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236 (9th Cir. 2014) . . . . . . .  38

**CASES**                                                              **Page(s)**

*Freeman v. DirecTV, Inc.*, 457 F.3d 1001 (9th Cir. 2006) . . . . . . . . . . . . . . . 18

*Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217 (10th Cir. 2008) . . . . . . . . . . . . . 54

*Gleklen v. Democratic Cong. Campaign Comm., Inc.*, 199 F.3d 1365
    (D.C. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*Graves v. Finch Pruyn & Co.*, 457 F.3d 181 (2d Cir. 2006) . . . . . . . . . . . . . . 51

*Hazelett v. Wal-Mart Stores, Inc.*, 829 Fed. Appx. 197 (9th Cir. 2020) . . . . . . 42

*Head v. Glacier Northwest, Inc.*, 413 F.3d 1053 (9th Cir. 2005) . . . . . . . . . . . 50

*Hewitt v. Union Oil Co. of Cal.*, 44 Fed. Appx. 827 (9th Cir. 2002) . . . . . . . . 50

*Hodgens v. General Dynamics Corp.*, 144 F.3d 151 (1st Cir. 1998) . . . . . . . . 38

*Hopkins v. Andaya*, 958 F.2d 881 (9th Cir. 1992), *cert. denied*,
    513 U.S. 1148 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18-19

*Humphrey v. Mem'l Hospitals Ass'n*, 239 F.3d 1128 (9th Cir. 2001),
    *cert. denied*, 535 U.S. 1011 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

*In re Coordinated Pretrial Proceedings*, 906 F.2d 432 (9th Cir. 1990),
    *cert. denied*, 500 U.S. 959 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Jefferson v. Time Warner Cable*, 2012 U.S. Dist. LEXIS 200252,
    2012 WL 12887692 (C.D. Cal. July 23, 2012), *aff'd*,
    584 Fed. Appx. 520 (9th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

*Kimes v. Univ. of Scranton*, 126 F. Supp. 3d 477 (M.D. Pa. 2015) . . . . . . . . . 40

*King v. Preferred Technical Group*, 166 F.3d 887 (7th Cir.1999) . . . . . . . . 30-31

**CASES**                                                                           **Page(s)**

*Lopez v. Winco Holdings, Inc.*, 2022 U.S. App. LEXIS 33940,
2022 WL 17547804 (9th Cir. Dec. 9, 2022) . . . . . . . . . . . . . . . . . . . . . . 54

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) . . . . 19

*McAlindin v. County of San Diego*, 192 F.3d 1226 (9th Cir. 1999), *amended*,
201 F.3d 1211 (9th Cir.), *cert. denied*, 530 U.S. 1243 (2000) . . . . . . . . 50

*McGinest v. GTE Serv. Corp.*, 360 F.3d 1103 (9th Cir. 2004) . . . . . . . . . . . . 19

*McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988) . . . . . . . . . . . . . . . 21-22

*O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349
(11th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Olson v. United States*, 980 F.3d 1334 (9th Cir. 2020) . . . . . . . . . . . . . . . . . 21-22

*Pena v. Bjorndahl*, 177 Fed. Appx. 666 (9th Cir. 2006) . . . . . . . . . . . . . . . . . 44

*Petrobras Am., Inc. v. Samsung Heavy Indus. Co.*, 9 F.4th 247
(5th Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Protect Our Communities Found. v. Lacounte*, 939 F.3d 1029
(9th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Rexwinkel v. Parsons*, 162 Fed. Appx. 698 (9th Cir. 2006) . . . . . . . . . . . . . . 34

*Rohr v. Salt River Project Agric. Improvement & Power Dist.*,
555 F.3d 850 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*Sanders v. City of Newport*, 657 F.3d 772 (9th Cir. 2011) . . . . . . . . . . . . . . . 38

*Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406 (9th Cir.), *cert. denied*,
519 U.S. 927 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

vi

**CASES**                                                     **Page(s)**

*Strickland v. Water Works & Sewer Bd.*, 239 F.3d 1199 (11th Cir. 2001) . . . . 31

*Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981) . . . . . 38, 49

*Winsley v. Cook County*, 563 F.3d 598 (7th Cir. 2009) . . . . . . . . . . . . . . . . . 49

*Xin Liu v. Amway Corp.*, 347 F.3d 1125 (9th Cir. 2003) . . . . . . . . . . . . 30, 33, 41

*Yartzoff v. Thomas*, 809 F.2d 1371 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . 43

*Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080 (9th Cir. 2002) . . . . . . . . . . . . 48

vii

## STATUTES, RULES AND REGULATIONS          Page(s)

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

29 C.F.R. § 825.207 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

29 C.F.R. § 825.220(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

29 C.F.R. § 825.220(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 37

29 C.F.R. § 1630.2(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

29 U.S.C. §§ 201-219 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

29 U.S.C. §§ 2611-2654 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-2, 4

29 U.S.C. § 2611(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

29 U.S.C. § 2611(2)(B)(ii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

29 U.S.C. § 2612(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

29 U.S.C. § 2612(a)(1)(D) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

29 U.S.C. § 2614(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

29 U.S.C. § 2614(a)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

29 U.S.C. § 2614(a)(3)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

29 U.S.C. § 2615 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

29 U.S.C. § 2615(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5, 33

29 U.S.C. § 2615(a)(1) . . . . . . . . . . . . . . . . . . 5, 23, 28, 30, 33, 35, 37, 39, 42, 44

## STATUTES, RULES AND REGULATIONS                      Page(s)

29 U.S.C. § 2615(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 28-30, 33, 37, 40

29 U.S.C. § 2617(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

29 U.S.C. § 2617 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

29 U.S.C. § 2617(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

29 U.S.C. § 2617(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21-22, 26

42 U.S.C. §§ 2000e to 2000e-17 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

42 U.S.C. §§ 12101-12213 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-2, 5

42 U.S.C. § 12112(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 48

42 U.S.C. § 12112(b)(5)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

42 U.S.C. § 12112(b)(5)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

42 U.S.C. § 12117(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

42 U.S.C. § 12203 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

45 C.F.R. § 84.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

Fed. R. App. 4(a)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4

Fed. R. Civ. P. 8(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Fed. R. Civ. P. 36 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## OTHER SOURCES              **Page(s)**

BLACK'S LAW DICTIONARY (8th ed. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

## STATEMENT OF JURISDICTION

A.    The Complaint filed by Plaintiff Nicolle Foster set forth three causes of action.  Each arose under federal law:  (1) unlawful employment discrimination due to disability, in violation of 42 U.S.C. § 12112(a), as set forth in the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. §§ 12101-12213; (2) unlawful retaliation for opposing disability-based discrimination, in violation of 42 U.S.C. § 12203 of the ADA;  and (3) violation of Ms. Foster's rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2611-2654, in violation of 29 U.S.C. § 2615(a).  This case originally was filed in state court.  It was removed by the named defendants to the United States District Court, District of Nevada.  The District Court had federal question jurisdiction over this removed action under 28 U.S.C. § 1331.  Plaintiff sought relief under federal law, under 42 U.S.C. § 12117(a), seeking damages under the ADA, and under 29 U.S.C. § 2617(a)(2), seeking damages under the FMLA.  Because all material allegations occurred in Clark County, Nevada, venue was proper in the Southern Division of the District of Nevada.

B.    This matter is an appeal of a final order and judgment of the United States District Court, District of Nevada;  therefore, this Court of Appeals has jurisdiction pursuant to 28 U.S.C. § 1291.

C.    The Judgment in favor of Defendant Credit One Bank, N.A., was filed

by the District Court on September 29, 2023. ER-14, ECF No. 49. This Judgment

was entered pursuant to an order of the Honorable Andrew P. Gordon, United States

District Judge, filed September 28, 2023, which granted summary judgment in favor

of Defendant. ER-15–29; ECF No. 48. Plaintiff-Appellant filed her Notice of Appeal

October 17, 2023. ER-11-13; ECF No. 51. This was within the time allowed for a

civil appeal under Fed. R. App. 4(a)(1)(A).

## STATEMENT OF THE ISSUE PRESENTED FOR REVIEW

1.     Did the District Court err in deciding, as a matter of law, that

Defendant's interference with Nicolle Foster's FMLA rights could not be deemed

"willful" and, therefore, was grounds for entering judgment against Ms. Foster on her

FMLA claim?

2.     Did the District Court err in deciding that no reasonable jury could find

that Credit One's termination of Nicolle Foster was either an unlawful interference

with her FMLA rights or an unlawful retaliation for objecting to this interference with

her FMLA rights?

3.     Did the District Court err in deciding that Defendant's unlawful

discrimination and retaliation claims against Nicolle Foster, based on her disability,

were not actionable under the ADA as a matter of law?

2

## STATEMENT OF THE CASE

This case commenced with Plaintiff-Appellant Nicolle Foster filing her complaint against Defendants Credit One Bank, N.A., and Credit One Financial, a Nevada corporation, in the Eighth Judicial District Court of the State of Nevada, in and for the County of Clark, on March 12, 2021. ER-261-279, ECF No. 1-2. All three causes of action in the Complaint arose under federal law. Defendants timely removed this matter to the United States District Court, District of Nevada, southern division, on April 23, 2021. ER-255-279; ECF No. 1.

On December 9, 2022, after discovery ended, Credit One Bank, N.A., moved for summary judgment on all claims before the court.[1] ECF No. 43. Ms. Foster filed her opposition on January 11, 2023, attaching admissible evidence that she stated was sufficient to proceed to trial on each of her three claims. ECF No. 46. On January 25, 2023, Defendant filed its reply in support of its motion. ECF No. 47.

On September 28, 2023, the District Court entered and filed its Order Granting Credit One Bank's Motion for Summary Judgment. ER-15-29; ECF No. 56. The District Court then entered Judgment in favor of Defendant on September 29, 2023.

---

[1] Defendant Credit One Financial, a Nevada corporation, previously was dismissed by stipulation and order entered and filed November 16, 2021. ECF No. 25. Thus, at the time it filed its motion for summary judgment, Defendant-Appellee Credit One Bank, N.A., was the only defendant in this action.

3

ER-14; ECF No. 49.

On October 17, 2022, after entry of Judgment, Defendant filed its Bill of Costs seeking taxation of costs totaling $5,884.60. ECF No. 50. On October 18, 2023, Ms. Foster filed her objections, arguing Defendant's taxable costs should be reduced by $1,948.65. ECF No. 53. Defendant responded October 25, 2023. ECF No. 56. The Clerk of the Court allowed the full amount requested and taxed costs of $5,884.60 against Ms. Foster. ECF Nos. 57-58.

On October 18, 2023, Ms. Foster filed her Notice of Appeal as to the District Court order and judgment, within the 30-day time period set by Fed. R. App. P. 4(a)(1)(A). ER-11-13; ECF No. 51.

## STATEMENT OF FACTS

Nicolle Foster complained that her supervisor violated her rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2611-2654. Credit One Bank responded by firing her a few days later. This is the case before this Court.

Rather than allowing Ms. Foster to use available paid time off for her personal FMLA leave, Ms. Foster's supervisor instead docked her pay. Ms. Foster complained to the Human Resources department and was told that the company would speak with the supervisor about this. The supervisor then concocted a fictional story that Ms.

4

Foster had used inappropriate language in the company lunchroom and had her fired immediately. According to Ms. Foster, this was unlawful interference with her rights under the FMLA, which violated 29 U.S.C. § 2615(a)(1), and unlawful retaliation for her complaint about this interference with her FMLA rights, which violated 29 U.S.C. § 2615(a)(2). Because Ms. Foster had taken leave based on a medical condition that was a disability, this also was unlawful discrimination and retaliation under the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. §§ 12101-12213.

From 2007 to 2018, Ms. Foster worked in Credit One Bank's collections department. She worked her way up a Collections Representative II. Her job was to contact Credit One credit card customers who fell past due on their accounts in order to collect what was owed. ER-31.

For several years, until June 2018, Ms. Foster's supervisor was Allen "Dale" Mason. Mason formerly was her peer and her chief competitor for incentive bonuses. However, when he was promoted to Ms. Foster's supervisor, he became harassing and threatening toward Ms. Foster. Ms. Foster stated in her discrimination complaint: "While employed there," at Credit One, "I was subjected to harassment, humiliation and messing with my incentives. I went on stress leave and was removed from" under Mason's supervision. ER-199; *see also* ER-47.

Ms. Foster complained in May 2018 to Ann Krutchik, Senior Vice President

5

of Human Resources, and Megan Lago, Human Resources Director, about the ongoing harassment and bullying she suffered from Mason. ER-47. Ms. Foster asked to be removed from Mason's direct supervision. ER-175; *see also* ER-200-204. This complaint was made pursuant to Credit One's Discrimination and Harassment Policy. ER-142. According to Ms. Foster:

> I spoke with Ann Krutchik, who oversaw Human Resources, about the issues that continuously were going on. I could not take it any longer. I filed a grievance at that time. I felt isolated. I felt bullied. Dale constantly was reminding me that my job was at risk, even though I was the top performer. I was tired of the hostile environment. It was very unprofessional. I felt humiliated in front of my peers, the other representatives on the floor. I felt that I was being bullied for my job. Dale attacked my character and spread lies about my work. I felt like I had no choice but to see a therapist.

ER-32. Mason "spread lies" about her work. This pattern, unfortunately, would continue to Ms. Foster's final day of employment. Initially, however, the process seemed to work. Ms. Foster was transferred out from under Mason's direct supervisor and placed under another supervisor, Terrance Taylor. ER-47.

Mason's unrelenting harassment and bullying had led Ms. Foster to take FMLA leave. On June 1, 2018, Ms. Foster was placed on medical leave at the specific request of Donna Gosnell, her psychotherapist. ER-166-171. This was due to "anxiety attacks" and a "severe depressed mood." Ms. Foster was on FMLA leave

at that time for about three or four weeks.  ER-50.  She returned to work sooner than what had been requested.

Ms. Foster also is a person with a disability under the ADA.  Ms. Gosnell, Ms. Foster's treating psychotherapist, diagnosed Ms. Foster as suffering severe depression, stress, and anxiety disorder.  ER-150, ER-153-154.  According to Ms. Foster: "I was completely stressed out because of what was happening at work.  I had great difficulty sleeping.  I lost weight because I could not eat.  It affected my relationship with my mother.  It affected my life."  ER-32.  Ms. Foster was prescribed medication for severe depression.  ER-154.

Mason was no longer Ms. Foster's direct supervisor when she returned from leave.  She still had to deal with him on the work floor, harassing her, screaming at her, and treating her in an inappropriate and unprofessional manner.  ER-49-51.[2]

---

[2]  Ms. Foster described this under questioning in her deposition:

Q:  What happened on the floor between you and Mr. Mason directly?

A:  I mean, if you have someone screaming at you on the floor, I mean, instead of being professional and taking you in the office and talking to you about situations, instead, it just was – it was just unprofessional, it was hostile.

Q:  Ms. Foster, I appreciate all of those words, I really do, I do. But my issue here is between June of 2018, June 1st –

A:  And this is in the time frame still.

Q:  And I am.  In your separation Mr. Mason was screaming at you?

(continued...)

Mason knew that Ms. Foster had been approved for use of intermittent FMLA leave. He was on the distribution list of an email notifying management that she was approved for FMLA use. ER-173. The email said: "Nicolle's leave was approved for the care of herself. Therefore, while out on leave, she is required to utilize accrued sick and vacation time before going on unpaid status." *Id.*

Sixth months later, in December 2018, Ms. Foster again needed to take a brief medical leave of absence because of her diagnosed stress and anxiety disorder. She had not yet exhausted her full allocation of 12 weeks of FMLA leave. ER-33-34. She had FMLA time on the books. Credit One admitted that Ms. Foster met the eligibility requirements for being entitled to use FMLA leave. ER-251-252.

Ms. Foster's regular supervisor, Terrance Taylor, was absent when Ms. Foster took her December FMLA leave. He was on vacation. Unfortunately for Ms. Foster, Mason was "filling in" for Taylor during that time. ER-33. Mason, once again, was Ms. Foster's supervisor.

---

[2](...continued)
A:   Yeah, hostile environment. Not – well, yeah.
Q:   He was screaming at you even though he wasn't your supervisor –
A:   Yeah.
Q:   – and wasn't responsible at all for you?
A:   He still – yeah, it was still stuff going on, on the floor.
ER-49-50.

8

Ms. Foster called into Mason to let her know that she would be absent and that she would be using intermittent FMLA for her absence.[3]  ER-75-76.  When Foster returned to work after her three-day FMLA leave, Taylor had also returned from his vacation.  Taylor told Ms. Foster that she had no FMLA leave available, that she would need to make up the lost hours, and that she needed a note from her doctor in order to be able to return to work.  ER-34.

On December 12, 2018, Ms. Foster went to human resources to complain about being denied paid leave, and being docked pay, for when she was on FMLA leave. She said:

> When Human Resources opened for the day, I went downstairs to speak with Vera Yanez-Tourigny, the Assistant Vice President of Human Resources.  I spoke with Vera.  I asked her if my FMLA had ended.  She looked at me strangely and asked me what was going on. I advised her that Terrance told me my FMLA ended.  Vera said that she would talk with him and that, no, I still had intermittent FMLA available to use.

_____

[3]  Ms. Foster testified in her deposition:

Q:    In December do you know if Mr. Mason was aware of your FMLA status?

A:    Yeah.

Q:    How do you know he was aware?

A:    Because when I call in I have to tell them I'm going to be late, you know what I'm saying, or if I am not coming, FMLA.  So he has to know.

ER-75-76.

9

ER-177-178.

After complaining to the human resources department about this failure to properly compensate her for FMLA leave time, and after discussing some issues involving her 401(k), Ms. Foster returned to her work station. She said:

> I then went back upstairs, to my work station. Terrance came to my desk a few hours later. He said, "You're right, [Nicolle]. You are still on FMLA." I said, yes, I know that, and, by the way, can I talk to you in a meeting. Terrance said yes and we went into the meeting room. I told him that something was bothering me about Rosinya calling me regarding my time, asking me if I am going to have the full 80 hours, and questioning me about my FMLA. I then told Terrance that something was going on with my personal information being discussed and that was a HIPAA violation. Terrance asked me to let him discuss this with the Vice Presidents Rafe and Rayna and that "we" will talk to Dale about this, since this happened when Dale Mason was filling in for Terrance when Terrance was on vacation.

ER-34-35. Thus, according to Taylor, Ms. Foster's regular supervisor, Credit One management would discuss this improper docking of Ms. Foster's pay – this violation of Ms. Foster's rights under the FMLA – with Mason.

It appeared the matter had been resolved. Ms. Foster would be paid for her three days of FMLA leave as she was legally entitled to be paid. But a few days later, on December 17, 2018, right after Mason would have been chastised for interfering with Ms. Foster's FMLA rights, Mason again "spread lies" about Ms. Foster. He

10

falsely accused Ms. Foster of using a racial slur, and a homophobic slur against him. Mason submitted two statement from his personal friends David Tillman and Ebony White, who falsely accused Ms. Foster of using a racial and a homophobic slur in a conversation in the company lunchroom.

The Assistant Vice President of Human Resources, Vera Yanez-Tourigny, testified under oath that she asked the two to write these statements. ER-208. This was false. These statements clearly were solicited by Mason, not Ms. Yanez-Tourigny. The company lied specifically to conceal Mason's involvement.

First, the hand-written statement from Tillman read as follows: "On 12/17 NF," referring to Nicolle Foster, "called you a faggot and only mess with n_____ keep messing with her bonus and she will get him fired." ER-180. The "you" in this statement was Mason. Ms. Yanez-Tourigny would not have been the "you," even though she claimed that she, not Mason, asked Tillman to write this statement. Although Tillman used a blank after the letter "n," but it is clear that he accused Ms. Foster of using the racial slur "nigger" and the homophobic slur "faggot" (which he was not reticent in spelling out), in regard to his friend Mason. Both Ms. Foster and Mason are Black. Ms. Yanez-Tourigny is neither Black nor a gay male.

Second, in an emailed statement sent by Ms. White to Mason: "On December 17, 2018, while at lunch Nicolle Foster stated Allen Mason was a fagget [sic] and

11

only mess with niggers and I'm going to get him fired for discussing information with other collection reps ... and last week Nicolle Foster stated Allen Mason keeps messing with my bonus and that's why I come to work when I choose."  ER-179. Again, this statement was not to have been directly solicited by Ms. Yanez-Tourigny, as she falsely claimed under oath, but by Mason, to whom Ms. White sent this email.

These two statements were contained in Defendant's investigatory file of Ms. Foster.  These were the only accusations against Ms. Foster.  It may be reasonably inferred that these two statements were part of a coordinated, collaborative effort to get Ms. Foster fired from her job with Credit One within a few days of Ms. Foster reporting that Mason had violated her rights under the FMLA and that corporate vice presidents then would speak with Mason about this.  Both statements use the same language, in the same word order.  "December 17," then "Nicolle Foster," then a reference to the homophobic slur "faggot," then the phrase "only mess with niggers," then a reference to getting Mason fired.  Only the line about "messing" with Ms. Foster's bonus is not in precisely the same word order.  Perhaps these statements were independently written by Tillman and Ms. White.  Perhaps Mason was not involved in soliciting either statement, although this is unlikely given that Ms. White's statement is an email to Mason even though Credit One's Assistant Vice President of Human Resources repeatedly claimed, under oath, that she asked Tillman and she

12

asked Ms. White to write down these statements. Perhaps Mason's involvement was innocent. However, that is a genuine issue of material fact. It may be reasonably inferred that these two statements were written at the specific instruction of Mason. It may be reasonably inferred that Mason went on the attack against Ms. Foster because, just a few days prior, two corporate vice presidents, Rafe Dunlap and Rayna Jasper, spoke to him about violating Ms. Foster's FMLA rights.[4]

Ms. Foster strongly denied making those statements. She strongly denied ever using that offensive language in the workplace, whether in regard to Mason or in any other context. "I never said that in my life," Ms. Foster testified in her deposition. ER-64; *see also* ER-200. Not only did she never speak these words, she never ate

---

[4] Defendant eventually admitted in discovery, after a long period of denial, that Mason was involved in bringing forth the false and vile allegation that Ms. Foster had used, in the workplace, a homophobic slur against Mason, followed by a racial slur against Black employees, including Ms. Foster, under Mason's supervision. In responding to Requests for Admissions under Fed. R. Civ. P. 36, Defendant initially was very coy about whether Mason ever complained that Ms. Foster used a racial or a homophobic slur against him. This was part of the subterfuge. Defendant would neither admit or deny that Mason reported these slurs to his chain of command. Instead, in response to such requests, Defendant answered evasively: "Defendant admits that Allen "Dale" Mason was not in the presence of Plaintiff at the relevant time she [allegedly] used an offensive or derogatory slur towards Mr. Mason." *See* ER-234-236. In subsequent Rule 36 requests, Defendant ended the ambiguity. Defendant denied the statement that Mason "never" notified human resources or the chain of command that Ms. Foster allegedly used a racial or homophobic slur against him. *See* ER-252-253. Thus, contrary to Ms. Yanez-Tourigny's testimony at the unemployment hearing, Mason was responsible for "spreading the lie" that Ms. Foster used a racial slur and referred to Mason by a homophobic slur.

lunch with Tillman or Ms. White during this period of time.  She has been adamant:

> I absolutely did not use any racist or homophobic language in the workplace, whether against Dale Mason or anyone. I do not use such language.  Also, Ms. White and Mr. Tillman said that I used that language in the employee lunch room.  I did not each lunch at that time with my co-workers in the lunch room.  The lunch period was 9:30 a.m., which was too early for me.  I did not want to sit around talking about nonsense with these people.  So, instead of sitting in the lunchroom on those days, I would go to my car and smoke.

ER-36-37.

During its alleged "investigation," Credit One never told Ms. Foster the specifics of the charges against her.  She was never told what she allegedly said, when she allegedly said it, or to whom she allegedly said what she was accused of saying. She was told only that was being suspended due to "derogatory remarks" about Mason.  ER-33.  However, in the investigatory meeting, Ms. Foster specifically let her employer know that there was an FMLA issue:

> I told Megan that I never said anything about my former supervisor.  She said that we have two people who said you said some things about Dale Mason, that we have to suspend you, and that we are going to have an investigation.  I then asked if this had anything to do with Dale discussing my FMLA time with a rep named Rosinya Williams.  I noticed everyone had a shocked reaction. Megan then advised me that she will let me know because, now, she has to investigate the FMLA issue.

14

*Id.* Present at this meeting were the same two vice presidents, Dunlap and Jasper, who had spoken to Mason a few days earlier about Mason violating Ms. Foster's rights under the FMLA by unlawfully docking her pay rather than allowing Ms. Foster to use paid leave that was available to her. *Id.*

Credit One then fired Ms. Foster shortly after this brief "investigatory" interview on December 18, 2018. Credit One's stated reason: "Two employees," referring to Tillman and White, "reported inappropriate, offensive comments relating to sexual orientation and race made by Nicolle regarding another supervisor," referring to Mason. ER-195; ER-217. Credit One knew that there was an issue regarding Mason unlawful mishandling Ms. Foster's pay while she was on FMLA leave, just a few days earlier, yet Credit One chose to believe a supervisor who just had been counseled regarding his violation of an employee's FMLA rights, and to proceed with the firing of the employee whose rights he violated. Without even telling Ms. Foster the details of the accusation against her, Credit One fully accepted the word of a supervisor who had unlawfully violated an employee's FMLA rights. Credit One chose to disregard the word of the employee whose rights were violated and, more importantly, who just had complained that her FMLA rights were violated.

Ms. Foster complained about her supervisor. Credit One addressed the problem by firing the person who complained.

15

## SUMMARY OF ARGUMENT

Nicolle Foster complained to Credit One management that her supervisor violated her FMLA rights when he docked her pay rather than allow her to use paid leave for an FMLA-related absence. Dale Mason, the supervisor, had a long history of harassing, threatening, and bullying Ms. Foster. Mason's prior harassment of Ms. Foster was so severe she was diagnosed with depression and anxiety, approved for the use of FMLA leave on an intermittent basis, and removed from under Mason's supervision. But in December 2018, when Ms. Foster needed to take three days of intermittent FMLA leave, Mason once again was her supervisor. He was filling in for her regular supervisor.

Ms. Foster complained to human resources and her regular supervisor about Mason's violation of her FMLA rights. Mason's error was corrected. Two corporate vice presidents spoke with Mason about his violation of Ms. Foster's FMLA rights.

Within a few days, Credit One fired Nicolle Foster.

This was unlawful interference with Ms. Foster's FMLA rights. It was unlawful retaliation in response to Ms. Foster objection to Mason's interference with her FMLA rights. This also was a violation of the ADA because Ms. Foster's FMLA use was an accommodation to the covered disability of depression and anxiety.

Mason, the supervisor who violated her FMLA rights, and who had a long

history of bullying and harassing Ms. Foster, had two friends accuse Ms. Foster of using offensive language in the company lunchroom. The accusations were false. Ms. Foster was a 11-year employee who had never been accused of using such language before. Yet the company enacted Mason's plan to get rid of the person who caused him to be counseled by corporate vice presidents for his FMLA violation.

Defendant's position can be boiled down to this. Credit One chose to believe the word of a supervisor who had a long history of harassing and bullying Nicolle Foster so badly that Ms. Foster was diagnosed with depression and anxiety, had to take FMLA leave on more than one occasion, and had to be removed from under his supervision. Credit One never sought to hear Ms. Foster's side of the story before firing her. Credit One has taken the position that it is entitled to summary judgment based on its decision to unilaterally believe a bullying and harassing supervisor over the employee he had targeted over the years, most recently by docking her pay when she was on FMLA leave.

That position may well convince a jury, but it should not have been the basis for dispose of this case on summary judgment. The District Court erred in granting summary judgment on Ms. Foster's FMLA and ADA. This order must be reversed. The matter must be remanded for trial.

17

# ARGUMENT

## I.

## THE STANDARD OF REVIEW IS DE NOVO

"A district court's grant of summary judgment is reviewed de novo." *Protect Our Communities Found. v. Lacounte*, 939 F.3d 1029, 1034 (9th Cir. 2019). The common definition of "de novo" is "anew." BLACK'S LAW DICTIONARY 467 (8th ed. 2004), *cited in Chaly-Garcia v. United States*, 508 F.3d 1201, 1204 (9th Cir. 2007). Thus, this Court is to "review the matter anew, the same as if it had not been heard before, and as if no decision previously had been rendered." *Freeman v. DirecTV, Inc.*, 457 F.3d 1001, 1004 (9th Cir. 2006).

## II.

## SUMMARY JUDGMENT SHOULD BE GRANTED ONLY WHEN THERE ARE NO GENUINE ISSUES OF MATERIAL FACT AND ALL INFERENCES HAVE BEEN DRAWN IN FAVOR OF THE NON-MOVING PARTY

The principles for adjudicating motions for summary judgment are clear. "The party moving for summary judgment has the burden of proving the absence of any genuine issue of material fact that would allow a judgment as a matter of law." *Hopkins v. Andaya*, 958 F.2d 881, 884 (9th Cir. 1992), *cert. denied*, 513 U.S. 1148

18

(1995) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). A court evaluating a summary judgment motion must consider all "justifiable" and "legitimate" inferences in the nonmoving party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Summary judgment is appropriate only where, "drawing all reasonable inferences supported by the evidence in favor of the non-moving party," the court finds "no genuine disputes of material fact exist." *Bodett v. CoxCom, Inc.*, 366 F.3d 736, 742 (9th Cir. 2004). Claims for unlawful discrimination and retaliation are particularly ill-suited to summary disposition. "This Court has set a high standard for the granting of summary judgment in employment discrimination cases." *Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1410 (9th Cir.), *cert. denied*, 519 U.S. 927 (1996). "In evaluating motions for summary judgment in the context of employment discrimination," this Court has "emphasized the importance of zealously guarding an employee's right to a full trial, since discrimination claims are frequently difficult to prove without a full airing of the evidence and an opportunity to evaluate the credibility of the witnesses." *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1112 (9th Cir. 2004). "[C]redibility determinations must be resolved at trial, not on summary judgment." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1096 (9th Cir. 2008). A court must not weigh evidence under the guise of assessing plausibility. So long as

19

evidence is brought forth from which a particular inference may be drawn, it is for the jury to decide whether to draw it. *In re Coordinated Pretrial Proceedings*, 906 F.2d 432, 462-463 (9th Cir. 1990), *cert. denied*, 500 U.S. 959 (1991).

The District Court erroneously granted summary judgment in favor of Credit One Bank on the three claims pled by Nicolle Foster. A district court granting summary judgment based on how it would weigh the evidence is not an acceptable substitute for a jury trial based on a full examination of all the evidence presented. In the proceedings below, Credit One failed to carry its burden to show that there are no genuine issues of material fact to be adjudicated at trial, particularly with regard to the issue of whether Credit One's violation of Ms. Foster's FMLA rights was "willful." Because the District Court failed to review the evidence submitted by Ms. Foster in accordance to the standards mandated by this Court, the District Court Order Granting Credit One Bank's Motion for Summary Judgment must be reversed.

## III.

### THE DISTRICT COURT ERRED IN DECIDING THAT DEFENDANT'S INTERFERENCE WITH NICOLLE FOSTER'S FMLA RIGHTS WAS NOT "WILLFUL"

Ms. Foster presented evidence that Credit One willfully violated her rights under the FMLA. Credit One's affirmative defense that Ms. Foster' FMLA claim was

untimely should not have been summarily decided.

Credit One fired Ms. Foster on December 18, 2018. She filed this lawsuit in the Clark County District Court on March 12, 2021. ER-261. This is less than three years after the wrongful conduct occurred. According to 29 U.S.C. § 2617(c)(2), claims for willful violations of the FMLA must be brought within three years of the last event constituting the violation.[5] This is in contrast with the two-year statute of limitations applicable to ordinary violations of the FMLA.[6] Ms. Foster's FMLA claims were timely filed because Credit One's violations of the FMLA were willful.

"The FMLA does not define 'willful'" under 29 U.S.C. § 2617. *Olson v. United States*, 980 F.3d 1334, 1339 (9th Cir. 2020). However, this Court has held that the standard for willfulness adopted by the Supreme Court in *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988), under the similarly-structured statute of limitations under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, also applies to FMLA claims:

---

[5] According to 29 U.S.C. § 2617(c)(2): "In the case of such action brought for a willful violation of section 105 [29 U.S.C. § 2615], such action may be brought **within 3 years of the date of the last event constituting the alleged violation** for which such action is brought." (Emphasis added).

[6] According to 29 U.S.C. § 2617(c)(1): "Except as provided in paragraph (2)," 29 U.S.C. § 2617(c)(2), "an action may be brought under this section not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought."

> In *McLaughlin*, the Supreme Court held that, for the three-year limitations period for "willful" violations of the FLSA to apply, the employer must know, or show reckless disregard for whether, its conduct was prohibited by the statute. 486 U.S. at 133. We agree with our sister circuits that the *McLaughlin* definition of "willful" applicable in FLSA claims applies to the use of "willful" in § 2617(c)(2) as well. [T]hat standard comports with a common understanding of the term "willful" in similar contexts; and the other circuits that have considered the issue are unanimous. Accordingly, we hold that, to benefit from the FMLA's three-year statute of limitations, a plaintiff must show that **her employer either knew or showed reckless** disregard for whether its conduct violated the Act.

*Olson*, 980 F.3d at 1339 (emphasis added).

This is not a high bar to clear on summary judgment. Ms. Foster met her burden. She offered evidence from which it reasonably could be inferred that Credit One "knew or showed reckless disregard" for the unlawfulness of its actions in terminating Ms. Foster's employment very quickly after she complained of an interference with her FMLA rights:

1. Credit One knew that Ms. Foster was eligible for medical leave under the FMLA. ER-251-252.

2. Credit One approved Ms. Foster to use medical leave under the FMLA on an intermittent, "as needed" basis. ER-173.

3. Credit One directed that Ms. Foster first use her paid time off to cover

22

her leave time under the FMLA. *Id.*

4.    Ms. Foster used intermittent FMLA leave without incident in June 2018.

5.    However, when Ms. Foster was absent on an FMLA medical leave in December 2018, Ms. Foster's temporary supervisor during her three-day FMLA leave, Mason, docked Ms. Foster three days' pay, even though she had paid time off still on the books and even though Credit One specifically directed Mason to use Ms. Foster's paid time-off for her FMLA time. ER-34-35.

6.    When Ms. Foster received her next paycheck after returning from FMLA leave, she noticed that she had been shorted three days' pay. She complained to human resources and to her regular supervisor that she was not paid for her FMLA time. This failure to pay Ms. Foster for her FMLA time, despite the company's directive that she would be paid, was a violation of the FMLA; it was an unlawful interference with her FMLA rights under 29 U.S.C. § 2615(a)(1). ER-177-178.

7.    Credit One knew that it was wrong in docking her pay. Her regular supervisor promised her that he and Vice Presidents Dunlap and Jasper would talk to Mason about his unlawful docking of Ms. Foster's pay. ER-34-35. Unfortunately for Ms. Foster, the error was corrected on her final paycheck. ER-35.

8.    Mason was counseled by Vice Presidents Dunlap and Jasper for violating Ms. Foster's FMLA rights. Immediately afterwards, he had two of his personal

23

friends file statements against Ms. Foster, falsely accusing Ms. Foster of using racial and homophobic slurs in the employee lunchroom. Not only did Ms. Foster never use such language in the workplace, she did not even eat with the two accusers in the Credit One lunchroom. ER-36-37.

9.     Ms. Foster offered evidence from which it reasonably may be inferred that Credit One knew the allegations against Ms. Foster were false. Credit One's Assistant Vice President of Human Resources falsely stated that she asked the two accusers to write the statements against Ms. Foster specifically to conceal Mason's involvement in getting Ms. Foster fired. *See* ER-208; *see also* ER-36. Mason clearly did. One statement was an email to Mason. The other used the word "you" in stating who Ms. Foster allegedly referenced by the use of the homophobic slur. Again, Ms. Yanez-Tourigny's blatant dishonesty betrayed the willfulness of Credit One's actions against Ms. Foster.

10.     It also may be reasonably inferred that the false statements accusing Ms. Foster, on one occasion, of using racial and homophobic language in the employee lunchroom, was part of a campaign coordinated at the supervisory level at Credit One. The statements were submitted by two personal friends of Mason, using the same language and the same word order. Both statements were limited to the same allegations, had no additional details, and raised allegations that never before been

24

made against Ms. Foster until immediately after Ms. Foster complained that Mason violated her rights under the FMLA when he docked Ms. Foster three days' pay.

Ms. Foster presented evidence from which it may be inferred that Credit One knew Mason's allegations were false and that Credit One concealed Mason's involvement. Yet Credit One fired Ms. Foster right after Mason made false allegations against the person who complained that he violated her rights under the FMLA as part of an long-term pattern of harassment and bullying against Ms. Foster.

Defendant moved for summary judgment that Ms. Foster failed to timely file her FMLA claim with the District Court. "Statute of limitations," or untimely filing of a claim, is an affirmative defense under Fed. R. Civ. P. 8(c)(1), for which the defendant bears the burden of proof. A "statute of limitations is an affirmative defense for which the [defendant] has the burden of proof[.]" *Petrobras Am., Inc. v. Samsung Heavy Indus. Co.*, 9 F.4th 247, 254 (5th Cir. 2021) (statute of limitations on fraud claim was an affirmative defense).

Although "willfulness" should have been assessed as an affirmative defense rather than an element of Ms. Foster's FMLA claim, Ms. Foster nevertheless offered evidence of "willfulness" for consideration by the District Court. She complained that Mason interfered with her FMLA rights and, within a few days, Credit One fired Ms. Foster. Credit One lied about Mason's involvement with Ms. Foster's firing in

order to conceal the links in the chain between Mason violating Ms. Foster's FMLA rights, Ms. Foster's complaint about this interference with her FMLA rights, the corporate vice presidents counseling Mason about violating Ms. Foster's FMLA rights, and Credit One's firing of Ms. Foster right after all of this happened. Thus, Ms. Foster offered admissible evidence that the three-year statute of limitations under 29 U.S.C. § 2617(c)(2), for willful violations of the FMLA, applied to Ms. Foster's claims of unlawful interference and unlawful retaliation with her FMLA rights.

Regardless of whether this Court considers "willfulness" to be an element of Ms. Foster's FMLA claim, or an affirmative defense of "statute of limitations," for which Credit One bore the burden of proof, the question of "willfulness" should not have been answered on summary judgment. The evidence is in dispute.

## IV.

### THE DISTRICT COURT ERRED IN DECIDING THAT NO REASONABLE JURY COULD FIND THAT CREDIT ONE'S FIRING OF NICOLLE FOSTER EITHER WAS UNLAWFUL INTERFERENCE OR WAS UNLAWFUL RETALIATION FOR OBJECTING TO INTERFERENCE WITH HER FMLA RIGHTS

Ms. Foster took intermittent FMLA leave in December 2018. Credit One docked her three days' pay for her FMLA leave even though she had paid leave available. Ms. Foster complained about this. The docking of her pay was reversed.

26

The supervisor who docked her pay was counseled by corporate vice presidents. And Ms. Foster was promptly fired within a few days. This is both an unlawful interference with Ms. Foster's FMLA rights and unlawful retaliation in response to her complaints.

The District Court erred when it concluded that Ms. Foster had not pled a claim for unlawful retaliation under the FMLA. The District Court erred when it weighed the evidence in favor of Credit One, such as when it concluded: "There is no evidence that Mason knew about or had an opportunity to find out about Foster's complaint to Human Resources." ER-29. This is contrary to Ms. Foster's evidence. Ms. Foster's regular supervisor told her that two corporate vice presidents counseled Mason about his violation of Ms. Foster's FMLA rights. The District Court erred when it concluded: "And even if Mason knew about Foster's complaint, a reasonable jury could not impute his retaliatory motive to Credit One." *Id.* This too is false. It may be inferred that Credit One management lied about Mason's involvement in the matter in order to conceal Mason's link to Ms. Foster's termination given that Credit One knew that Mason had a long history of harassing and bullying Ms. Foster so severely that the company agreed to move Ms. Foster from under his supervision. The District Court erred when it inferred that no weight should be given to the fact that Credit One and its human resources knowingly lied about Mason's involvement in

27

the false accusations against Ms. Foster in a attempt to cover up the link between Mason and the decision to fire Ms. Foster.[7]  The District Court erred in failing to allow Ms. Foster to proceed to trial on her FMLA claim, both as an interference claim under 29 U.S.C. § 2615(a)(1), and a retaliation claim under 29 U.S.C. § 2615(a)(2).

## A.

## Ms. Foster Properly Pled a Claim for Unlawful Retaliation under the FMLA

This is a case in which Ms. Foster primarily is seeking damages for the violation of her rights under the FMLA.  In opposing Credit One's motion for summary judgment on her FMLA claim, Ms. Foster argued that she was seeking redress under both the interference and retaliation prongs of the FMLA.

In granting summary judgment on Ms. Foster's FMLA retaliation claim, ER-27-29, the District Court held that Ms. Foster could pursue only an interference claim under 29 U.S.C. § 2615(a)(1) because she did not unequivocally allege in her Complaint that she also was pursuing a claim for unlawful retaliation under 29 U.S.C.

---

[7]  In its Order Granting Credit One Bank's Motion for Summary Judgment, the District Court stated:  "No reasonable jury could find that Credit One was specifically trying to cover up unlawful bias against Foster based on her disability merely because Yanez-Tourigny stated that White and Tillman's statements were made directly to Human Resources."  ER-26.  This, in essence, was the court weighing the evidence in favor of the moving party.  Ms. Yanez-Tourigny did more than simply misstate that the statements were "made directly to Human Resources," she specifically denied, under oath, that Mason was involved in getting those statements from his friends.

§ 2615(a)(2).[8]  While the District Court included within its decision an analysis of Ms. Foster's evidence as a retaliation claim, it should have stated directly that Ms. Foster could pursue a retaliation claim under the FMLA based on her pleadings.

Under the FMLA, every "eligible employee" is entitled to 12 weeks of unpaid leave during any 12-month period "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee."[9]  29 U.S.C. § 2612(a)(1)(D).  According to this Court:

> The FMLA creates two interrelated substantive rights for employees. *Bachelder v. America West Airlines*, 259 F.3d 1112, 1122 (9th Cir. 2001).  First, an employee has the

---

[8]  In paragraph 52 of her Complaint, Ms. Foster put Credit One on notice that her FMLA claim included, in part, retaliation.  Ms. Foster alleged:

> Defendants were aware of their obligation to provide leave under the FMLA to eligible employees entitled to leave under the FMLA.  Defendants, furthermore, were aware that it would be unlawful to take **retaliatory action** against an employee for exercising his or her rights under the FMLA.

ER-267 (emphasis added).  This should have been stated more strongly, but this was sufficient notice of an FMLA retaliation claim in addition to the more clearly stated interference claim.

[9]  To be an "eligible employee," an employee must have worked for her employer for at least 12 months, and must have worked a minimum of 1,250 hours during the preceding year.  29 U.S.C. § 2611(2)(A).  The definition of "eligible employee" excludes any employee assigned to a worksite in which there are less than 50 employees within a 75-mile radius of that worksite.  29 U.S.C. § 2611(2)(B)(ii).  Credit One admitted that Ms. Foster was eligible for FMLA and that she had FMLA time available for use when she was absent in December 2018.  ER-251-252.

right to take up to twelve weeks of leave for the reasons described above. 29 U.S.C. § 2612(a). Second, an employee who takes FMLA leave has the right to be restored to his or her original position or to a position equivalent in benefits, pay, and conditions of employment upon return from leave. 29 U.S.C. § 2614(a). The FMLA does not entitle the employee to any rights, benefits, or positions they would not have been entitled to had they not taken leave. 29 U.S.C. § 2614(a)(3)(B). It simply guarantees that an employee's taking leave will not result in a loss of job security or in other adverse employment actions.

*Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1132 (9th Cir. 2003).

The FMLA created two inter-related, but distinct, protections for eligible employees taking time off under the FMLA. These are "interference claims" and "retaliation claims":

To preserve the availability of these rights, and to enforce them, the FMLA creates two types of claims: **interference claims**, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, *see* 29 U.S.C. § 2615(a)(1), and **retaliation claims**, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act, *see* 29 U.S.C. § 2615(a)(1)-(2); 29 C.F.R. § 825.220(c) ... **To state a claim of interference with a substantive right, an employee need only demonstrate by a preponderance of the evidence that he was entitled to the benefit denied.** *O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1353-54 (11th Cir. 2000); *King v. Preferred Technical Group*, 166 F.3d 887, 891 (7th Cir.1999). In contrast, **to succeed on a retaliation claim, an employee must demonstrate that**

30

> **his employer intentionally discriminated against him in the form of an adverse employment action for having exercised an FMLA right**. *King*, 166 F.3d at 891.

*Strickland v. Water Works & Sewer Bd.*, 239 F.3d 1199, 1206-07 (11th Cir. 2001) (emphasis added).

It is not disputed that Ms. Foster went on a medical leave of absence under the FMLA in December 2018. Her pay was docked for the three days she was on FMLA. ER-35. This docking of Ms. Foster's pay was wrong. It violated the FMLA. Ms. Foster had accrued, unused paid time off available, *see id.*, and Credit One had ordered a few months earlier that Mr. Foster was to use paid time off first, until it was exhausted, for her FMLA-related absences, *see* ER-173.

Credit One corrected the error when Ms. Foster brought the matter to the attention of human resources. The employer violated an employee's FMLA rights. The violation was corrected. This should have been the end of the story. Unfortunately for Ms. Foster, within a few days, she was fired.

It is undisputed that Ms. Foster complained that her pay was docked. It is undisputed that she was terminated a few days later, right before the Christmas holiday. She was never given the opportunity to respond to the actual allegations that Mason had made against her. While it is undisputed that these two events occurred in close proximity, the parties dispute whether a logical inference may be drawn from

these two events. Whether there is a link is for the jury to decide.

Mason is the link between Ms. Foster's FMLA use, Ms. Foster's complaint about her FMLA rights being violated, and Ms. Foster's firing, all within the span of a few days. Mason is the source of the retaliation directed against Ms. Foster. Mason docked Ms. Foster's pay. Mason was confronted by two corporate vice presidents about unlawfully docking Ms. Foster's pay. Mason had two friends make false accusations against Ms. Foster. Credit One lied about Mason's involvement in bringing those accusations to the attention of Credit One management. Credit One willfully participated in a campaign of retaliation led by the man who had a lengthy history of harassing and bullying Ms. Foster.

Mason retaliated against a top-performing employee he had been harassing and bullying for years. When finally confronted by corporate vice presidents about his unlawful mistreatment of Ms. Foster, this time in the context of the FMLA, Mason got Ms. Foster fired by concocting a false allegation that Ms. Foster had used a racial slur and a homophobic slur when she was alleged to have been speaking about Mason in the Credit One lunchroom, a lunchroom in which Ms. Foster never ate her lunch. *See* ER-36-37. Mason led the retaliation against Ms. Foster. Credit One knew or should have known that Mason was improperly retaliating against Ms. Foster for bringing Mason's violations of the FMLA to the attention of upper management.

There is no clear distinction between interference claims and retaliation claims under the FMLA.[10] "To protect the employee, FMLA prohibits interference with the exercise of the employee's right to take leave." *Xin Liu*, 347 F.3d at 1132. Thus:

> [T]he established understanding at the time the FMLA was enacted was that employer actions that deter employees' participation in protected activities constitute "interference" or "restraint" with the employees' exercise of their rights. Under the FMLA[,] attaching negative consequences to the exercise of protected rights surely "tends to chill" an employee's willingness to exercise those rights: Employees are, understandably, less likely to exercise their FMLA leave rights if they can expect to be fired or otherwise disciplined for doing so.

*Bachelder v. Am. W. Airlines*, 259 F.3d 1112, 1124 (9th Cir. 2001).

The distinction between "interference" and "retaliation" claims does not depend on how the claim was pled under the notice pleading under the Federal Rules of Civil Procedure. This Court has been clear that whether a claim has been pled as an unlawful interference claim under 29 U.S.C. § 2615(a)(1), or as an unlawful discrimination and retaliation claim under 29 U.S.C. § 2615(a)(2), is not dispositive in defining the type of claim a plaintiff may pursue. Under the rules of notice

---

[10] The overlap between "interference" and "retaliation" under the FMLA is illustrated by the fact that the subsection stating it is unlawful to interfere with rights under the FMLA, 29 U.S.C. § 2615(a)(1), and the subsection stating it is unlawful to discriminate or retaliate against an employee engaged in opposition to employer actions that are unlawful under the FMLA, 29 U.S.C. § 2615(a)(2), both fall under the general heading of "Interference with rights," at 29 U.S.C. § 2615(a).

pleading, the courts of the circuit may make the determination as to the proper FMLA subsection under which the plaintiff should proceed, regardless of the precise designation used in the complaint. *Rexwinkel v. Parsons*, 162 Fed. Appx. 698, 700 (9th Cir. 2006). The District Court failed to apply this established principle for analyzing FMLA claims in its reasoning as to whether Ms. Foster could proceed on a claim for unlawful retaliation for objecting to interference with her FMLA rights.

**B.**

**Ms. Foster Put Forth Admissible Evidence to Support Claims Both for Unlawful Interference and for Unlawful Retaliation under the FMLA**

The evidence presented by Ms. Foster demonstrates both unlawful interference with her FMLA rights, and unlawful retaliation for objecting to the interference with her FMLA rights. This distinction may be subtle. Ms. Foster has not alleged that Credit One flatly refused to allow her to take medical leave. Her original request, in June 2018, for intermittent FMLA leave was approved. The chain of command was notified that she had FMLA leave to be used on an intermittent basis. Credit One did not stop her from taking the FMLA-mandated leave that she needed. She took the time off lawfully provided to her and she came back to work ahead of schedule.

The problem happened when Ms. Foster took off for three days of approved intermittent FMLA leave in December 2018. Ms. Foster's regular supervisor was on

34

vacation and Mason, again, was her supervisor. Mason was the person about whom she previously complained. Mason's egregious pattern of bullying and harassment caused Ms. Foster to develop "anxiety attacks" and a "severe depressed mood," as diagnosed by Ms. Foster's treating psychotherapist. *See* ER-150, ER-153-154. Ms. Foster is a person who once experienced a horrific, traumatizing event in her personal life that almost none of us can imagine.[11] Yet she could not put the unrelenting harassment and bullying from Mason behind her. A few months before she was fired, Ms. Foster asked to be removed from under Mason's supervision because of the anxiety and depression. Credit One complied with Ms. Foster's request. Until December 2018. When it did not.

For a brief but critical period of time, Mason again had supervisory authority over Ms. Foster. Credit One willfully and knowingly placed Mason in a position of authority over the woman he had harassed and bullied for years. Mason once again abused his authority over Ms. Foster. Her docked her pay. As a result, Credit One unlawfully interfered with Ms. Foster's rights under the FMLA.[12]

---

[11] In 2007, Ms. Foster witnessed the murder of her boyfriend. ER-31. She was able to put that horror behind herself, move on, and continue with her career.

[12] "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1).

At Mason's behest, Credit One docked Ms. Foster three days' pay when she was on FMLA, even though Ms. Foster had paid time off on the books to use.[13] Credit One acted at Mason's behest to dock her pay, even though Credit One management previously told supervisors, including Mason, via email, that Ms. Foster was to use paid time off, until her paid time off is exhausted. *See* ER-173. It is true that Credit One eventually paid her for this time that should never have been docked from her. Unfortunately for Ms. Foster, Credit One paid Ms. Foster for these three days on her final paycheck. After Credit One fired her.

This docking of three days' pay from Ms. Foster's paycheck may sound like a minor interference with her FMLA rights, given that Credit One corrected its error on Ms. Foster's final paycheck. ER-35. It would have been had this incident ended there. But it did not. Ms. Foster's complaint about being unlawfully docked three days' pay set in motion forces that led directly to her firing just a few days afterwards.

Not only did Ms. Foster put forth sufficient, admissible evidence to establish that Credit One willfully and knowingly interfered with her rights under the FMLA, Ms. Foster also put forth sufficient, admissible evidence to establish that Credit One

---

[13] There is no legal requirement that FMLA leave be paid leave. However, if an employee has paid time off available, the employer must allow the employee to use paid time off. 29 C.F.R. § 825.207. In this case, Credit One previously stated that Ms. Foster was to use paid leave for any FMLA-related absences.

willfully and knowingly retaliated against her for complaining about this interference with her rights under the FMLA, in violation of 29 U.S.C. § 2615(a)(2).[14]

Firing an employee for using FMLA leave is an unlawful interference in violation of 29 U.S.C. § 2615(a)(1).[15] To establish a claim for unlawful interference based on termination of employment, the plaintiff "need only prove by a preponderance of the evidence that her taking of FMLA-protected leave **constituted a negative factor** in the decision to terminate her. *Bachelder*, 259 F.3d at 1125. "She can prove this claim, as one might any ordinary statutory claim, by using either direct or circumstantial evidence, or both." *Id.*

This is case involving indirect evidence of unlawful interference and unlawful retaliation under the FMLA. Credit One never stated that it was firing Ms. Foster because she was absent on intermittent FMLA leave. Ms. Foster's FMLA claim,

---

[14] "It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2).

[15] According to 29 C.F.R. 825.220(c):

> The Act's prohibition against interference prohibits an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights. [E]mployers **cannot use the taking of FMLA leave as a negative factor in employment actions**, such as hiring, promotions or disciplinary actions[.]

(Emphasis added).

whether as interference or as retaliation, must be assessed under the burden-shifting

protocols in *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981):

> To make out a prima facie case of FMLA interference, an employee must establish that "[s]he was eligible for the FMLA's protections, (2) [her] employer was covered by the FMLA, (3) [s]he was entitled to leave under the FMLA, (4) [s]he provided sufficient notice of his intent to take leave, and (5) [her] employer denied [her] FMLA benefits to which [s]he was entitled."

*Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1243 (9th Cir. 2014) (citing

*Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011)).  There is no issue that

Ms. Foster was eligible and entitled to use intermittent FMLA leave and that she

provided notice of her intent to take three days of FMLA leave in December 2018.

The dispute is based the fifth prong:  she was denied the protections of the FMLA.

While it is not disputed that Ms. Foster was docked three days' pay, Credit One

denies that Ms. Foster's FMLA use contributed to her termination.[16]

---

[16] The FMLA also includes a right of restoration denied to Ms. Foster.  An employee, upon returning from such leave, has the right "to be restored by the employer to the position of employment held by the employee when the leave commenced."  29 U.S.C. § 2614(a)(1)(A).  "Following a qualified absence, the employee is entitled to return to the same position or an alternate position with equivalent pay, benefits, and working conditions, and without loss of accrued seniority."  *Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 159 (1st Cir. 1998).  This "right of restoration" necessarily must include not only an employee's right to be restored to her position immediately upon the return from leave, but also not to have that position taken from her within a few days following the use of FMLA leave.

Ms. Foster offered circumstantial evidence that her use of paid time off for her FMLA leave was a "negative factor" contributing to Credit One's termination decision. Even though Mason had been told that paid leave must be used first to cover Ms. Foster's FMLA leave, he ignored that directive. After Ms. Foster complained that Mason unlawfully docked her pay, and corporate vice presidents spoke to Mason, Mason had Ms. Foster fired. Those facts are not in dispute. The dispute is the causal link.

Ms. Foster offered circumstantial evidence of the links in the chain of causation. This is indirect evidence of interference, discrimination and retaliation. Credit One disputes this, instead arguing that it fired this 11-year employee for using inappropriate and offensive language, without ever allowing Ms. Foster to defend herself against the charges raised to human resources by Mason.

Ms. Foster's FMLA claim must be understood to be both a claim for willful interference and a claim for willful retaliation. This was an unlawful act of willful interference. Ms. Foster used FMLA in December 2018. She then suffered an adverse job action in that she was docked pay. She complained and was fired.

This is a willful act of unlawful interference with Ms. Foster's FMLA rights in violation of 29 U.S.C. § 2615(a)(1). According to this Court: "Under the FMLA," "attaching negative consequences to the exercise of protected rights surely 'tends to

chill' an employee's willingness to exercise those rights: Employees are, understandably, less likely to exercise their FMLA leave rights if they can expect to be fired or otherwise disciplined for doing so." *Bachelder*, 259 F.3d at 1124. As one district court observed: "a plaintiff may have an actionable FMLA interference claim where the employer takes any action that 'could 'chill' desire to take FMLA leave, even when the employee takes the leave.'" *Kimes v. Univ. of Scranton*, 126 F. Supp. 3d 477, 501 (M.D. Pa. 2015) (citations omitted). Firing an employee for wanting to use paid leave for her FMLA time, rather than being docked pay, surely would deter or "chill" other Credit One employees from wanting to use paid FMLA leave.

Credit One's action also were unlawful retaliation. Ms. Foster complained of the initial act of interference with her FMLA rights when she complained about being docked three days' pay when she had paid time off on the books. She then was fired on a false charge made up by the supervisor who not only had interfered with her FMLA rights, but who had been caught doing so by Credit One management. This was a willful act of unlawful retaliation for objecting to an interference with her FMLA rights, which violated 29 U.S.C. § 2615(a)(2).

Ms. Foster offered evidence that she was fired in retaliation for complaining about the interference with her rights under the FMLA. Firing an employee for complaining about an unlawful interference is unlawful retaliation under the FMLA:

40

> [T]he statutory and regulatory language of FMLA makes clear that where an employee is subjected to "negative consequences ... simply because he has used FMLA leave," the employer has interfered with the employee's FMLA rights under 29 C.F.R. § 825.220(a)(1). *Bachelder*, 259 F.3d at 1124.
>
> In contrast, where an employee is punished for opposing unlawful practices by the employer, the issue then becomes one of discrimination and retaliation. *Id.* In a similar determination made by the Seventh Circuit in *Diaz v. Fort Wayne Corp.*, 131 F.3d 711 (7th Cir. 1997), the court explained that FMLA claims "do not depend on discrimination" since the issue is not that "the employer treated one employee worse than another" but that every employee has substantive rights under FMLA that the employer must respect. *Id.* at 712.

*Xin Liu*, 347 F.3d at 1136.

The District Court acted contrary to the requirements of the FMLA. It committed reversible error to the extent it failed to properly credit Ms. Foster's FMLA claim as encompassing both unlawful interference and unlawful retaliation. Ms. Foster offered admissible evidence sufficient to establish a prima facie case of unlawful retaliation under the FMLA:

> To establish a prima facie case, a plaintiff must establish: (1) [s]he engaged in a protected activity under the FMLA; (2) [s]he suffered some adverse employment action by the employer following the protected activity; and (3) the adverse employment action was causally linked to the protected activity.

*Hazelett v. Wal-Mart Stores, Inc.*, 829 Fed. Appx. 197, 202 (9th Cir. 2020); *see also Gleklen v. Democratic Cong. Campaign Comm., Inc.*, 199 F.3d 1365, 1368 (D.C. Cir. 2000).

In early December 2018, Ms. Foster took a three-day leave of absence under the FMLA due to overwhelming stress and anxiety. Credit One previously approved her to use FMLA on an intermittent basis when she first applied in June 2018. She had FMLA time available to be used. Credit One directed that her FMLA time first come from her accrued paid time off. Ms. Foster's former supervisor, about whom she previously complained about harassing, bullying, demeaning, and threatening her, was her temporary supervisor. He ordered that Ms. Foster be docked three days' pay when she was on approved intermittent FMLA leave. Credit One then did so. This was an unlawful interference with Ms. Foster's FMLA rights in violation of 29 U.S.C. § 2615(a)(1).

On or around December 12, 2018, after Ms. Foster returned to work, Ms. Foster received her paycheck that was short three days of compensation. She reported this to human resources and to her regular supervisor. Ms. Foster's complaint of interference with her rights under the FMLA is protected activity under the FMLA and, therefore, admissible evidence supporting the first prong of the prima facie case of unlawful retaliation under the FMLA.

A few days after Ms. Foster engaged in protected activity under the FMLA, Ms. Foster suffered an "adverse employment action." She was fired. This is undisputed evidence of the second prong of a prima facie case of unlawful retaliation.

Ms. Foster then offered admissible evidence from which a causal link between the protected activity and her termination a few days later. The District Court erred when it stated that no reasonable jury could find there to have been such a link. The causal link is Mason's involvement and the brief time period it took for Credit One to fire Ms. Foster based on Mason's false accusation against her.

"To establish a causal link," an employee must show that his employer was aware of his "involvement in a protected activity." *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982) (retaliation claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17), *quoted in Carrasco v. San Ramon Valley Unified School Dist.*, 258 Fed. Appx. 114, 115 (9th Cir. 2007). "Causation sufficient to establish the third element of the prima facie case may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987).

In cases where the time between the protected activity and the adverse

employment action is brief, temporal proximity alone can establish the causal link. "Temporal proximity between protected activity and an adverse employment action can by itself constitute sufficient circumstantial evidence of retaliation in some cases." *Bell v. Clackamas County*, 341 F.3d 858, 865 (9th Cir. 2003). As one federal appellate held, "close temporal proximity between the complaint and the termination" can be "sufficient to allow an inference that a causal connection existed between the internal grievance and the decision to terminate[.]" *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006) (24 days between the protected activity and the adverse action sufficient to establish a causal link for retaliation claim under Title VII). Most importantly, "proximity in time, however, must be considered in the context of the factual situation, and it should be left to the jury to determine whether the inference alone is sufficient to find a violation." *Pena v. Bjorndahl*, 177 Fed. Appx. 666, 667 (9th Cir. 2006) (unlawful retaliation for exercise of First Amendment rights). In this case, the temporal proximity between the complaint and the firing was virtually immediate.

Mason was responsible for docking her pay when she was on intermittent FMLA leave in December 2018. Ms. Foster was told that her regular supervisor and two corporate vice presidents spoke to Mason about this violation of Ms. Foster's FMLA rights. Mason was in trouble. He previously harassed, bullied, yelled at, and

44

threatened Ms. Foster when she was under his supervision, all in violation of the company's anti-harassment policy. ER-145-146. Ms. Foster requested to be removed from under Mason's supervisor and it was approved. But there were no other consequences to Mason at that time. This time, however, Mason crossed the line. He was not just violating policy. Mason had violated the law. Two vice presidents spoke to Mason about this.

Mason responded immediately. He went on the attack against Ms. Foster. Mason had two close friends falsely accuse Ms. Foster of using a homophobic slur against Mason, then a racial slur generally against the employees under Mason's supervisor, when Ms. Foster reportedly was socializing with Mason's two friends in the employee lunchroom. These accusations not only were false, but were part of a coordinated campaign against Ms. Foster, coordinated by Mason.

The two statements were nearly identical. Both used the same language, in the same word order. Each statement ends with a reference to Ms. Foster saying that she would get Mason fired. The similarities could be because that is what Ms. Foster said and this is the order in which she said it. This also could be because this was coordinated by Mason, who directed his friends on what they should say and how they should say it, in order to get the attention of company management. Mason clearly was involved in compiling these statements, despite Credit One's denial.

45

Ms. Foster strongly denied ever using racist and homophobic language in the workplace. She even adamantly denied socializing with Tillman and Ms. White in the lunchroom. Ms. Foster stated that she preferred to use her lunch break as a smoke break, alone in her car. In other words, the evidence of Mason's involvement in coordinating these accusations against Ms. Foster is in dispute. It is a genuine issue of material fact for the jury to decide.

Credit One will argue that these two accusations from Mason's close friends provided its legitimate, non-discriminatory, non-retaliatory reason for firing Ms. Foster. Credit One will argue that it is a mere coincidence, which should be given no weight, that, in the space of just a few days, (1) Mason was discovered to have unlawfully docked Ms. Foster three days of pay when Ms. Foster was on intermittent FMLA, (2) Mason was counseled by two corporate vice presidents for this violation of the FMLA, (3) Mason learned from two friends that Ms. Foster allegedly had used a racial slur and a homophobic slur in the employee lunchroom, and that, as a result, (4) Ms. Foster was fired. Perhaps it was just a coincidence that this all happened in a scant few days. Coincidences do happen. Coincidences even happen to supervisors who have a long prior history of harassing and bullying a particular subordinate. But the question of "coincidence" is a genuine issue of material fact for a jury to decide.

While Credit One is expected to offer the statements of Tillman and White as

evidence of its legitimate, non-discriminatory, non-retaliatory reason for suddenly firing a high-performing 11-year employee without ever giving that employee the opportunity to respond to the charges against her. Ms. Foster, in turn, will argue that this is evidence of pretext. It is for a jury to draw the inference as to whether Mason was involved in coordinating these false and vile accusations against Ms. Foster. It is for a jury to decide whether they believe Mason's allegations or Ms. Foster's denials. It is for a jury to decide whether Credit One's reason for firing this high-performing 11-year employee was legitimate, or whether these false allegations were used as the pretext for firing an employee who complained that her FMLA rights had been violated. This should not have been adjudicated on summary judgment.

V.

<strong>THE DISTRICT COURT ERRED IN DECIDING THAT<br/>NICOLLE FOSTER'S DISABILITY CLAIMS<br/>WERE NOT ACTIONABLE</strong>

<strong>A.</strong>

<strong><u>Ms. Foster Put Forth Sufficient, Admissible Evidence<br/>That She Was Subjected to Unlawful Discrimination<br/>Based on Her Psychological Disability</u></strong>

While this case centers around the violation of Ms. Foster's rights under the FMLA, she also pled two claims under the ADA which flowed directly from Credit

47

One's violation of her FMLA rights. Because of Ms. Foster's disability, she needed to use FMLA. When Credit One violated her FMLA rights, it also violated the ADA.

Ms. Foster's first ADA claim was that Credit One unlawfully discriminated against her because of her disability. Credit One denied her full rights and benefits to the reasonable accommodation of paid leave time necessitated by her disability.

It is unlawful for an employer to discriminate "against a qualified individual with a disability" because of that employee's disability. 42 U.S.C. § 12112(a). The term "discriminate" includes "denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant." 42 U.S.C. § 12112(b)(5)(B).

"An employer discriminates against a qualified individual with a disability by 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the employer." *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002) (quoting 42 U.S.C. § 12112(b)(5)(A)). In adjudicating claims of unlawful discrimination under the ADA, courts use the same

48

tripartite "burden shifting" arrangement from *Burdine*, *supra*, used to adjudicate discrimination claims under Title VII.

In order to establish a prima facie case of disability discrimination under the ADA, an employee must demonstrate that: (1) she is **disabled** as defined under the ADA; (2) she is **qualified**, with or without a reasonable accommodation, **to perform the essential functions of the job**; and (3) she **suffered an adverse employment action** because of her disability or because her employer failed to make a reasonable accommodation. *Humphrey v. Mem'l Hospitals Ass'n*, 239 F.3d 1128, 1133 (9th Cir. 2001) (emphasis added), *cert. denied*, 535 U.S. 1011 (2002); *see also Winsley v. Cook County*, 563 F.3d 598, 603 (7th Cir. 2009). Ms. Foster offered evidence to support each element of the prima facie case.

First, she is defined as disabled under the ADA. She has a psychological and emotional condition of severe depression and anxiety disorder. According to ADA regulations, "the phrase [p]hysical or mental impairment means ... any mental or psychological disorder, such as mental retardation, organic brain syndrome, **emotional or mental illness**, and specific learning disabilities. 45 C.F.R. § 84.3 (emphasis added); *see also Bragdon v. Abbott*, 524 U.S. 624, 632 (1998). To be classified as a disability, the condition or impairment must substantially limit one of more "major life activities":

49

Under the applicable federal regulations, major life activities also include functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i)[.] A "major life activity" must be of "comparative importance" and "central to the life process itself," and need not have a public, economic or daily character.

*Rohr v. Salt River Project Agric. Improvement & Power Dist.*, 555 F.3d 850, 858 n.4 (9th Cir. 2009). Ms. Foster's psychological impairment affected major life activities such as sleeping, working, and interpersonal relationships. Sleeping, for example, is a major life activity. *Hewitt v. Union Oil Co. of Cal.*, 44 Fed. Appx. 827, 828 (9th Cir. 2002). According to this Court:

Common sense suggests that sleeping is also a major activity in the lives of most people. A person who gets the recommended eight hours of sleep a day spends one-third of each 24-hour day sleeping. Moreover, sleeping is indispensable to the maintenance of personal health.

*McAlindin v. County of San Diego*, 192 F.3d 1226, 1234 (9th Cir. 1999), *amended*, 201 F.3d 1211 (9th Cir.), *cert. denied*, 530 U.S. 1243 (2000). Ms. Foster, therefore, offered evidence to show that she is a person with a disability under the ADA.[17]

---

[17] Ms. Foster's testimony alone is sufficient to establish whether her impairment substantially limits a major life activity: This Court "does not require comparative or medical evidence to establish a genuine issue of material fact regarding the impairment of a major life activity at the summary judgment stage." *Head v. Glacier Northwest, Inc.*, 413 F.3d 1053, 1058 (9th Cir. 2005). Instead, "a plaintiff's testimony may suffice to establish a genuine issue of material fact." *Id.*

Second, Ms. Foster put forth evidence in support of the second element of a prima facie case of ADA discrimination. She was qualified to do the job if provided the reasonable accommodation she requested. She successfully did the job for more than 10 years. She requested use of FMLA on an intermittent, "as needed" basis, in order to be able to continue in her job as a Collections Representative II.[18] This was provided to her, at least until she objected to not receiving the full accommodation she requested, which was paid leave. She was provided unpaid leave until she complained that her pay should not have been docked for her medical leave.

Finally, Ms. Foster suffered an adverse job action after she needed to use the accommodation provided to her because of her disability. She was fired.

The evidence is undisputed that Ms. Foster was not terminated for job performance. She was very effective in her job and had been a top performer, often earning incentive bonuses based on job performance. She was fired after she used medical leave as an accommodation to her psychological disability and after she complained that she did not receive the full accommodation to which she was legally entitled under ADA.

---

[18] Additional leave time, whether paid or unpaid, is a form of accommodation recognized under the ADA. *See, e.g., Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 185 (2d Cir. 2006). This includes leave taken on an intermittent basis. *See, e.g., Jefferson v. Time Warner Cable*, 2012 U.S. Dist. LEXIS 200252, *6, 2012 WL 12887692 (C.D. Cal. July 23, 2012), *aff'd*, 584 Fed. Appx. 520 (9th Cir. 2014).

Ms. Foster established a prima facie case of disability discrimination. The burden then shifted to the employer to articulate a legitimate non-discriminatory reason for the adverse action taken. This is a mere burden of production and not a burden of proof. Credit One offered as its "legitimate non-discriminatory reason" for firing Ms. Foster the allegation that she used a homophobic slur, and then a racial slur, in that precise order, in the employee lunchroom. Thus, the burden shifted back to Ms. Foster to offer evidence of pretext.

Ms. Foster then must produce evidence that this stated reason was a pretext masking unlawful discrimination. "Where the employer provides a legitimate, non-discriminatory reason for its adverse decision, the plaintiff must then show that this 'explanation for their discharge was a pretext for disability discrimination.'" *Brown v. Shinseki*, 336 Fed. Appx. 591, 591-592 (9th Cir. 2009) (quoting *Collings v. Longview Fibre Co.*, 63 F.3d 828, 833 (9th Cir. 1995), *cert. denied*, 516 U.S. 1048 (1996)).

Ms. Foster then offered evidence that this reason for a pretext for disability discrimination. This vile accusation was false. She never used any such slurs. She did not even socialize with her fellow employees in the company lunchroom. Credit One knew the allegation was false because it lied about Mason's involvement in bringing the allegation forward. Credit One felt the need to conceal Mason's

52

involvement in creating the false accusations against Ms. Foster.

Ms. Foster should have been allowed to proceed to trial on her claim for disability-based discrimination in violation of the ADA. She established a prima facie case of disability discrimination. She offered evidence, in response to her employer's allegedly "legitimate non-discriminatory reason" for firing her, that Credit One's purported reason for firing her was based on a lie concocted by her former supervisor. This is sufficient for Ms. Foster to proceed to trial on her claim for unlawful disability-based discrimination under the ADA.

### B.

### Ms. Foster Put Forth Sufficient, Admissible Evidence of Unlawful Retaliation in Response to Her Complaints of Overt Discrimination Based on Her Psychological Disability

Finally, Ms. Foster has offered sufficient evidence to proceed to a full adjudication of her second claim for relief, that Credit One unlawfully retaliated against her because of her objection to overt disability-based discrimination.

Again, Ms. Foster's disability is stress and anxiety disorder. The retaliation claim under the ADA parallels Ms. Foster's retaliation claim under the FMLA. Whether under the FMLA or the ADA, under both claims of retaliation, Credit One retaliated against Ms. Foster for objecting to violations of employment laws.

It is undisputed that Credit One, initially, docked Ms. Foster's pay for the three

53

days when she was on medical leave. It is undisputed that Ms. Foster complained that her rights were violated because of a medical condition that was a disability. It is undisputed that Ms. Foster suffered an adverse job action a few short days after she complained that her pay was unlawfully docked. She was fired.

"To establish a prima facie case of retaliation, a plaintiff must demonstrate: (1) a protected activity; (2) an adverse employment action; and (3) a causal link between the protected activity and the adverse employment action. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1035 (9th Cir. 2006) (retaliation under Title VII). "Like the prima facie elements for disability discrimination, retaliation requires a causal connection between protected activity and an adverse employment action."[19] *Lopez v. Winco Holdings, Inc.*, 2022 U.S. App. LEXIS 33940, *5 n.3, 2022 WL 17547804 (9th Cir. Dec. 9, 2022) (citing *Cornwell*, 439 F.3d at 1034-35). As with disability discrimination claims, the plaintiff must produce evidence that the employer's stated reason for the termination was a mere pretext for unlawful action.

---

[19] This temporal proximity between the complaint and the adverse action provides evidence of retaliation. "For purposes of establishing a prima facie case of retaliation, a plaintiff can establish a causal connection by temporal proximity between the protected activity and adverse action. *Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1228 (10th Cir. 2008). "Temporal proximity between protected activity and an adverse employment action can by itself constitute sufficient circumstantial evidence of retaliation in some cases." *Bell v. Clackamas County*, 341 F.3d 858, 865 (9th Cir. 2003).

Ms. Foster offered evidence in support of her disability-based retaliation claim. She was engaged in a protected activity: she objected to Mason docking her three days' pay. She suffered an adverse employment action: she was fired. As with the FMLA retaliation claim, there were causal links between the protected activity and the adverse employment action. The first causal link was the brief period of time between Ms. Foster's Complaint that Mason violated her ADA rights, and her termination. The second was Mason.

Credit One, again, offered an allegedly legitimate, non-retaliatory reason for firing Ms. Foster. Thus, the burden shifted to Ms. Foster to offer evidence of pretext. As with her FMLA retaliation claim, Ms. Foster offered evidence of pretext. Ms. Foster complained about Mason. Mason was counseled by corporate executives. Mason had two friends make false accusations against Ms. Foster of dubious credibility. The Human Resources department was complicit in this, evidenced by Ms. Yanez-Tourigny's false testimony that she asked Tillman and White for written statements, which were written in coordination, and that Mason was not involved in obtaining those statements, contrary to Ms. Yanez-Tourigny's claim. Thus, Credit One felt it necessary to conceal Mason's involvement in getting Ms. Foster fired. This attempted concealment failed. Mason's fingerprints were all over the decision to fire Ms. Foster.

Ms. Foster, therefore, asks that she be allowed to proceed to trial on this claim for unlawful retaliation in violation of the ADA. Any decision on this claim should wait for a full airing of all the evidence, especially to allow for the fact finder to make the appropriate credibility determinations based on testimony presented in open court.

## CONCLUSION

Nicolle Foster complained that her rights had been violated under the FMLA and the ADA. A few days later, she was fired. This is undisputed. The relationship between these two undisputed facts, however, is a genuine issue of material fact for a jury to decide.

For the reasons set forth above, Nicolle Foster asks this Court to reverse the District Court's Order, ECF No. 48, granting summary judgment, and the subsequent Judgment, ECF No. 49, and to remand this matter to the District Court for trial.

Respectfully submitted,

LAW OFFICES OF ROBERT P. SPRETNAK

By: /s/ Robert P. Spretnak
    Robert P. Spretnak, Esq.

Attorney for Nicolle Foster, Plaintiff-Appellant

8275 S. Eastern Avenue, Suite 200
Las Vegas, Nevada 89123

56

## <u>STATEMENT OF RELATED CASES REQUIRED</u>
## <u>BY CIRCUIT RULE 28-2.6</u>

In accordance with Circuit Rule 28-2.6, counsel for Plaintiff-Appellant Nicolle

Foster, states that this party knows of no case related to this case pending before this

Court.

LAW OFFICES OF ROBERT P. SPRETNAK

By: /s/ Robert P. Spretnak
Robert P. Spretnak, Esq.

Attorney for Nicolle Foster, Plaintiff-Appellant

8275 S. Eastern Avenue, Suite 200
Las Vegas, Nevada 89123

**Certificate of Compliance Pursuant to Fed. R. App. P. 32(a)(7)(C)
and Circuit Rule 32-1 for Case Number 23-2983**

I certify that: **(check appropriate option(s))**

<u>x</u>  1.  Pursuant to Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit Rule 32-1, the attached opening/answering/reply/cross-appeal brief is

■     Proportionately spaced, has a typeface of 14 points or more and contains **<u>13,820</u>** words (opening, answering, and the second and third briefs filed in cross-appeals must not exceed 14,000 words; reply briefs must not exceed 7,000 words),

**or is**

❑     Monospaced, has 10.5 or fewer characters per inch and contains _____ words or _____ lines of text (opening, answering, and the second and third briefs filed in cross-appeals must not exceed 14,000 words or 1,300 lines of text; reply briefs must not exceed 7,000 words or 650 lines of text).

__  2.  The attached brief is not subject to the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because

❑     This brief complies with Fed. R. App. P. 32(a)(1)-(7) and is a principal brief of no more than 30 pages or a reply brief of no more than 15 pages;

❑     This brief complies with a page or size-volume limitation established by separate court order dated _____ and is

❑     Proportionately spaced, has a typeface of 14 points or more and contains _____ words,

**or is**

❑     Monospaced, has 10.5 or fewer characters per inch and contains _____ pages or _____ words or _____ lines of text.

\_\_ 3. *Briefs in Capital Cases*
- ❑     This brief is being filed in a capital case pursuant to the type-volume limitations set forth at Circuit Rule 32-4 **and is**
  - ❑     Proportionately spaced, has a typeface of 14 points or more and contains \_\_\_\_\_ words (opening, answering, and the second and third briefs filed in cross-appeals must not exceed 21,000 words; reply briefs must not exceed 9,800 words)

  **or is**
  - ❑     Monospaced, has 10.5 or fewer characters per inch and contains \_\_\_\_\_ words or \_\_\_\_\_ lines of text (opening, answering, and the second and third briefs filed in cross-appeals must not exceed 75 pages or 1,950 lines of text; reply briefs must not exceed 35 pages or 910 lines of text).

\_\_ 4. *Amicus Briefs*
- ❑     Pursuant to Fed. R. App. P. 29(d) and 9th Cir. R. 32-1, the attached amicus brief is proportionally spaced, has a typeface of 14 points or more and contains 7000 words or less,

  **or is**
- ❑     Monospaced, has 10.5 or fewer characters per inch and contains not more than either 7000 words or 650 lines of text,

  **or is**
- ❑     **Not** subject to the type-volume limitations because it is an amicus brief of no more than 15 pages and complies with Fed. R. App. P. 32(a)(1)-(5).


| March 27, 2024 | /s/ Robert P. Spretnak |
|---|---|
| Date | Signature of Attorney or Unrepresented Litigant |

59

## <u>CERTIFICATION FOR BRIEF IN PAPER FORMAT</u>

U.S. Court of Appeals Docket Number: 23-2983

I, Robert P. Spretnak, certify that this brief is identical to the version submitted electronically on August 1, 2022, pursuant to Rule 6(c) of the Administrative Order Regarding Electronic Filing in All Ninth Circuit Cases.

Date: _____, 2024.

Signature:   LAW OFFICES OF ROBERT P. SPRETNAK

By: _____
       Robert P. Spretnak, Esq.

Attorney for Nicolle Foster, Plaintiff-Appellant

8275 S. Eastern Avenue, Suite 200
Las Vegas, Nevada 89123