**Docket No. 23-2983**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

---

**NICOLLE FOSTER**

Plaintiff-Appellant

v.

**CREDIT ONE BANK, N.A.**

Defendant-Appellee

---

Appeal from the U.S. District Court for the District of Nevada,
Case No. 2:21-CV-00680-APG-VCF, Honorable Andrew P. Gordon Presiding

---

**ANSWERING BRIEF OF APPELLEE**

---

Anthony L. Martin, Nevada Bar No. 8177
Molly M. Rezac, Nevada Bar No. 7435
Noel M. Hernandez, Nevada Bar No. 13893
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
10801 W. Charleston Blvd., Suite 500
Las Vegas, NV 89135
Telephone: (702) 369-6800
Facsimile: (702) 369-6888

Attorneys for Defendant-Appellee Credit One Bank, N.A.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendant-Appellee Credit One Bank, N.A. ("Appellee" or "Credit One") certify that no other parties have an interest in the outcome of this case. Appellee, Foster's employer, is a subsidiary of Sherman Financial Group LLC, and is wholly owned by Credit One Financial.

No publicly held corporation holds more than ten percent interest in the above companies.

# TABLE OF CONTENTS

**Page(s)**

CORPORATE DISCLOSURE STATEMENT ..................................................... i

TABLE OF CONTENTS............................................................. ii, iii, iv

TABLE OF AUTHORITIES ..................................................v, vi, vii

INTRODUCTION ........................................................................... 1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW .......................... 4

STATEMENT OF THE CASE................................................................ 5

A.  Foster's Employment With Credit One ........................................ 5

   1.  Foster Was Well Aware of Credit One's Policies
       Prohibiting Discrimination..................................................... 5

   2.  Foster Received Multiple Corrective Actions For
       Ongoing Behavioral And Performance Issues ......................... 6

   3.  Following Her Annual Review In May 2018, Foster
       Requested Assignment To A New Manager................................ 7

   4.  Foster's FMLA Leave Request Were Always Approved ................. 8

   5.  The Misunderstanding Regarding Foster's Paid Time
       Off Request Was Immediately Resolved .................................. 9

   6.  Coworkers Complained About Foster's Derogatory
       And Offensive Remarks Regarding Her Former
       Supervisor, Mason; Credit One Launched An
       Investigation .................................................................. 10

B.  Foster *Does Not* Believe Credit One Terminated Her
    Because of Her Medical Condition ............................................ 12

C.  Relevant Procedural Posture Of This Case ................................ 13

D.  The Below Disposition ......................................................... 13

   1.  Summary Judgment Granted On ADA
       Discrimination ................................................................ 14

   2.  Summary Judgment Granted On Foster's ADA
       Retaliation Claim............................................................. 14

   3.  Summary Judgment Granted On Foster's FMLA
       Claims............................................................................ 15

|  |  | a. | FMLA Interference Claim ........................................ | 16 |

|  |  | b. | FMA Retaliation Claim ........................................... | 16 |

SUMMARY OF ARGUMENT .......................................................... 17

A. Foster Cannot Rely Upon Conclusory Statements, Inadmissible Unemployment Hearings Nor Her Affidavit Contradicting Her Own Testimony To Defeat Summary Judgment .................................................................. 18

B. The Undisputed Material Facts Demand Affirmation Of Summary Judgment On Foster's FMLA Claims ..................... 19

    1. Foster's FMLA Claims Are Barred By The Two Year Statute Of Limitations ..................................... 19

    2. Credit One Did Not Interfere With Foster's FMLA Rights ........................................................................ 20

    3. Foster Has Not And Cannot Demonstrate FMLA Retaliation .................................................................. 21

C. Foster's ADA Discrimination Claim Fail .......................... 21

    1. Foster Is Not Disabled .............................................. 22

    2. Foster Admits She Was Not Terminated Because Of Her Alleged Disability ........................................... 22

    3. Credit One Had A Legitimate, Non-Discriminatory Reason For Terminating Foster ................................ 23

D. Foster's ADA Retaliation Claim Fails ............................... 23

ARGUMENT ............................................................................ 24

A. Standard For Summary Judgment .................................... 24

B. Foster's Speculative Narrative Is Not Evidence And Is Not Sufficient To Defeat Judgment ................................ 25

    1. The Unemployment Hearing Officer's Decision Is Not Admissible And Cannot Support Foster's "Set-Up" Narrative .................................................... 25

    2. Foster Cannot Create Issues Of Fact By Contradicting Her Own Prior Sworn Deposition

Testimony .......................................................... 26

C.   Foster Was Not Worried About The Misunderstanding
     Regarding Pay Or Intermittent FMLA Leave  ................ 27

D.   The District Court Properly Held That Foster's FMLA
     Interference Claim Is Time-Barred ............................... 30

     1.   Foster's Unsupported Narrative Is Not Evidence
          And Cannot Support Application Of A Three
          Year Statute of Limitations ................................. 31

E.   The District Court Properly Held That Foster's
     Termination Was Not Unlawful Interference With Her
     FMLA Right Nor Unlawful Retaliation For Objecting
     To The Interference  ................................................. 32

     1.   Foster May Not Sustain An FMLA Interference
          Claim For Alleged Denial Of Paid Leave  ............... 33

     2.   Recasting Her FMLA Claim As One For
          Retaliation Is Of No Effect ............................... 34

F.   The District Court Properly Held That Foster's Claims
     For Discrimination Under The ADA Failed As A
     Matter Of Law  ...................................................... 36

     1.   Foster Was Not "Disabled"  ............................... 36

     2.   Foster Admits That She Was Not Terminated
          Because Of Her Alleged Disability ....................... 38

     3.   Foster's Discrimination Claim Fails Even If Credit
          One Was Incorrect ......................................... 40

G.   Foster's ADA Retaliation Claim Is Similarly Fatally
     Flawed ............................................................... 40

     1.   Foster Did Not Oppose Alleged Discrimination ........... 41

     2.   No Causal Connection To Support Foster's ADA
          Retaliation Claim .......................................... 43

CONCLUSION ............................................................ 44

STATEMENT OF RELATED CASES ................................... 45

CERTIFICATE OF COMPLIANCE  ................................... 46

CERTIFICATE OF SERVICE ........................................... 48

iv

## TABLE OF AUTHORITIES

**CASES**          **PAGE(S)**

*Alam v. Reno Hilton Corporation,*
819 F.Supp. 905 (D. Nev. 1993)....................................................25

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986)........................................................................24

*Bachelder v. Am. West Airlines, Inc.,*
259 F.3d 1112 (9th Cir. 2001) ................................................ 20, 32

*Barrett v. Illinois Dep't of Corrections,*
803 F.3d 893 (7th Cir. 2015) .........................................................30

*Becknell v. University of Kentucky,*
383 F.Supp.3d 743 (E.D. Kentucky 2019) .........................20, 34, 35

*Bradshow v. Golden Road Motor Inn,*
885 F. Supp. 1370 (D. Nev. 1995).............................................25, 26

*Brown v. City of Tucson,*
336 F.3d 1181 (9th Cir. 2003) ................................................23, 40, 44

*Casper v. Titanium Metal Corp.,*
2018 WL 4283055 at *4 (D. Nev. Sep. 7, 2018)....................23, 41

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986)...................................................................... 25

*Curley v. City of N. Las Vegas,*
2012 WL 1439060 at *3 (D. Nev. Apr. 25, 2012) aff'd,
772 F.3d 629 (9th Cir. 2014) .........................................................37

*Enzo Biochem, Inc. v. Gen-Probe, Inc.,*
424 F.3d 1276 (Fed. Cir. 2005) .....................................................26

*Fox v. Eagle Distrib. Co.,*
510 F.3d 587 (6th Cir. 2007) .........................................................42

*Hubbard v. Day & Zimmermann Hawthorne Corp.,*
2015 WL 1281629, at *4 (D. Nev. Mar. 20, 2015) .......................36

*In re Slatkin,*
525 F.3d 805 (9th Cir. 2008) .........................................................24

*Invitrogen Corp. v. Clontech Lab'ys, Inc.,*
429 F.3d 1052 (Fed. Cir. 2005) .....................................................26

*Kennedy v. Allied Mut. Ins Co.,*
952 F.2d 262 (9th Cir. 1991) .............................................18, 26, 29

v

*Kennedy v. Applause,*
    90 F.3d 1477 (9th Cir. 1996) ........................................21, 36, 37

*LeBarron v. Interstate Group, LLC,*
    529 F.Supp.3d 1163 (D. Nev. 2021) ...................................23, 41

*Lewis v. Philip Morris, Inc.,*
    355 F.3d 515 (6th Cir. 2004) ...............................................19, 25

*McDonnell Douglas Corp. v. Green,*
    411 U.S. 792 (1973)...............................................17, 21, 22, 36

*McLaughlin v. Richard Shoe Co.,*
    486 U.S. 128, 108 S. Ct. 1677 (1988) .................................19, 30

*Murray v. May Clinic,*
    934 F.3d 1101 (9th Cir. 2019) .....................................................38

*Nat'l Steel Corp. v. Golden Eagle Ins. Co.,*
    121 F.3d 496 (9th Cir. 1997) ...............................................19, 25

*Nelson v. Pima Community College,*
    83 F.3d 1075 (9th Cir. 1996) .......................................................24

*Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.,*
    18 F.3d 1468 (9th Cir. 1994) .......................................................24

*Olson v. United States Dept. of Energy,*
    980 F.3d 1334 (9th Cir. 2020)...................................19, 20, 34

*Pardi v. Kaiser Found Hosps.,*
    389 F.3d 840 (9th Cir. 2004) .........................23, 40, 41, 42

*Ragsdale v. Wolverine World Wide, Inc.,*
    535 U.S. 81 (2002)..............................................................20, 34

*Rohr v. Salt River Project Agric. Improvement and Power Dist.,*
    555 F.3d 850 (9th Cir. 2009) .........................................36, 37

*Sampra v. U.S. Dep't of Transp.,*
    888 F.3d 330 (7th Cir. 2018) ......................................................30

*Sonner v. Schwabe N. Am. Inc.,*
    911 F.3d 989 (9th Cir. 2018) .......................................................25

*Soto v. Aria Resort and Casino, LLC,*
    2017 WL 3667696 at *6 (D. Nev. Aug. 23, 2017)........................25

*St. Mary's Honor Cir. Hicks,*
    509 U.S. 502 (1993).....................................................................40

*T.B. ex real. Brenneise v. San Diego Unified Sch. Dist.,*
    806 F.3d 451 (9th Cir. 2015) .............................................23, 41

*Texas Dep't of Cmty Affairs v. Burdine*,
    450 U.S. 248 (1981)..............................................................22, 36

*Villarimo v. Aloha Island Air, Inc.*,
    281 F.3d 1054 (9th Cir. 2002) ............................................ 23, 40

*Williams v. City of Las Vegas*,
    2:06-cv-00886-BES-PAL, 2008 WL 11449420 *3
    (D. Nev. June 16, 2008 ..........................................................43

*Yazdian v. ConMed Endoscopic Techs., Inc.*,
    793 F.3d 634 (6th Cir. 2015) ...................................................42

## Statutes

29 C.F.R. § 825.113 ........................................................................22, 37

29 C.F.R. § 1630(j) ...............................................................................37

29 C.F.R. §1630.2(j)(1)(ii)..............................................................37, 38

29 U.S.C. § 2612(c)(1)(C) .........................................................20, 33, 35

29 U.S.C. § 2617(c)(1) ...................................................................19, 30

29 U.S.C. § 2617(c)(2).........................................................................30

42 U.S.C. § 12102 ..........................................................................22, 37

N.R.S. 612.533 ....................................................................................26

FRCP 56(c) ..........................................................................................24

## INTRODUCTION

This is an Americans with Disability Act ("ADA") discrimination/retaliation and Family and Medical Leave Act ("FMLA") interference case, except not even Plaintiff-Appellant Nicolle Foster ("Foster") believes that her purported disability and/or FMLA leave had anything whatsoever to do with her termination. Her succinct response when asked at deposition if she believed otherwise was: *No*. ***Repeatedly***. And, the undisputed facts confirm this reality.

The truth is that Foster blatantly and egregiously violated Credit One's policies against using obscene and offensive language to refer to her former supervisor's race and sexual orientation. Specifically, it was reported, and confirmed by interviews with two of Foster's co-workers that she referred to the supervisor as a N**** (derogatory racial slur) and F***** (derogatory homophobic slur). Now, however, Foster insists Credit One got it wrong. Despite the two independent verifications of Foster's word choice, she denies it.

Foster's strained attempt to contort these undisputed facts into an ADA and/or FMLA claim is glaringly insufficient to withstand summary judgment, and, as such, summary judgment should be affirmed. For starters, her FMLA claim is untimely and fails as a matter of law. Moreover, the fact that she took FMLA leave simply does not excuse, or require that Credit One ignore, her egregious behavior. What the undisputed facts show is that she requested, and received, approximately two months of continuous FMLA leave related to anxiety and a depressed mood. Beyond being untimely, the crux of that claim is, while Foster admits she has absolutely no idea if it happened, and the undisputed evidence confirms it did not, she suspects that her former supervisor discussed her FMLA leave with one of her co-workers. That is it. And that is not legally sufficient to support an FMLA interference claim.

1

Moreover, there is one critically fundamental thing missing entirely from Foster's attempt to seek the reversal of the District Court's granting of Credit One's summary judgment motion: ***evidence***. Instead, Foster offers an unsupported narrative full of accusations of sinister revenge, sordid collusion and outright lies, including even allegations of perjury before an administrative body. Her entire opposition to the District Court's granting of Credit One's summary judgment hinges on this Court blindly accepting this narrative, revealed not even through Foster's words, but mostly her attorney's argument consisting of generous, even extreme, extrapolation of what Foster does offer. And, what Foster herself offers is of no evidentiary value to begin with.

First, Foster contradicts her own prior sworn deposition testimony in an attempt to create the illusion of having made a complaint protected under the FMLA and/or ADA. Not only is her contradictory statement that she complained for not being paid for intermittent FMLA leave not true, but paid leave is not something either law entitles her to, foreclosing any liability for such purported complaint. Second, while she acknowledges that it is ***not evidence***, she submits the decision from the unemployment benefits hearing officer, using it as the starting point for her attorney to tell the sensational tale that she was "set-up" and Credit One acted knowing that the concern regarding her use of vile language was entirely made-up, all so that it could terminate her for leave that she was indisputably allowed to take.

Ultimately, Foster's story serves only to highlight the actual undisputed evidence that compelled summary judgment in favor of Credit One. Foster was terminated for violating Credit One's policies against using obscene language, referring to her former supervisor as a N**** and a F*****. Not even Foster believes that her FMLA leave and/or purported disability had anything to do with her termination. The law is clear—no matter the extremes Foster goes to

"prove" she did not use such language, liability does not attach for Credit One's undisputed good faith belief that she did. The fact that Foster took FMLA leave in the weeks before her termination does not, in any way, alter the analysis, let alone support a finding of violation of the FMLA and/or ADA.

The District Court's Order granting Credit One's summary judgment should be affirmed.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.     Did the District Court err in finding that Foster failed to raise a genuine dispute that Credit One's actions towards her were willful, thus applying the two-year statute of limitations and finding her FMLA claims were barred?

2.     Did the District Court err in deciding that no reasonable jury could find that Credit One willfully interfered with or denied Foster's right to paid leave, nor could a reasonable jury find that Credit One willfully violated the FMLA by terminating Foster for complaining about her missing pay?

3.     Did the District Court err in finding that, in the light most favorable to Foster, she did not establish prima facie cases of ADA discrimination or retaliation, that Credit One articulated that it fired Foster for a nondiscriminatory, nonretaliatory reason because she violated company policy by using slurs to refer to another employee, and that Foster failed to present evidence raising a genuine dispute that Credit One's reason for termination was pretextual for disability discrimination or retaliation?

## STATEMENT OF THE CASE

The undisputed evidence shows that even Foster agrees that her termination had nothing to do with the FMLA or her medical condition. Moreover, the undisputed evidence shows that Foster was terminated as a result of her own conduct: violating Credit One's policies by using obscene language, referring to her former supervisor as a N**** and a F*****. Summary judgment in this case should be affirmed.

### A. Foster's Employment With Credit One

Foster began her employment with Credit One as a Collections Representative on September 17, 2007. (Deposition of Nicolle Foster ("Foster Depo."), Supplemental Excerpts of Record ("SER"), 1-SER-10:22-11:2, 1-SER-51:3-18.) She remained in a Collections Representative position throughout her employment, and was responsible for calling customers regarding past due accounts. (*Id.*, 1-SER-11:3-23, 1-SER-12:3-15.) Her job duties included collecting delinquent accounts or accounts that are over the credit limit; analyzing account statuses to determine appropriate action; and assertively communicating with cardholders. (Declaration of Megan Lago ("Lago Dec."), 2-SER-304-06, at ¶ 2.)

### 1. Foster Was Well Aware Of Credit One's Policies Prohibiting Discrimination

Foster was aware of, and acknowledged on numerous occasions, Credit One's commitment to providing a workplace free of discrimination and harassment. (Foster Depo., 1-SER-53:6-55:19; Policy Acknowledgments, 1-SER-130-137.) She understood that Credit One considered an employee's use of sexual orientation and profanity inappropriate. (Foster Depo., 1-SER-53:14-54:6.) She received Credit One's employee handbook, most recently on April 16, 2018, and was aware of the Equal Employment Opportunity, ADA

5

Reasonable Accommodation, Discrimination and Harassment, Leave of Absence and Standards of Conduct provisions contained therein. (Foster Depo., 1-SER-55:20-57:2; Handbook Acknowledgments, 1-SER-138-166.) She was also aware that she could raise concerns regarding such issues at the workplace. (Foster Depo., 1-SER-54:24-57:3.)

### 2. Foster Received Multiple Corrective Actions For Ongoing Behavioral And Performance Issues

Foster also received corrective actions throughout her employment regarding performance, quality deficiencies, and violations of company policy. (Foster Depo., 1-SER-61:21-62:17, 1-SER-66:6-22, 1-SER-77:21-78:15, 1-SER-79:2-15, 1-SER-85:23-88:21, 1-SER-89:21-92:1, 1-SER-93:17-94:18, 1-SER-98:22-99:20, 1-SER-108:9-111:3; Corrective Actions- Performance, Quality, Policy Violations, 1-SER-215-264.) Examples of Foster's unprofessional behavior while employed with Credit One, warranting corrective action from numerous managers, include:

- On February 8, 2009, Credit One received a complaint from a customer stating that ***Foster was very unprofessional and used obscene language towards her by calling her a B\*\*\*\****. Credit One issued a corrective action and counseled Foster on her abusive behavior. (Foster Depo., 1-SER-66:6-68:10; 1-SER-228);

- On October 8, 2013, Foster received a corrective action for displaying an ***unprofessional and abrasive tone*** when responding to a customer; becoming frustrated on the call and not answering or responding to the customer's question; slamming the phone down; and not asking the customer to hold on or place the call on mute. (Foster Depo., 1-SER-79:2-15; 1-SER-233-234);

- On September 13, 2016, Foster received a corrective action for failing to follow Credit One's documentation and handling

6

policy and procedure and for using an ***unprofessional and sarcastic tone with a customer*** (Foster Depo., 1-SER-89:21-90:19; 1-SER-241-243);

• On October 5, 2016, Foster received a corrective action for ***insubordination, rudeness, and discrimination and harassment for threatening her peer***. Specifically, Foster told Dale Mason ("Mason") that the team was full of "hustlers" and "could collect money from the streets." She then told another coworker in an aggressive tone, "***if you have anything to say, we clock out in 10 min. we can handle it outside***" and threatened "***if it's a problem, we can take it outside***." (Foster Depo., 1-SER-91:12-92:1; 1-SER-244-246). [1]

### 3. Following Her Annual Review in May 2018, Foster Requested Assignment to a New Manager

Foster's propensity to be rude and/or unprofessional was reflected on her last two performance evaluations, where she earned an unsatisfactory "courtesy" rating. (Foster Depo., 1-SER-95:21-96:14, 1-SER-97:2-6, 1-SER-102:11-17; May 16, 2017 Performance Evaluation, 1-SER-266-70; May 15, 2018 Performance Evaluation, 1-SER-271.) Her May 16, 2017 evaluation notes, "[Foster] can show improvement by being optimistic and keeping a positive attitude daily" and that she needs to be "mindful of her tone". (May 16, 2018 Performance Evaluation, 1-SER-269.) A similar comment, "[Foster's] area of improvement is showing a positive attitude towards her work on a consistent basis" was reflected a year later, on her May 15, 2018 review. (May 15, 2018 Performance Evaluation, 1-SER-271.)

Unsatisfied with her May 15, 2018 performance evaluation, Foster

---

[1] It appears that unprofessional conduct continues to plague Foster, as a subsequent employer issued a corrective action for her being "blunt, curt, rude, at times giving out incorrect information, and prone to interrupting members" and terminated her employment when she was heard saying, "Get the fu-- outta here." (Foster Depo., 1-SER-123-126.)

requested to be assigned to a different manager. (Foster Depo., 1-SER-102:18-103:21.) She had been reporting to Allen "Dale" Mason since September 1, 2016. (*Id.,* 1-SER-13:16, 1-SER-59:3-9.) Foster and Human Resources discussed the need for additional management training for Mason, who Foster felt "couldn't handle all of these attitudes [of the representatives he supervised] because he was young and still not professional enough to understand." (*Id.*, 1-SER-31:17-32:5, 1-SER-103:5-7.) Foster believed Mason treated her poorly because she was a top producer and Mason used to be her competition, which according to Foster created a "sour situation" and friction between them. (*Id.*, 1-SER-32:10-34:5.) Foster's request to be removed from Mason's team was granted, and effective June 7, 2018, she began to report to Terrance Taylor without objection. (*Id.*, 1-SER-59:10-13, 1-SER-60:7-9, 1-SER-63:18-20.) Similar to virtually all of her managers before him, Taylor had occasion to issue Foster a corrective action for violating call policy procedure. (*Id.,* 1-SER-108:9-21; December 4, 2018 Corrective Action, 1-SER-259-60.)

After Foster's transfer to Taylor on June 7, 2018, Mason did not administer any discipline towards her. (Foster Depo., 1-SER-24:24-25:20.) Mason addressed work issues with her "a couple of times". (*Id.*, 1-SER-27:18-30:5.) She felt, however, that because she was no longer on his team, he should not have spoken to her at all. (*Id.*, 1-SER-28:5-18.)

### 4. Foster's FMLA Leave Requests Were Always Approved

The first time Foster notified Credit One of a need for FMLA leave was after she began reporting to Taylor. (Foster Depo., 1-SER-14:11-15:2, 1-SER-16:10-13.) On June 19, 2018, she submitted FMLA paperwork to Human Resources. (*Id.,* 1-SER-16:23-17:11, 1-SER-117:23-119:21; FMLA Paperwork, 1-SER-273-278.) Her FMLA was immediately approved and she was placed on leave effective June 19, 2018. (Foster Depo., 1-SER-17:23-18:1.)

8

The FMLA paperwork indicates a period of incapacity through December 30, 2018. (FMLA Paperwork, 1-SER-277.) However, on August 7, 2018, Foster was released to return to work *without restriction.* (Foster Depo., 1-SER-19:21-20:8) (emphasis added.) Her therapist specified: "[Foster] *is able to return to work and perform her usual assigned duties* as of August 7, 2018. She has been released from my care [from my care [sic]] and is stabilized." (August 7, 2018 letter from Donna Gosnell, M.F.T., 1-SER-292) (emphasis added.)

Upon her return, Foster was allowed intermittent leave as she determined necessary, which she took whenever she wanted. (Foster Depo., 1-SER-18:10-16, 1-SER-18:21-19:12.) None of Foster's FMLA leave requests were ever denied by Credit One:

> Q: . . . Were any of your requests for leave under the Family and Medical Leave Act denied by Credit One?
>
> A: **Never**.

(*Id.,* 1-SER-18:17-20; *see also* 1-SER-19:10-12.) Foster *does not* believe Credit One used her time off on FMLA as a reason to terminate her:

> Q: And do you believe Credit One used your time off on FMLA as a reason to terminate you?
>
> A: **No.**

(*Id.* at 1-SER-36:2-4) (emphasis added.)

### 5. The Misunderstanding Regarding Foster's Past Time Off Request Was Immediately Resolved

In December 2018, Foster's supervisor, Taylor went on vacation, leaving Mason the only supervisor on the floor. (Foster Depo., 1-SER-21:3-22, 1-SER-41:7-43:13.) Foster took a few days of FMLA leave during this time. (*Id.*) When she returned on December 14, 2018, Taylor told her that the time she took was designated as unpaid leave and he mistakenly believed that she had

9

exhausted her FMLA leave. (*Id.*, 1-SER-21:23-22:5, 1-SER-24:24-25:20.) Foster went to Human Resources to inquire about the status of her FMLA leave. (*Id.*, 1-SER-22:5-10.) She was told that Taylor was mistaken, her intermittent FMLA leave remained in place, and she would be paid for the time taken. (*Id.*)

The very next day, December 15, 2018, Taylor apologized, confirming that her FMLA was still in place and her pay for the intermittent leave would be corrected. (Foster Depo, 1-SER-23:24-24:6.) Foster was, in fact, paid. (*Id.*, 1-SER-24:7-12.) Other than this discrete, single mistaken ***and corrected*** designation of unpaid leave, Foster did not experience any issue with her pay following her assignment to Taylor's team. (*Id.*, 1-SER-25:5-20.)

Foster claims that Mason interfered with her FMLA leave in December 2018. (Foster Depo., 1-SER-106:18-22.) This "interference" consisted solely of the following: when Foster was on intermittent leave during Taylor's absence, she received a phone call from a co-worker who inquired if she was getting paid for her time off. (*Id.*, 1-SER-39:11-20.) The co-worker did not ask about her FMLA leave. (*Id.*, 1-SER-37:7-18, 1-SER-39:21-23.) Foster thought it was weird that her co-worker called her, but admits she does not know if Mason discussed her FMLA leave with that co-worker. (*Id.*, 1-SER-38:21-40:22, 1-SER-44:9-15.) Foster was not concerned about the misunderstanding regarding her pay; rather, she "was worried about [her] HIPAA rights talked about with my FMLA". (*Id.*, 1-SER-45:7-11; *see also Id.*, 1-SER-115:4-118:11; Foster's December 12, 2018 Email, 1-SER-280-81.) Foster did not inform Human Resources of these concerns. (*Id.*) In fact, she told Human Resources that she took care of the issue, "no worries", and "it was not an fmla (sic) issue". (*Id.*)

### 6. Coworkers Complained About Foster's Derogatory And Offensive Remarks Regarding Her Former Supervisor, Mason; Credit One Launched An Investigation

On December 18, 2018, Megan Lago ("Lago"), Assistant Vice President,

Human Resources, was notified that Foster made derogatory remarks to her co-workers referring to Mason's race and sexual preference. (Lago Decl., 2-SER-304-06, ¶¶1, 3.) Specifically, it was reported that Foster called Mason a N**** and a F*****. (*Id.*) It was also reported that Foster said she was going to get Mason fired for discussing her personal information with another collection representative and she blamed him for "messing with her bonus". (*Id.*) Foster was immediately advised of the complaints and was suspended pending investigation. (*Id.*, ¶ 4.) While on suspension, Foster emailed Lago and, for the first time, disclosed to Human Resources her concern regarding the call from her co-worker and "private info being leaked out and people worried about my business." (Foster Depo.,1-SER-46:12-48:19; December 19, 2018 Email, 1-SER-294-295.) Lago immediately acknowledged receipt of the email and told Foster that her concerns would be investigated. (*Id.*)

Lago interviewed Foster and four witnesses, two of whom confirmed that Foster called Mason a N**** and a F*****. (Lago Dec., 2-SER-304-06.) She spoke with Rosinya Williams, the co-worker whom Foster suspected of calling her after discussing her FMLA with Mason. (*Id.* at ¶ 5; s*ee also* Foster's December 19, 2018 Email, 1-SER-294.) Williams told Lago that she never discussed Foster's FMLA status or leave with Mason. (Lago Dec., 2-SER-304-06.)

Following the investigation, Foster was terminated on December 21, 2018 for violating company policy. (Lago Dec., 2-SER-304-06.) The persons involved in making the decision to terminate Foster were: Lago; Ann Krutchik, Senior Vice President, Human Resources; Rayna Jasper, Vice President, Collections; and Rafe Dunlap, Vice President, Collections. (Defendant Credit One Bank N.A's Answers to Foster's First Set of Interrogatories, Interrogatory No. 2, 2-SER-310-12.)

Foster filed this lawsuit on March 12, 2021, more than two years after her termination. (Complaint, ER-260-278.)

**B.**    **Foster *Does Not* Believe Credit One Terminated Her Because of Her Medical Condition**

Foster's alleged disability is that she was "going through a lot of depression, anxiety, humiliation". (Foster Depo., 1-SER-13:18-23.) Her FMLA paperwork identifies "anxiety attacks, severe depressed mood". (FMLA Paperwork, 1-SER-276.)    Foster ***does not*** believe that she was terminated because of her medical condition:

> Q: Do you believe Credit One used your medical condition to terminate you?
>
> A: **No.**
> . . .
> . . .
>
> Q: What facts do you have . . . that support your position that you were terminated because of your medical condition?
>
> A: **I don't have any facts towards my medical condition.**

(Foster Depo., 1-SER-35:24-36:4, 1-SER-39:1-6.)

Foster testified that Mason is the only person whom she felt "discriminated against" her while employed at Credit One. (Foster Depo., 1-SER-25:21-26:11.)  However, her use of the word "discriminated" is not due to her use of FMLA leave or any alleged disability.  Rather, she believes that there was friction between her and Mason when he was her supervisor because he was young with too much power, inexperienced, and used to be her competition before he became a supervisor. (*Id.*, 1-SER-31:17-34:19.)  Despite this, she was still able to be a top performer, earning large incentives, while on Mason's team. (*Id.*, 1-SER-112:9-19, 1-SER-113:2-25, 1-SER-114:9-13.)

After being reassigned from Mason's team, and while out on FMLA leave, she submitted a statement detailing "everything [she] was going through" with

Mason, who she described as being on a power trip, using bullying tactics, and she felt humiliated by the annual review he gave her. (Foster Depo., 1-SER-104:25-108:6; July 31, 2018 written statement, 1-SER-290.) Foster's statement makes no suggestion whatsoever of leave interference and/or alleged disability discrimination. (Foster Depo., 1-SER-106:18-107:9.) Foster acknowledges this, stating those things did not allegedly occur, if at all, until months later in December 2018. (*Id.*)

Foster filed a charge with the Nevada Equal Rights Commission on July 25, 2019. (Foster Depo., 1-SER-7:25-10:2; Charge of Discrimination filed with Nevada Equal Rights Commission on July 25, 2019, 2-SER-298-299.) Therein, she states that she was terminated for "false allegations, which, even if proven true, should not warrant termination." (*Id.*, 2-SER-299.)

## C.     Relevant Procedural Posture Of This Case

Foster filed her Complaint on March 12, 2021, in the Eighth Judicial District Court in Clark County, Nevada, alleging claims for (1) unlawful employment discrimination due to disability, (2) unlawful retaliation for opposing disability-based discrimination; and (3) interference with rights under the FMLA. (ER-261-267.) On April 23, 2021, Credit One filed its Petition for Removal. (ER-5.) After full discovery, Credit One filed its Motion for Summary Judgment ("Motion") on December 9, 2022, seeking summary judgment on all of Foster's claims. (ER-8.) Foster opposed Credit One's Motion on January 11, 2023, and Credit One replied on January 25, 2023. (ER-9.)

## D.     The Below Disposition

On September 28, 2023, the District Court entered its Order Granting Credit One Bank's Motion for Summary Judgment in its entirety. (ER-15.) Foster has appealed from that Order. (*See* ER-11, Notice of Appeal, October 17, 2023.)

### 1. Summary Judgment Granted On ADA Discrimination

In its Order, the District Court properly held that "[e]ven viewing the evidence in the light most favorable to Foster, she does not establish prima facie cases of ADA discrimination or retaliation." (ER-20.) In so finding, the District Court assumed, without deciding, that Foster was disabled as defined by the ADA. (*Id*.) However, the District Court then found that "Foster testified that she did not believe Credit One used her medical condition to terminate her," that Foster "provided no facts to support the contention that she was fired because of her medical condition," and that "[i]n her declaration, Foster confirmed that she '[does] not believe that she was fired because of [her] disability.'" (ER-20) (*citing* Foster Depo, and Foster Aff..) The Court noted that Foster pointed only to the fact that she was fired "less than one week after she complained" about missing pay from her few days of FMLA leave, but the District Court found that fact is relevant only to the retaliation claims. (ER 20). Foster failed "to show a genuine issue of material fact that she was terminated because of her disability," and therefore failed "to present a prima facie case of discrimination." (ER-20-21.)

Despite Foster's failure at presenting a prima facie case of discrimination, the District Court continued its analysis and found that Credit One articulated that it fired Foster for a nondiscriminatory reason because she violated company policy by using slurs to refer to another employee. (ER-21.) Further, the District Court found that Foster failed to present evidence raising a genuine dispute that Credit One's reason for termination was pretextual for disability discrimination or retaliation. (ER-21-22.)

### 2. Summary Judgment Granted On Foster's ADA Retaliation Claim

The District Court also found that Foster failed to present a prima facie case of retaliation. The District Court assumed without deciding that Foster "engaged in protected activity when she complained to Human resources about not receiving pay

for her medical leave." (ER-23.) The District Court noted that "the short time between the two events weighs in favor of finding a genuine dispute regarding causation, but temporal proximity must be considered in context." Importantly, the District Court determined that "there is no evidence that Mason knew Foster complained to Human Resources about the missing pay, which breaks Foster's causal chain." (ER-24.) "Moreover, upon receiving Foster's complaint about missing pay, Credit One remedied it as soon as practicable and paid Foster for her medical leave even after it terminated her. (ER-24.) The District Court then found that "no reasonable jury could find that, but for Foster's complaint about the missing pay, Credit One would not have fired her. Therefore, Foster fails to present a prima facie case of ADA retaliation." (ER-24.)

Further, the District Court found that a reasonable jury could not find pretext. Foster contended that "Credit One's 'human resources department was complicit in the lie,' referring to her belief that she was falsely accused of using slurs." (ER-24.) Foster's sole basis for pretext was the "inconsistency between Yanez-Tourigny's testimony at the state unemployment hearing and the face of White and Tillman's statements about the incident." (ER-25.) However, a "jury could not reasonably infer from this inconsistency that Credit One's explanation is unworthy of credence and is pretext for retaliation where Credit One immediately acknowledged Foster was correct and remedied her missing pay." (ER-25.)

### 3. Summary Judgment Granted On Foster's FMLA Claims

The District Court noted that "the parties agree that the two-year limitation period bars Foster's claims unless she shows that Credit One violated the FMLA willfully," as "Foster was fired by Credit One on December 21, 2018. She filed a complaint in state court on March 12, 2021, obviously more than two years after her termination." (ER-26, and fn3.) The District Court then found that Foster did not raise a genuine dispute that Credit One's actions toward her were willful. (ER-15.)

15

Therefore, "her FMLA claims are barred by the two-year statute of limitations." (ER-15.)

### a. FMLA Interference Claim

Foster asserts her claim for interference alleging that "Credit One's failure to pay her for her FMLA leave was willful interference with her FMLA rights because it was Credit One's policy for employees to use paid time to cover FMLA leave and because Credit One knew that it was wrong in docking her pay." (ER-26-27.) Assuming without deciding that Foster was entitled to paid leave under the FMLA and Credit One's policies, the District Court found that the undisputed evidence demonstrated that "Credit One resolved the missing pay issue within a day after it was brought to its attention, and Foster received the missing pay in her next paycheck because the current pay period's hours had already been submitted." (ER-27.) "Based on these facts, a reasonable jury could not find that Credit One willfully interfered with or denied Foster's right to paid leave. Therefore, the two-year limitations period bars this claim." (*Id.*)

### b. FMLA Retaliation Claim

The District Court found that Foster "did not plead an FMLA retaliation claim under § 2615(a)(2)," but in "her opposition to summary judgment, she contends that Credit One unlawfully retaliated against her when it fired her for complaining about her missing pay." (ER-27.) Despite finding that Foster "did not provide fair notice to Credit One that she was asserting an FMLA retaliation claim based on her complaint about missing pay," (ER-28, fn 6), the District Court fully analyzed Foster's FMLA retaliation Claim and found there was insufficient evidence that Credit One retaliated against Foster. (ER-29.)

For the retaliation claim, "Foster's alleged chain of causation is that (1) Mason chose not to pay Foster for taking FMLA leave, (2) Foster complained about her missing pay to Human Resources, (3) Mason coordinated with White and Tillman

to falsely allege that Foster used slurs, and (4) Credit One fired her even though it knew the allegations were false." (ER-27-28.) Finding that Foster submitted "no evidence that Mason knew about or had an opportunity to find out about Foster's complaint to Human Resources about the missing pay," and, "even if Mason knew about Foster's complaint, a reasonable jury could not impute his retaliatory motive to Credit One" because "Human Resources independently interviewed White and Tillman, and Mason was not involved in the termination decision." (ER-29.) Under either the *McDonnell Douglas* framework or a preponderance of the evidence approach, "the result is that there is insufficient evidence for a jury to find that Credit One willfully violated the FMLA by terminating Foster for complaining about her missing pay." (*Id.*) "Therefore, even if Foster's retaliation claim was properly pleaded, it is barred by the FMLA's statute of limitations." (*Id.*)

## SUMMARY OF ARGUMENT

Foster's entire case rests upon her speculative, specious narrative devoid of any actual evidence. Thus, summary judgment in favor of Credit One was proper. The following undisputed facts demonstrate that summary judgment should be affirmed:

1.    Foster was approved for and took all the FMLA leave she needed (Foster Depo., 1-SER-18:10-19:12);

2.    Foster did not complain about missing pay; rather, her supervisor informed her that she was not paid and Foster inquired with Human Resources about her FMLA status (Foster Aff., ER-34 at ¶7(b), 7(c);

3.    The misunderstanding regarding Foster's pay while out on FMLA leave was immediately resolved (Foster Depo., 1-SER-24:7-12.);

4.    Two independent witnesses were interviewed and confirmed that Foster called Mason a N**** and a F****. (Lago Dec., 2-SER-305 at ¶7.)

17

5.      Foster did not complain about her FMLA nor about her alleged disability, nor the misunderstanding regarding her pay.  Rather, she "was worried about [her] HIPAA rights talked about with my FMLA."  (Foster Depo., 1-SER-45:7-11, 1-SER-115:4-117:11; 1-SER-280-281.)

6.      Foster did not inform Human Resources of these concerns until *after* she was suspended pending the investigation about her violations of Credit One policies for using slurs.  At that time, Foster emailed Human Resources regarding the call from the co-worker and her concerns that her "private info [was] being leaked out and people worried about my business."  (Foster Depo., 1-SER-46:12-48:19.)

6.      Foster confirmed, however, that her concern was "not an fmla (sic) issue."  (Foster's December 12, 2018 Email, 1-SER-280-281.)

7.      Foster does not believe that her termination had anything to do with her FMLA leave.  (Foster Depo., 1-SER-36:2-4.)

8.      Foster does not believe that her termination had anything to do with her medical condition.  (Foster Depo., 1-SER-35:24-36:6.)

These undisputed material facts preclude any claim for violations of the FMLA or ADA.  As such, summary judgment in favor of Credit One was properly entered and should be affirmed.

## A.      Foster Cannot Rely Upon Conclusory Statements, Inadmissible Unemployment Hearings Nor Her Affidavit Contradicting Her Own Testimony To Defeat Summary Judgment

Foster now attempts to backtrack and seeks to contradict her own, clear, unequivocal testimony via her own affidavit.  However, Foster cannot create an issue of fact by a declaration contradicting her own deposition.  *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991) (party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony).  Nor can she rely solely upon conclusory statements or attorney argument to defeat summary judgment.

(*See, e.g., Nat'l Steel Corp. v. Golden Eagle Ins. CO.,* 121 F.3d 496, 502 (9th Cir. 1997); *see also Lewis v. Philip Morris, Inc.* 355 F.3d 515, 533 (6th Cir. 2004).) Foster's attempt to do so should be foreclosed and summary judgment should be affirmed.

**B.  The Undisputed Material Facts Demand Affirmation Of Summary Judgment On Foster's FMLA Claims**

**1.  Foster's FMLA Claims Are Barred By The Two Year Statute Of Limitations**

As admitted by Foster, she filed her complaint more than two years after her termination.  As Foster has not and cannot show that Credit One willfully violated the FMLA, the two year statute of limitations forecloses her FMLA claims. Summary judgment on her FMLA claims was proper.

To be "willful," Credit One had to know, or show reckless disregard for whether its conduct was prohibited by the FMLA. .  *See* 29 U.S.C. § 2617(c)(1) and (2); *McLaughlin v. Richard Shoe Co.*, 486 U.S. 128, 133, 108 S. Ct. 1677 (1988) (interpreting "willful" under analogous statute of limitations in Fair Labor Standards Act); *Olson v. United States Dept. of Energy*, 980 F.3d 1334, 1339 (9th Cir. 2020) (recognizing *McLaughlin* willfulness standard).  Foster attempts to establish willfulness through an unsupported narrative that she was "set up" by Mason and that Credit One "knew" the reason for terminating her was "based on a lie." (*See* Opening Brief, at 23-24.)  Tellingly, however, Foster lacks any evidentiary support for this tale.  Instead, the undisputed facts show that, upon a report that Foster had used slurs in referring to another employee, Human Resources investigated the report.  As part of that investigation, two witnesses were interviewed and confirmed that they heard Foster use the slurs about a co-worker.  As a result of her violation of Credit One's policies, Foster was terminated.  There is no showing whatsoever that the termination was in any way a violation of the FMLA let alone that Credit One knew or showed reckless disregard for conduct violating the FMLA.  As Foster

has failed to demonstrate willfulness, the two year statute of limitations applies, and Foster's FMLA claims fail. Summary judgment was proper.

### 2. Credit One Did Not Interfere With Foster's FMLA Rights

Even if the three year statute of limitations applies, which it does not, Foster has failed to show that Credit One interfered with her FMLA rights. To state a claim for FMLA interference, Foster must demonstrate that her taking of FMLA-protected leave constituted a negative factor in the decision to terminate her. *Bachelder v. Am. West Airlines, Inc.*, 259 F.3d 1112, 1122 (9th Cir. 2001). Even Foster does not believe this is so:

> Q: And do you believe Credit One used your time off on FMLA as reason to terminate you?
>
> A: **No.**

(Foster Depo., 1-SER-35:24-36:1.) Further, any claim now that Credit One interfered with Foster's FMLA rights by a short delay in pay does not create a claim for interference with the FMLA. First, there is no entitlement to paid leave under the FMLA. *See* 29 U.S.C. § 2612(c)(1)(C) (FMLA leave is unpaid.) Because there is no legal right to paid leave, denial of such, does not constitute FMLA interference, even if that denial is inconsistent with company policy. *See, Becknell v. University of Kentucky*, 383 F.Supp.3d 743, 757 (E.D. Kentucky 2019) (defendant entitled to summary judgment on FMLA interference claim because there is no right to paid leave under FMLA and failure to comply with internal policy allowing paid leave does not constitute FMLA interference). Second, Foster was never denied compensation for her FMLA absence. She was paid. (Foster Depo., 1-SER-23:24 – 24:12.) As such, she was not prejudiced and her claim fails. *See, e.g., Olson v. United States Dept. of Energy*, 980 F.3d 1334 (9th Cir. 2020) (citing *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002) ("[T]he Act 'provides no relief

unless the employee has been prejudiced by the violation.'")) Simply put, Foster's FMLA rights were not interfered with in any way.

### 3.    Foster Has Not And Cannot Demonstrate FMLA Retaliation

Knowing that her FMLA interference claim fails, Foster now attempts to recast her claim as FMLA retaliation. Foster claims that she was terminated because she complained about being "unlawfully" denied use of available paid leave. (Opening Brief at 26-27.) She then creates a narrative unsupported by the record that Mason somehow conspired to "set her up." (Opening Brief at 45.) This claim, too, fails.

First, the delay in the payment of her FMLA paid leave is not "unlawful." Yet, even Foster was "not worried" about the mistaken (and immediately corrected) unpaid leave designation. (Foster Depo., 1-SER-38:21-40:22, 1-SER-44:9-15, 1-SER-45:7-11, 1-SER-115:4-117:11.) Instead, she was concerned with a potential HIPAA violation. (*Id*.) However, even this concern was determined to be unfounded. (Lago Dec., 2-SER-304-06, at ¶¶ 5, 6.) Moreover, Foster has failed to submit *any* evidence that Mason knew she complained about her missing pay. As Foster has failed to bring forth any evidence of protected activity under the FMLA, nor any evidence showing causation, her attempt to assert an FMLA retaliation claim fails.

### C.    Foster's ADA Discrimination Claim Fail

To state a *prima facie* case of discrimination under the ADA, a plaintiff must show: (1) she is a disabled person within the meaning of the ADA; (2) she is a qualified individual; and (3) she suffered an adverse employment action because of her disability. *Kennedy v. Applause,* 90 F.3d 1477, 1481 (9th Cir. 1996). If the plaintiff establishes a *prima facie* case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment decision. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 804 (1973).

Although the burden of production shifts to the defendant at this point, the burden of proof remains with the plaintiff at all times. *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253 (1981). If the employer offers a nondiscriminatory reason, the burden returns to the plaintiff to show that the articulated reason is a pretext for discrimination. *McDonnell Douglas,* 411 U.S. at 804. Foster has not met this showing and summary judgment on her ADA claims was proper.

### 1. Foster Is Not Disabled

To be "disabled," Foster must show that she is "substantially limited" in a major life activity. 42 U.S.C § 12102 (defining disability). Importantly, a "serious health condition" under the FMLA is not the same as a "disability" under the ADA. *cf* 29 C.F.R.§ 825.113 (defining "serious health condition") and 42 U.S.C § 12102 (defining disability). Here, the only medical condition at issue in this matter is Plaintiff's anxiety and depressed mood that warranted her FMLA leave. (FMLA Paperwork, 1-SER-276; *see also* Foster Depo., 1-SER-13:19-23.) Plaintiff informed Credit One of this condition, as documented by her physician, on June 19, 2018. (Foster Depo., 1-SER-16:23-17:11, 1-SER-117:23-119:21) Although the FMLA paperwork indicates a period of incapacity through December 30, 2018, on August 7, 2018, Plaintiff was released to return to work ***without restriction. (****Id,* 1-SER-19:21-20:8; 1-SER-290.) Thus, the undisputed evidence shows that Foster's medical condition did not limit, let alone substantially limit, her ability to work. Foster is not disabled as defined by the ADA, and, thus, her claims under the ADA fail.

### 2. Foster Admits She Was Not Terminated Because Of Her Alleged Disability

In her deposition, Foster unequivocally testified that she did not feel that Credit One terminated her because of her disability. (Foster Depo., 1-SER-35:24-36:4, 1-SER-37:1-6.) This undisputed evidence forecloses her disability discrimination claim under the ADA.

### 3. Credit One Had A Legitimate, Non-Discriminatory Reason For Terminating Foster

Moreover, the undisputed evidence demonstrates that Credit One terminated Foster after a thorough investigation that found that Foster violated Credit One's policies by using racial and homophobic slurs in referring to a co-worker. (Lago Dec., 2-SER-304-06.) Foster's claim that Credit One was "wrong" in its determination does not create a material issue of fact. *Villarimo v. Aloha Island Air, Inc*., 281 F.3d 1054, 1063 (9th Cir. 2002). Foster has presented no evidence of pretext. Summary judgment in favor of Credit One should be affirmed.

### D. Foster's ADA Retaliation Claim Fails

To establish a claim of retaliation under the ADA, a plaintiff must prove that (1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there was a causal link between her protected activity and the adverse employment action. *Brown v. City of Tucson*, 336 F.3d 1181, 1186-87 (9th Cir. 2003); *Pardi v. Kaiser Found Hosps.,* 389 F.3d 840, 849 (9th Cir. 2004). "Protected activity" includes opposing any act or practice by the employer that violates the ADA, and pursing rights guaranteed by the statute, like requesting a reasonable accommodation. *LeBarron v. Interstate Group, LLC*, 529 F.Supp.3d 1163, 1173 (D. Nev. 2021), *citing Pardi*, 389 F.3d at 849. An adverse employment action is "any action reasonably likely to deter employees from engaging in protected activity." *Pardi*, 389 F.3d at 850. To show a causal link, the employee must not have suffered an adverse employment action "but for" his protected activity. *Casper v. Titanium Metals Corp.i, No. 2:16-cv1548-JCM-CWH, 2018 WL 4283055*, at *4 (D. Nev. Sep. 7, 2018), *citing T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist*., 806 F.3d 451, 473 (9th Cir. 2015.)

Here, Foster has presented no evidence that she engaged in protected activity. Rather, the undisputed evidence demonstrates that Foster never opposed any act that violated the ADA. Further, there is no connection between Foster's medical

condition and her termination. Foster's ADA claim fails entirely and summary judgment was proper.

## ARGUMENT

### A.     Standard For Summary Judgment

The District Court's grant of summary judgment in favor of Credit One should be affirmed because Foster failed to present admissible evidence to establish a genuine issue of material fact or law for trial, and the admissible evidence establishes that Credit One is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-252 (1986).

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute over the facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). All reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 244 (1986)). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.* (citing FRCP 56(c)). Mere allegation and speculation do not create a factual dispute for purposes of summary judgment. *Nelson v. Pima Community College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *Anderson*, 477 U.S. at 248. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary

will not be considered. *Id.* "Summary judgment is not a disfavored procedural shortcut, but an integral part of the federal rules as a whole." *Alam v. Reno Hilton Corporation*, 819 F.Supp. 905, 910 (D. Nev.1993) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

"To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial." *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018). Where, as here, there is a complete failure of proof concerning an essential element of the non-moving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

**B.** **Foster's Speculative Narrative Is Not Evidence And Is Not Sufficient To Defeat Summary Judgment**

Evidentiary facts are required to oppose a summary judgment motion. Conclusory statements are not sufficient. *See, e.g., Nat'l Steel Corp. v. Golden Eagle Ins. Co.*, 121 F.3d 496, 502 (9th Cir. 1997) ("Conclusory allegations of collusion, without factual support, are insufficient to defeat summary judgment."); *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004) (non-movant must point to "more than mere speculation, conjecture or fantasy").

**1.** **The Unemployment Hearing Officer's Decision Is Not Admissible And Cannot Support Foster's "Set-Up" Narrative**

This Court should not consider a decision from an unemployment hearing officer as admissible evidence sufficient to defeat summary judgment. *Bradshaw v. Golden Road Motor Inn*, 885 F. Supp. 1370, 1375 (D. Nev. 1995) (decision of unemployment hearing officer is not admissible evidence and cannot be used to defeat summary judgment); *Soto v. Aria Resort and Casino, LLC*, 2017 WL 3667696 at *6 (D. Nev. Aug. 23, 2017) (same), *quoting Bradshaw*, 885 F. Supp. at 1375. Foster appears to understand this prohibition, yet chooses to ignore it. Foster attaches the hearing officer's decision as an exhibit to her affidavit, quotes it at

length therein, and attempts to use it as support for her speculative "set-up" narrative. Indeed, what Foster submits is not actual testimony of Yanez-Tourigny as she purports to submit it as, but rather it is the hearing officer's summary of proceedings. However, Nevada law prohibits such us of these hearsay findings. Specifically, NRS 612.533 specifically provides that:

> [a]ny finding of fact or law, judgment, determination, conclusion or final order made by the Administrator or an...examiner,...or any other person with the authority to make findings of fact or law pursuant to [Nevada's unemployment statutes]...is not admissible or binding in any separate or subsequent action or proceeding, between a person and that person's present or previous employer brought before...[a] judge of this State or the United States, regardless of whether the prior action was between the same or related parties or involved the same facts.

Foster's gamesmanship should not be tolerated. Nevada law is clear: the hearing officer's decision is not evidence that the Court may consider. *See* NRS 612.533; *see also Bradshaw, supra.* Not only may the Court not consider the unemployment decision, and the wholly unsupported narrative Foster extrapolates therefrom, but Foster's reliance on it highlights the complete lack of actual record evidence demonstrating a disputed material fact.

### 2. Foster Cannot Create Issues Of Fact By Contradicting Her Own Prior Sworn Deposition Testimony

A party may not create an issue of fact by a declaration contradicting her own deposition testimony. *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991). And, attorney argument is no substitute for evidence. *See, e.g., Enzo Biochem, Inc. v. Gen-Probe, Inc.*, 424 F.3d 1276, 1284 (Fed. Cir. 2005); *Invitrogen Corp v. Clontech Lab'ys, Inc.,* 429 F.3d 1052, 1068 (Fed. Cir. 2005) (attorney argument cannot support burden on summary judgment). Yet, that is all Foster submitted in opposition to Credit One's summary judgment. As there is no genuine dispute of material fact, summary judgment was properly granted and should be affirmed.

Here, Foster offered her own affidavit in support of her opposition. (Foster Aff., ER-30-37.) In an attempt to subvert summary judgment, the final paragraph of the affidavit makes the most significant departure from Foster's deposition testimony. There, in an effort to address her clear and unequivocal testimony that she **does not** believe Credit One used her time off on FMLA, or her medical condition, as a reason to terminate her, (*see* Foster Depo., 1-SER-35:24-36:4, 1-SER-37:1-6), Foster states, "Dale Mason interfered with my FMLA use and that he set me up to be fired because I had complained to Human Resources and Terrance Taylor about being unfairly, improperly and unlawfully docked three days of day [sic] when I was using intermittent FMLA". (Foster Aff., ER-30-37 at ¶16.) Except, as shown below, to begin with, she never made such a complaint, which she even confirms in previous statements contained in the same affidavit. Moreover, Foster fails to present any evidence that Mason even knew she had complained to Human Resources. Foster's claims fail.

## C. Foster Was Not Worried About the Misunderstanding Regarding Pay Or Intermittent FMLA Leave

The undisputed facts regarding Foster's pay for her December 2018 intermittent FMLA leave are:

- when she returned to work following the intermittent leave, her supervisor, Taylor informed her that the time taken was designated unpaid and he believed her FMLA was exhausted (Foster Depo., 1-SER-21:23-22:5, 1-SER-24:24-25:20);

- she went to Human Resources **to inquire about the status of her FMLA leave** (Foster Depo., 1-SER-22:5-10);

- she was told Taylor was mistaken, her intermittent FMLA remained in place, and she would be paid for the time taken (*id.*);

- the very next day, Taylor **apologized to Foster** and confirmed that her pay

for the intermittent leave would be corrected (Foster Depo., 1-SER-23:24-24:6); and,

- Foster was paid for the intermittent leave. (Foster Depo., 1-SER-24:7-12.)

Foster specifically testified that she "wasn't worried" about the three days that were initially mistakenly designated unpaid. (Foster Depo., 1-SER-45:7-11, 1-SER-114:4-117:11.) In fact, in her discussion with Human Resources, Foster never even mentioned Mason, and specifically told Human Resources that she had "no worries" and "it was not an fmla (sic) issue". (December 12, 2018 email from Foster, 1-SER-280.) Her initial affidavit statements confirm this reality. (Foster Aff., ER-33-34 at ¶¶ 7(c), 7(d).) Foster specifies that after her supervisor, Taylor, told her that her intermittent leave was designated unpaid, she went to Human Resources, asked if her FMLA had ended because that was what *Taylor* told her, was told he was mistaken and that it would be corrected, to which Foster replied, "OK." (*Id*.) Now, however, Foster states in her affidavit that she complained to Human Resources about Mason "unfairly, improperly and unlawfully" docking three days' pay, in direct contradiction to her deposition testimony. (Foster Aff., ER-37 at ¶ 16.) Such tactics should not be allowed.

Similarly, Foster specifically and, repeatedly, testified that the subsequent discussion she had with Taylor was in regards to her suspicion that Mason had violated her "HIPAA rights" by discussing her leave with a co-worker who had phoned her when she was off. (Foster Depo., 1-SER-38:21-40:22, 1-SER-44:9-15, 1-SER-45:7-11, 1-SER-115:4-117:6.) Again, her initial affidavit statements confirm this. (Foster Aff., ER-34-35 at ¶ 8) (Foster states that she told Taylor that she suspected "something was going on with [her] personal information being discussed and that was a HIPAA violation".). *That* was the issue Taylor said he would look into. (*See id.*)

Now, however, Foster attempts to change the story by submitting an affidavit that contradicts her sworn deposition testimony, and, again, even her statement in the *same* affidavit. Specifically, Foster's sworn testimony is that in the call with the co-worker, no mention whatsoever was made of her FMLA and/or medical condition:

> **Q:** Did Rosinia specifically state to you what your medical condition was?
>
> **A:** No, she asked me was I going to get paid for my 80 hours because I'm not there.
> . . .
>
> **Q:** She didn't ask you about whether you were on FMLA leave?
>
> **A:** No. She asked - - she said are you sure you're going to be able to make your full payment - - your full two weeks, 80 hours.

(Foster Depo., 1-SER-37:15-18, 1-SER-39:11-20.) Paragraph 7(a) of Foster's affidavit is consistent with the above-referenced testimony: the co-worker called and asked if she had enough hours to make 80 hours for the end of pay period. (Foster Aff., ER-33 at ¶ 7(a).) However, Foster then casually comments that in that same call the co-worker questioned Foster "about [her] FMLA". (*Id*., at ¶ 8.) This additional statement is directly contradicted by her above deposition testimony, not to mention her affidavit statement at paragraph 7. Foster's attempt to create a material issue of fact where there is none via an affidavit contradictory to her prior sworn deposition testimony *and* internally inconsistent with her previous affidavit statements must not be allowed. *See Kennedy, supra.*

Finally, it remains undisputed that Foster actually has no idea if Mason discussed her FMLA leave with the co-worker:

> **Q:** . . . Do you know for a fact that Mason then informed co-workers in particular Rosinia that the reason you weren't there those two days was because of FMLA leave?

**A:** I don't know if he- - I'm not sure if he informed her I wasn't there for FMLA. **I don't know. I don't know if he did or not**.

(Foster Depo., 1-SER-44:9-15; *see also* 1-SER-38:21-40:22.) In fact, later when Foster was suspended pending investigation and, for the first time, raised this concern with Human Resources, it was investigated and dispelled. (Foster Depo., at 1-SER-46:12-48:19; *see also* December 19, 2018 Email, 1-SER-294-295; Lago Dec., 2-SER-304-306, at ¶¶ 5, 6.) It is undisputed that the co-worker and Mason never discussed Foster's FMLA status or leave. (*Id.*)

Foster's affidavit testimony in direct contradiction of her sworn deposition testimony is of no consequence. This fatally defective attempt to set the foundation for the narrative that Mason sought some sort of revenge, "proving" that her termination was unlawful, is indicative of the fundamental flaw of her entire case. Simply, Foster cannot subvert summary judgment without evidence, and her attempt to do so is futile. Summary judgment in favor of Credit One was proper and should be affirmed.

**D.    The District Court Properly Held That Foster's FMLA Interference Claim Is Time-Barred**

A Plaintiff must bring an FMLA claim "not later than two years after the date of the last event constituting the alleged violation for which the action is brought." 29 U.S.C. §2617(c)(1); *Barrett v. Illinois Dep't of Corrections*, 803 F.3d 893, 898 (7th Cir. 2015). If, and only if, a Plaintiff can show that an employer acted willfully, the statute of limitations may only be extended to three years. 29 U.S.C. § 2617(c)(2). To demonstrate willfulness, there must be evidence that the employer knew, or showed reckless disregard for whether, its conduct was prohibited by statute. *See McLauglin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S. Ct. 1677 (1988) (interpreting "willful" under analogous state of limitation in Fair Labor Standards Act): *Sampra v. U.S. Dep't of Transp*, 888 F.3d 330, 333 (7th Cir. 2018) (recognizing *McLaughlin* willfulness standard for willfulness applies to FMLA). An

employer's awareness that the FMLA "was in the picture" is not sufficient to show willfulness. (*Id.*)

### 1. Foster's Unsupported Narrative Is Not Evidence And Cannot Support Application Of A Three Year Statute Of Limitations

Foster cannot, and does not, dispute that she filed her FMLA claim more than two years after her termination. (*See* Opening Brief at 21.) Her attempt to subvert summary judgment and establish willfulness is entirely dependent on her unsupported "set-up" narrative, culminating in the bombastic assertion that Credit One "knew" the reason for terminating her was "based on a lie." (*See* Opening Brief at 13, fn 4.) Specifically, she argues, ***without any evidentiary support whatsoever***, that her former supervisor, Mason, convinced two employees to "make-up" an allegation that she directed racial and homophobic slurs towards him, and that he did this somehow knowing that Human Resources would be complicit in his scheme, terminate Foster, and then lie about Mason's purported solicitation of false statements at a subsequent unemployment hearing. (*Id.*) Notably, even Foster recognizes that she has no evidence to support this speculative argument. She does not even attempt to identify evidentiary support for the two "material facts" she includes as the basis for this argument: that Mason was purportedly counseled for "violating the FMLA rights," or that he even knew she had made a complaint to Human Resources. (*See* Opening Brief at 23, ¶8.) This is because she *has no* evidence for such speculative claims.

Rather, the undisputed evidence conclusively confirms application of the FMLA two year statute of limitations. Foster was terminated after a thorough investigation in which two witnesses, who were independently interviewed by Human Resources, confirmed that she referred to Mason as N\*\*\*\* and F\*\*\*\*. (*See* Lago Dec., 2-SER-304-306.) Her concern that Mason violated HIPAA by

31

discussing her leave status with a co-worker, which was raised after she was suspended pending investigation into her behavior, was also investigated and dispelled. (*Id.*) Such facts in no way support a finding of willfulness. Foster's FMLA claim is therefore untimely and fails as a matter of law, warranting summary judgment in favor of Credit One.

**E.**  **The District Court Properly Held That Foster's Termination Was Not Unlawful Interference With Her FMLA Right Nor Unlawful Retaliation For Objecting To The Interference**

The two year statute of limitations forecloses Foster's FMLA claim. However, even if a three year statute is applied, Foster's claim fails because she would have been terminated regardless of her FMLA leave. An employer "cannot use the taking of FMLA leave as a negative factor in employment actions." *Bachelder v. Am. West Airlines, Inc.*, 259 F.3d 1112, 1122 (9th Cir. 2001). The Ninth Circuit construes claims that allege an employee was terminated for taking FMLA leave as an FMLA interference claim, not retaliation or discrimination. *Id.* at 1124. To state a claim for FMLA interference, Foster must demonstrate that her taking of FMLA-protected leave constituted a negative factor in the decision to terminate her. *Id.* at 1124-25. This, she cannot do. Foster's own testimony precludes her FMLA interference claim:

> Q:  And do you believe Credit One used your time off on FMLA as reason to terminate you?
>
> A:  **No.**

(Foster Depo at 1-SER-36:2-4.) And, the undisputed evidence confirms this: after a good faith investigation, Credit One terminated Foster because multiple witnesses confirmed that she called her former supervisor a N**** and a F*****. (Lago Dec., 2-SER-304-306.) Neither her former, nor current, supervisor, were involved in the termination decision. (Credit One's Answers

to Foster's First Set of Interrogatories, Interrogatory No. 2, 2-SER-310-12.)

The entirety of Foster's FMLA interference claims rests on her, indisputably false, theory that Mason discussed her FMLA leave with a co-worker:

> Q: What about related to facts to support your claim that you were terminated as a result of taking FMLA leave?
>
> A: **Well, I have- - it was an issue regarding my FMLA being discussed with another representative because the representative called my house.**

(Foster Depo., 1-SER-37:7-12.) Yet, the undisputed evidence shows that the co-worker who contacted her did not mention her FMLA leave, and Foster admits she has no actual idea of whether or not Mason actually discussed her FMLA leave with the co-worker. (*Id.,* 1-SER-37:7-18, 1-SER-38:21-40:22, 1-SER-44:9-15.) During the investigation into Foster's concerns, Lago discovered that Foster was wrong - the co-worker did not speak to Mason about Foster's FMLA status or leave. (Lago Dec., 2-SER-304-306.) There is simply no evidence that Foster's FMLA played a role, let alone was considered as a negative factor, in her termination. On these facts, summary judgment on Foster's FMLA claims was proper.

## 1. Foster May Not Sustain An FMLA Interference Claim For Alleged Denial Of Paid Leave

Similarly, Foster's FMLA claims are premised on the legally deficient position that the FMLA generally entitles her to paid leave. It does not.

Foster argues FMLA interference occurred when Credit One "denied her compensation for her three-day absence when she had paid time off available". (*See* Opening Brief at 31.) As Foster herself acknowledges, ***there is no entitlement to paid leave under the FMLA***. *See* 29 U.S.C. § 2612(c)(1)(C) (FMLA leave is unpaid). Because there is no legal right to paid leave, denial of

such, does not constitute FMLA interference, even if that denial is inconsistent with company policy. *See, Becknell v. University of Kentucky*, 383 F.Supp.3d 743, 757 (E.D. Kentucky 2019) (defendant entitled to summary judgment on FMLA interference claim because there is no right to paid leave under FMLA and failure to comply with internal policy allowing paid leave does not constitute FMLA interference). Simply stated, a purported violation of company policy does not amount to FMLA interference. Moreover, the undisputed evidence demonstrates that Foster was not actually denied use of her available paid time off pursuant to Credit One policy. Rather, the initial mistaken designation of unpaid leave was immediately corrected and Foster was, in fact, paid. (*See* Foster Depo., 1-SER-23:24-24:12.) In such a case, there is no interference where there is no prejudice. (*See, e.g. Olson v. U.S. Dept. Energy,* 980 F.3d 1334 (9th Cir. 2020) (citing *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002) ("The Act 'provides no relief unless the employee has been prejudiced by the violation.'")).)

### 2. Recasting Her FMLA Claim As One For Retaliation Is Of No Effect

Foster's attempt to recast her clearly pled FMLA Interference claim as an additional and distinct claim for FMLA Retaliation is of no effect. (*See* Opening Brief at 28.) The claim remains barred by the applicable statute of limitations, as set forth above.

Alternatively, Foster's argument regarding her purported FMLA retaliation claim is substantively indistinct from her argument regarding her FMLA interference claim. She contends that she was punished for opposing an unlawful practice under the FMLA. (*See* Opening Brief at 31-32.) Specifically, that she was terminated because she complained about being "unlawfully" denied use of available paid leave. Again, this position is legally and factually

unsustainable. The denial of available paid leave, even if that actually happened (which it did not), is not in this instance "unlawful" under the FMLA. Accordingly, no FMLA liability, regardless if the claim is cast as interference or retaliation, can attach for making any such complaint. *See* 29 U.S.C. § 2612(c)(1)(C); *Becknell, supra.*

Moreover, as set forth above, Foster never even made a complaint about being denied paid leave. She specifically testified that she was "not worried" about the mistaken (and immediately corrected) unpaid designation, and her concern was with a potential HIPAA violation that she suspected. (Foster Depo., 1-SER-38:21-40:22, 1-SER-44:9-15; 1-SER-45:7-11; 1-SER-115-117; *see also* Foster's December 12, 2018 Email, 1-SER-280-81.) Except, again, the undisputed evidence demonstrates that her suspicion that Mason discussed her private FMLA status with a co-worker was entirely unfounded. (Lago Dec., 2-SER-304-306 at ¶¶ 5, 6.) Further, there is absolutely no legal authority supporting the position that raising such a suspicion amounts to protected FMLA activity. It does not, foreclosing any argument that liability may attach for FMLA retaliation.

Finally, even if something could be construed as Foster complaining of an unlawful practice under the FMLA, there is absolutely no evidence connecting such supposed complaint to her termination. In an attempt to make such a connection, Foster launches into the lengthy and entirely speculative narrative of Mason plotting to have her fired by convincing others to lie about her calling him a N***** and a F*****. There is zero evidence in support of such narrative. Moreover, there is *no* evidence that Mason even knew she had complained to Human Resources. Instead, the undisputed evidence unequivocally demonstrates that after a good faith investigation, Credit One terminated Foster because in independent interviews, multiple witnesses

35

confirmed that she called her former supervisor a N**** and a F*****.  (Lago Dec., 2-SER-304-306.)  Neither Mason, nor her then current supervisor, Taylor, were involved in the termination decision.  (Credit One's Answers to Foster's First Set of Interrogatories, Interrogatory No. 2, 2-SER-310-312.)   There is simply no evidence that Foster's FMLA was considered in any manner, let alone as the basis for, her termination.

The undisputed evidence compels the affirmation of summary judgment in favor of Credit One.

## F.    The District Court Properly Held That Foster's Claims For Discrimination Under The ADA Failed As A Matter of Law

To state a *prima facie* case of discrimination under the ADA, a Foster must show: (1) she is a disabled person within the meaning of the ADA; (2) she is a qualified individual; and (3) she suffered an adverse employment action because of her disability.  *Kennedy v. Applause,* 90 F.3d 1477, 1481 (9th Cir. 1996).  If the Foster establishes a *prima facie* case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment decision. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 804 (1973). Although the burden of production shifts to the defendant at this point, the burden of proof remains with the Foster at all times. *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253 (1981). If the employer offers a nondiscriminatory reason, the burden returns to the Foster to show that the articulated reason is a pretext for discrimination. *McDonnell Douglas,* 411 U.S. at 804.

### 1.    Foster Was Not "Disabled"

Congress enacted the ADAAA to expand "the class of individuals who are entitled to protection under the ADA." *Hubbard v. Day & Zimmermann Hawthorne Corp.*, No. 3:12-CV-00681-MMD, 2015 WL 1281629, at *4 (D. Nev. Mar. 20, 2015) (citing *Rohr v. Salt River Project Agric. Improvement and Power Dist.*, 555

F.3d 850, 853 (9th Cir. 2009)). However, Congress did not remove the requirement that the physical or mental impairment must **substantially** limit a major life activity.

While there is no automatic cut-off for the length of time an impairment must last before it can be considered a disability, the duration of an impairment is one factor that is relevant in determining whether the impairment substantially limits a major life activity. "In determining whether an individual is substantially limited in a major life activity, EEOC guidance suggests that courts consider: '(i) the nature and severity of the impairment, (ii) the duration or expected duration of the impairment; and (iii) the permanent or long-term impact, or the expected permanent or long-term impact resulting from the impairment.'" *Curley v. City of N. Las Vegas,* No. 2:09-CV-01071-KJD, 2012 WL 1439060, at *3 (D. Nev. Apr. 25, 2012), aff'd, 772 F.3d 629 (9th Cir. 2014) (citing 29 C.F.R. § 1630.2(j)). Not every medical condition constitutes a disability, "Even under the broadened definition of disability in the now-amended ADA 'not every impairment will constitute a disability within the meaning of [the ADA]' 29 C.F.R. § 1630.2(j)(1)(ii)." *See, e.g. Curley*, 2012 WL 1439060, at *3 (Foster not substantially limited in hearing when even without hearing aids and while wearing two sets of earplugs, he was able to hear co-workers speaking). A "serious health condition" under the FMLA is not the same as a "disability" under the ADA. *cf* 29 C.F.R. § 825.113 (defining "serious health condition") and 42 U.S.C § 12102 (defining disability).

Foster's ADA discrimination claim is foreclosed by her inability to surmount the initial hurdle of demonstrating that she was disabled under the ADA. *See Kennedy v. Applause*, 90 F.3d 1477, 1481 (9th Cir. 1996) (elements of a *prima facie* case of ADA discrimination). Foster's generic affidavit commentary that when she initially took FMLA leave, she was "stressed out", impacting her sleep and personal relationships, in no way alters this reality. The undisputed evidence of a purported disability is clear:

37

- The only documented evidence of a medical condition at issue in this matter is Foster's anxiety and depressed mood, which she informed Credit One of on June 19, 2018, warranting her FMLA leave (FMLA Paperwork, 1-SER-276; *see also* Foster Depo., 1-SER-13:19-23, 1-SER-117:23-119:21); and,

- Although the FMLA paperwork indicates a period of incapacity through December 30, 2018 (FMLA Paperwork, 1-SER-277), on August 7, 2018, Foster was released to return to work without restriction: "[Foster] ***is able to return to work and perform her usual assigned duties. . . She has been released from my care [from my care [sic]] and is stabilized.***" (Donna Gosnell August 7, 2018 Letter, 1-SER-292.)

Foster fails entirely to address the undisputed evidence that as of August 7, 2018, her treating therapist released her without restriction, which precludes any finding of disability because as of that date, Foster's condition was no longer limiting, let alone substantially limited, as required by the ADA. *See* 29 C.F.R. §1630.2(j)(1)(ii) (ADA requires substantial limitation). There is simply no evidence of "disability" after August 7, 2018, which precludes an ADA discrimination claim.

## 2. Foster Admits That She Was Not Terminated Because Of Her Alleged Disability

Even if she were somehow able to surmount the disability threshold, Foster cannot establish a *prima facie* case because there is no causal connection between any alleged disability and any adverse employment action. ADA discrimination claims are evaluated under a "but for" causation standard. *Murray v. Mayo Clinic*, 934 F.3d 1101, 1107 (9th Cir. 2019) ("We join our sister circuits in holding that ADA discrimination claims under Title I must be evaluated under a but-for causation

38

standard.") The undisputed evidence precludes a finding that but for Foster's purported disability, she would not have been terminated.

Credit One readily accommodated Foster with all requested medical leave, and took no issue with her medical condition. (Foster Depo., 1-SER-19:23-18:20, 1-SER-19:10-22.) Not even Foster believes that her medical condition was used to terminate her:

> Q: Do you believe Credit One used your medical condition to terminate you?
>
> A: **No.**
>
> Q: And do you believe Credit One used your time off on FMLA as a reason to terminate you?
>
> A: **No.**
>
> . . .
>
> Q: What facts to you have . . . that support your position that you were terminated because of your medical condition?
>
> A: **I don't have any facts towards my medical condition.**

(Foster Depo., 1-SER-35:24-36:4, 1-SER-37:1-6.) The undisputed evidence conclusively establishes that Credit One terminated Foster because it determined that she engaged in serious misconduct, calling her former supervisor a N***** and a F*****. (Lago Dec., 2-SER-304-306, ¶¶ 7-8.) Credit One conducted a good faith investigation, during which multiple witnesses confirmed Foster's use of the derogatory slurs. (*Id.*) Mason, the only person whom Foster identified as having allegedly "discriminated against" her was not involved in the termination decision. (Foster Depo., 1-SER-25:21-26:11; Credit One's Answers to Foster's First Set of Interrogatories, Interrogatory No. 2, 2-SER-310-312.) Thus, the undisputed evidence forecloses a finding that Foster was terminated because of a purported disability, compelling summary judgment.

**3**.    **Foster's Discrimination Claim Fails Even If Credit One Was Incorrect**

Finally, Foster's ADA discrimination claim fails on the additional grounds that Credit One's legitimate non-discriminatory reason for terminating Foster is undisputed and there is no evidence of pretext.  Once a plaintiff establishes a *prima facie* cause of discrimination, the employer must articulate a legitimate, nondiscriminatory reason for its action. If the employer carries its burden, the presumption of discrimination "simply drops out of the picture." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 510-511 (1993). As set forth above, Credit One has articulated a legitimate, non-discriminatory reason for its actions, which Foster confirms.  Even if Credit One were incorrect in its belief that Foster violated Credit One's policies, as Foster asserts, the law provides that an employer can establish a defense to discrimination claims by pointing to a legitimate business reason for termination, even if it turns out the employer was wrong about the reason.  *Villarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002). As long as the termination decision is based on facts supported by substantial evidence, and reasonably believed by the employer to be true, neither the Court, nor the trier of fact, may second-guess the employer's business decision. *Id*.

## G.    Foster's ADA Retaliation Claim Is Similarly Fatally Flawed

To establish a claim of retaliation under the ADA, Foster must prove that (1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there was a causal link between her protected activity and the adverse employment action. *Brown v. City of Tucson*, 336 F.3d 1181, 1186-87 (9th Cir. 2003); *Pardi v. Kaiser Found Hosps.,* 389 F.3d 840, 849 (9th Cir. 2004).  "Protected activity" includes opposing any act or practice by the employer that violates the ADA, and pursing rights guaranteed by the statute, like requesting a reasonable accommodation.  *LeBarron v. Interstate Group, LLC*, 529 F.Supp.3d 1163, 1173 (D. Nev. 2021), *citing Pardi*, 389 F.3d at 849.

An adverse employment action is "any action reasonably likely to deter employees from engaging in protected activity." *Pardi*, 389 F.3d at 850. To show a causal link, the employee must not have suffered an adverse employment action "but for" his protected activity. *Casper v. Titanium Metals Corp.i, No. 2:16-cv1548-JCM-CWH, 2018 WL 4283055*, at *4 (D. Nev. Sep. 7, 2018), *citing T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 473 (9th Cir. 2015.)

The undisputed facts conclusively demonstrate that Foster cannot satisfy her *prima facie* burden, warranting summary judgment in favor of Credit One.

### 1. Foster Did Not Oppose Alleged Discrimination

Foster's retaliation claim is brought "for opposing disability-based discrimination". (*See* Complaint, ER-261-279.) Yet, Foster attributes her discrimination claims entirely to the conduct of her former supervisor, Mason. (Foster Depo., 1-SER-25:21-26:11.) It is logically impossible, however, to categorize any concern Foster raised about Mason as protected activity under the ADA. Simply, the concerns she raised occurred **before** the purported protected characteristic (i.e., a medical condition and need for leave) had even materialized. Specifically, after receiving her May 15, 2018 performance review, Foster complained about what she considered to be Mason's managerial deficiencies, including his youth and inability to handle the attitudes of the representatives whom he supervised. (Foster Depo., 1-SER-31:17-32:5, 1-SER-105:5-21.) She specifically attributed Mason's supposed poor treatment of her to the fact that she was a top producer and Mason used to be her competition, creating a "sour situation" and friction between them when he became her manager. (*Id.*, 1-SER-32:10-34:5.) She asked to be removed from Mason's team, and effective June 7, 2018, she began reporting to a different manager. (*Id.,* 1-SER-59:10-12, 1-SER-63:18-20.)

All of that occurred ***before*** Foster informed Credit One of her need for FMLA leave due to anxiety and depressed mood. (Foster Depo., 1-SER-14:11-15:2, 1-SER-16:10-13.) Even if such information could be construed as triggering ADA protections, which it should not, as set forth above, it is impossible to consider the complaints Foster raised with Human Resources ***before*** informing them of her health condition, and need for leave, as complaints "opposing disability-based discrimination".

Foster's subsequent written description documenting her concerns with Mason as her manager, which includes the buzz words "hostile environment", does not alter this analysis. (*See* Foster's July 31, 2018 Written Statement, 1-SER-290.) Use of this legal term of art cannot convert pre-medical condition/leave concerns into protected activity regarding a non-descript "hostile environment" statement. *See, e.g., Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 646 (6th Cir. 2015) (employee engages in protected activity by complaining that employer is creating a "hostile work environment" only when context objectively reveals that employee is using term to complain about repeated abusive discriminatory comments or treatment); *Fox v. Eagle Distrib. Co.*, 510 F.3d 587, 591 (6th Cir. 2007) (vague complaints that did not include any suggestion of prohibited discrimination found to not qualify as protected activity in support of Title VII retaliation claim); *cf Pardi*, 389 F.3d at 850 (filing numerous union grievances and EEOC charges regarding failure to accommodate qualifies as protected activity under the ADA). Foster herself disavows any connection to her concerns regarding Mason and her medical condition and/or need for leave. (Foster Depo., 1-SER-106:18-107:9.)

Moreover, following her return from FMLA leave, Foster never raised any concern regarding Mason, or anyone else, which can reasonably be construed as opposing conduct prohibited by the ADA. Her email communications with

42

Human Resources were comprised of, (1) on October 25, 2018, an inquiry about the process for applying for an open position, in which she stated she was "just venting, no issues", and, (2) on December 12, 2018, wanting to discuss her suspicion that her information was shared with another employee, which she then said she resolved, specifying it "was not an FMLA issue". (Foster Depo., 1-SER-115:4-117:11, 1-SER-120:10-122:14 *see also* Foster's December 12, 2018 Email, 1-SER-280.) In fact, the ***only*** concern she raised involving Mason after her return from leave was months later, and only ***after*** she was suspended pending investigation into the complaint that she called Mason a N***** and F*****. (Foster's December 19, 2018 Email, 1-SER-294.) Only then did she disclose to Human Resources that she thought Mason "leaked" information about her to a co-worker, who called her when she was on intermittent FMLA leave. (*Id.*) She now admits the co-worker never mentioned FMLA, and she has absolutely no idea if Mason discussed her FMLA with the co-worker. Even generously interpreting this as a tangential FMLA concern, it certainly does not convert to opposing conduct prohibited by the ADA. *See, e.g., Williams v. City of Las Vegas*, 2:06-cv-00886-BES-PAL, 2008 WL 11449420 *3 (D. Nev. June 16, 2008) (filing a workers compensation claim is not protected activity under the ADA).

## 2.    No Causal Connection To Support Foster's ADA Retaliation Claim

Just as with Foster's ADA retaliation claim fails on the additional grounds that, as set forth above regarding her discrimination claim, the undisputed evidence precludes a finding that she was terminated for any reason other than her egregious violation of Credit One policy. Thus, to the extent use of her FMLA leave is considered protected activity under the ADA, which it should not be, she does not, and cannot, dispute Credit One's legitimate reason for

43

eagerness

termination. The same holds true regarding Foster's attempt to use the unsupported "set-up" narrative as the basis to subvert summary judgment on her ADA retaliation claim. (*See* Opening Brief at 52-53.) Simply, she cannot establish that she engaged in protected activity and/or a causal link between that activity and an adverse employment action based on a story for which she has zero evidence. *See Brown v. City of Tucson*, 336 F.3d 1181, 1186-87 (9th Cir. 2003) (elements of ADA retaliation claim). Summary judgment was properly granted on Foster's ADA claims.

## CONCLUSION

For all of the foregoing reasons, Credit One respectfully requests this Court affirm the District Court's Order granting Credit One's Motion for Summary Judgment.

DATED this 28th day of May, 2024.

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

/s/
Anthony L. Martin
Nevada Bar No. 8177
Molly M. Rezac
Nevada Bar No. 7435
Noel M. Hernandez
Nevada Bar No. 13893
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
10801 W Charleston Blvd, Suite 500
Las Vegas, NV 89135

*Attorneys for Appellee Credit One Bank, N.A.*

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, Appellee Credit One Bank, N.A. is unaware of any related cases pending in this Court.

DATED this 28th day of May, 2024.

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

_/s/ Anthony L. Martin_
Anthony L. Martin
Nevada Bar No. 8177
Molly M. Rezac
Nevada Bar No. 7435
Noel M. Hernandez
Nevada Bar No. 13893
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
10801 W Charleston Blvd, Suite 500
Las Vegas, NV 89135

_Attorneys for Appellee Credit One Bank, N.A._

## CERTIFICATE OF COMPLIANCE

I hereby certify that this Answering Brief complies with the formatting requirements of FRAP 32(a)(4), the typeface requirements of FRAP 32(a)(5) and the type style requirements of FRAP 32(a)(6) because:

This Answering Brief has been prepared in a proportionally spaced typeface using the Microsoft Word processing program using a Times New Roman style with 14-point font.

I further certify that this Answering Brief complies with the page- or type-volume limitations of FRAP 32(a) because, excluding the parts of the Answering Brief exempted by FRAP 32(a)(7)(C), it is proportionally spaced, has a typeface of 14 points or more and contains 11,547 words.

Finally, I hereby certify that I have read this Answering Brief and, to the best of my knowledge, information and belief, it is not frivolous or interposed for any improper purpose. I further certify that this Answering Brief complies with all applicable Federal Rules of Appellate Procedure, in particular FRAP 28e(1), which requires every assertion in the brief regarding matters in the record to be supported by a reference to the page and volume number, if any, of the transcript or appendix where the matter relied on is to be found.

///

///

///

///

///

46

I understand that I may be subject to sanctions in the event that the accompanying Answering Brief is not in conformity with the requirements of the Federal Rules of Appellate Procedure.

DATED this 28th day of May, 2024.

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

*/s/ Anthony L. Martin*

Anthony L. Martin
Nevada Bar No. 8177
Molly M. Rezac
Nevada Bar No. 7435
Noel M. Hernandez
Nevada Bar No. 13893
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
10801 W Charleston Blvd., Suite 500
Las Vegas, NV 89135

*Attorneys for Appellee Credit One Bank, N.A.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of May, 2024, I electronically filed the foregoing Answering Brief of Appellee Credit One Bank, N.A. with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I further certify that, pursuant to FRAP 25(c) and (d), a copy of the foregoing Answering Brief of the Appellee Credit One Bank, N.A. was also made by depositing a true and correct copy of same for mailing, first class mail, postage prepaid thereon, at Las Vegas, Nevada, to the following:

ROBERT P. SPRETNAK, ESQ.
The Law Offices of Robert P. Spretnak
8275 S. Eastern Avenue, Suite 200
Las Vegas, Nevada 89123
Telephone: (702) 454-4900
Attorney for Nicolle Foster, Foster – Appellant

DATED this 28th day of May, 2024.

*/s/ Susan A. Owens*

AN EMPLOYEE OF OGLETREE, DEAKINS,
NASH, SMOAK & STEWART, P.C.

48