**Case No. 23-2983**
(District of Nevada Court Case No. 2:21-cv-00680-APG-VCF)

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

NICOLLE FOSTER,

        Plaintiff - Appellant,

vs.

CREDIT ONE BANK, N.A.,

        Defendant - Appellee.

**APPEAL
FROM THE UNITED STATES DISTRICT COURT,
DISTRICT OF NEVADA**

**REPLY BRIEF
OF PLAINTIFF-APPELLANT NICOLLE FOSTER**

ROBERT P. SPRETNAK, ESQ.
The Law Offices of Robert P. Spretnak
8275 S. Eastern Avenue, Suite 200
Las Vegas, Nevada 89123
Telephone: (702) 454-4900
Attorney for Nicolle Foster, Plaintiff - Appellant

## **TABLE OF CONTENTS**

SUMMARY OF ARGUMENT IN REPLY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT IN REPLY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.  MS. FOSTER'S FMLA RETALIATION CLAIM WAS PROPERLY
    BEFORE THE DISTRICT COURT . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. GENUINE ISSUES OF MATERIAL FACT PRECLUDE ENTRY
    OF SUMMARY JUDGMENT AGAINST NICOLLE FOSTER . . . . . . . . 6

    A.  Credit One's Primary Argument That It Is Entitled
        to Summary Judgment Fails Because It Is Based
        on Inadmissible Hearsay . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    B.  Genuine Issue of Material Fact Preclude Summary
        Adjudication of Ms. Foster's FMLA Willful Interference
        and Retaliation Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    C.  Genuine Issues of Material Fact Preclude Summary
        Adjudication of Ms. Foster's Disability Discrimination
        and Retaliation Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

CERTIFICATE OF COMPLIANCE PURSUANT
    TO FED. R. APP. P. 32(a)(7)(C) AND CIRCUIT RULE 32-1 . . . . . . . . 24

## <u>TABLE OF AUTHORITIES</u>

<u>**CASES**</u><u> </u> <u>**Page(s)**</u>

*Bodett v. CoxCom, Inc.*, 366 F.3d 736 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . 23

*Brown v. Verizon Directories Sales Corp.*, 151 Fed. Appx. 527
    (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18-19

*Graves v. Finch Pruyn & Co.*, 457 F.3d 181 (2d Cir. 2006) . . . . . . . . . . . . . . . 20

*Jeong v. Minn. Mut. Life Ins. Co.*, 46 Fed. Appx. 448 (9th Cir. 2002) . . . . . . . . 4

*Rexwinkel v. Parsons*, 162 Fed. Appx. 698 (9th Cir. 2006) . . . . . . . . . . . . . . . . 4

*Sanders v. Arneson Products, Inc.*, 91 F.3d 1351 (9th Cir. 1996) . . . . . . . . . 18-19

## STATUTES, RULES AND REGULATIONS                                    Page(s)

29 C.F.R. § 1630.2(j) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19

29 U.S.C. §§ 2611-2654 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1-2

29 U.S.C. § 2615(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1-2, 6

29 U.S.C. § 2615(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1-4, 6

42 U.S.C. §§ 12101-12213 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

42 U.S.C. § 12102(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

Fed. R. Civ. P. 15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

Fed. R. Civ. P. 15(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3-4

Fed. R. Civ. 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

Fed. R. Evid. 801(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

Fed. R. Evid. 802 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8-9

## SUMMARY OF ARGUMENT IN REPLY

With one exception, this is a case involving a dispute over the interpretation of disputed facts pertaining to a series of events occurring over a few weeks in December 2018.

The only disputed issue of law is whether Plaintiff-Appellant Nicolle Foster may proceed to trial against her former employer on a claim of retaliation for exercising her rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2611-2654, in violation of 29 U.S.C. § 2615(a)(2). Although her Complaint does state that Defendant-Appellee Credit One Bank knew that it was unlawful to retaliate against an employee such as Ms. Foster for exercising her rights under the FMLA, the complaint specifically stated only that the employer "interfered" with her rights under the FMLA in violation of 29 U.S.C. § 2615(a)(1). Nevertheless, the issue of FMLA retaliation was fully briefed in District Court's summary judgment proceedings, and, therefore, not only are properly before this Court, but are issues to be adjudicated on the merits in Ms. Foster's case against her former employer.

All other issues before this Court concern the interpretation of disputed, material facts and how those facts apply to well-settled legal principles. This includes the adjudication not only of Ms. Foster's FMLA claims, but her two claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101-12213.

1

## ARGUMENT IN REPLY

## I.

## MS. FOSTER'S FMLA RETALIATION CLAIM
## WAS PROPERLY BEFORE THE DISTRICT COURT

During summary judgment proceedings before the District Court, Ms. Foster asserted that her FMLA claim encompassed both an unlawful interference with her FMLA rights and unlawful retaliation in response to her complaint that her employer had violated her FMLA rights. The line is blurry between what constitutes a claim for unlawful interference with FMLA rights under 29 U.S.C. § 2615(a)(1), and for unlawful retaliation under 29 U.S.C. § 2615(a)(2). Both prongs are under the section titled "interference with rights," under 29 U.S.C. § 2615(a). Blurring the line further, claims for unlawful retaliation are labeled "discrimination" in subsection 29 U.S.C. § 2615(a)(2). Thus, the FMLA statute itself is somewhat loose with the terms "interference," "discrimination," and "retaliation."

Nevertheless, after discovery, once the parties were engaged in briefing on Credit One's motion for summary judgment, the evidence showed that Ms. Foster's rights were violated under both prongs under the heading "interference with rights." Credit One interfered with her rights under 29 U.S.C. § 2615(a)(1), by docking her pay when she had paid time off available. Credit One discriminated against her under

2

29 U.S.C. § 2615(a)(2) in retaliation for Ms. Foster complaining to Human Resources that her former supervisor Dale Mason unlawfully violated her rights under the FMLA by docking her pay. Not only was this second issue under 29 U.S.C. § 2615(a)(2) fully briefed on the motion for summary judgment, the District Court fully addressed this issue in its order granting summary judgment. ER-27-29. This question is on appeal because the District Court erred in how it adjudicated this issue.

Thus, the issue of unlawful "discrimination" against Ms. Foster in retaliation for complaining about Mason unlawfully docking her pay in violation of the FMLA, was fully before the District Court. The District Court adjudicated Ms. Foster's claim under this prong consistently with how the courts address post-trial motions under Fed. R. Civ. P. 15(b) to amend the pleadings to conform with the evidence.

Under Rule 15, "When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings." The District Court adjudicated this issue as if it were in the original complaint. Credit One did not move to strike Ms. Foster raising this issue in her briefing. Instead, Credit One put forth its position with sufficient eloquence to convince the District Court to find that Ms. Foster had not presented sufficient evidence to prevail on her claim under the "discrimination" prong that she suffered retaliation after she voiced opposition to Mason's violation of her FMLA rights.

3

"A party may move – at any time, even after judgment – to amend the pleadings to conform them to the evidence and to raise an unpleaded issue." Fed. R. Civ. P. 15(b). To the extent, if any, that there is a dispute as to whether Ms. Foster's retaliation claim under the FMLA was properly before the District Court, Ms. Foster must be allowed the opportunity to ask for leave of the District Court to amend her pleadings on her FMLA claim to conform with the evidence developed in discovery and put before the District Court in the briefing on Credit One's motion for summary judgment.[1]

Again, this is consistent with the position taken by this Court in *Rexwinkel v. Parsons*, 162 Fed. Appx. 698, 700 (9th Cir. 2006), that the trial courts of this circuit the courts of the circuit may make an independent determination as to the proper FMLA prong under which a plaintiff may proceed, regardless of the precise labeling used in the complaint.

Ms. Foster must be allowed to proceed on her claim that she suffered

---

[1] According to this Court, "An amendment of pleadings to conform to proof at trial is proper under Rule 15(b) unless it results in prejudice to one of the parties." *Jeong v. Minn. Mut. Life Ins. Co.*, 46 Fed. Appx. 448, 450 (9th Cir. 2002). Given that Credit One was able to fully address the retaliation issue in its briefing on its motion for summary judgment, clearly there was no prejudice to Credit One in treating Ms. Foster's retaliation claim under 29 U.S.C. § 2615(a)(2) as if it were part of her original complaint. Thus, applying this rule in favor of Ms. Foster at the summary judgment stage is even more compelling than it would be at, or after, trial.

"discrimination" in retaliation for her protected opposition to Mason unlawfully violating her rights under the FMLA. Mason docked her pay when she had available paid leave time. The violation was corrected, but only after Ms. Foster complained. That complaint cost Ms. Foster her 11-year career with Credit One.

Credit One argued that there is no right to paid leave under the FMLA. *See* Answering Brief of Appellee at 33, DktEntry 20.1, p. 41 of 56. Credit One is correct on that point. But that is not the issue. It is an act of unlawful interference, meant to chill the exercise of one's rights under the FMLA, to dock an employee's pay for using FMLA leave when (a) that employee had paid time off on the books, (b) the employee would have been able to use paid leave if the reason for the absence was something other than FMLA, and (c) the employer specifically instructed its supervisors to allow the employee to use paid leave first for her FMLA time and a supervisor with a long history of bullying and harassing Ms. Foster chose to disregard that direct order.

Credit One is wrong about this point of law. Ms. Foster must be allowed to proceed on a claim for unlawful "discrimination," done in retaliation for Ms. Foster complaining that Mason violated her rights under the FMLA, when Mason docked Ms. Foster's pay when she used three days of intermittent FMLA leave. This happened in early December 2018, a few days before Mason had Ms. Foster fired.

5

Ms. Foster offered evidence sufficient to establish that Credit One unlawfully and willfully interfered with her FMLA rights under 29 U.S.C. § 2615(a)(1),[2] and that Credit One unlawfully and willfully discriminated against her after she complained it interfered with her FMLA rights, in violation of 29 U.S.C. § 2615(a)(2). Both issues were before the District Court. Both issues should be adjudicated by a jury.

## II.

## GENUINE ISSUES OF MATERIAL FACT PRECLUDE ENTRY OF SUMMARY JUDGMENT AGAINST NICOLLE FOSTER

### A.

### Credit One's Primary Argument That It Is Entitled to Summary Judgment Fails Because It Is Based on Inadmissible Hearsay

Credit One's primary argument is that someone – not identified – allegedly said to an Assistant Vice President of Human Resources that Ms. Foster supposedly used very offensive language in regard to her former supervisor who had just unlawfully docked her three days' pay. It is as if Credit One believes that if it just keeps

---

[2] The District Court found that Credit One's interference with Ms. Foster's rights under 29 U.S.C. § 2615(a)(1) was not willful as a matter of law because Credit One quickly corrected the matter once it was brought to their attention. ER-27. This was an error. Ms. Foster brought the error to the attention of Credit One and was promptly fired. A jury may well find that Ms. Foster's firing was unrelated to her complaint about Mason interfering with her FMLA rights. That is the jury's right. However, that is not a question that should have been answered as a matter of law.

repeating its accusation that Ms. Foster used the words "N****" and "F*****," this will sufficiently taint Ms. Foster in the eyes of the court, creating a prejudicial disgust that would entitle Credit One to summary judgment.

Prejudicial hearsay is not an argument entitling an employer to summary judgment. Repetition does not make the false accusation admissible. Even if this vile accusation were admissible, it does not make the allegation undisputed. The rules of evidence still apply, even with an accusation of racial and homophobic slurs being used in the workplace. In fact, the more inflammatory the allegation, the more important the rules of evidence become.

Well-established case law going back forbids the District Court from accepting as true a defendant's characterization of disputed facts in adjudicating a summary judgment motion. Evidence is not entitled to greater weight simply through repetition. Twelve times in one brief Credit One falsely states that Ms. Foster once used the word "N****" in a conversation about Mason. Twelve times it states that Ms. Foster once said "F*****" in regard to Mason. Still, no matter how many times Credit One repeats this redacted racial slur and homophobic slur, it does not render the accusation undisputed and dispositive for purposes of summary adjudication.

Credit One failed to offer an admissible, legitimate, non-discriminatory, non-retaliatory reason for firing Ms. Foster, a firing that happened shortly after Ms. Foster

complained about the violation of her FMLA, on the day after her intermittent FMLA leave requested by her therapist expired, and four days before Christmas.[3]  Its motion for summary judgment should have been denied.

First, Ms. Foster's alleged use of this language is a material fact in dispute. Ms. Foster strongly denied ever using these words in the workplace, whether against Mason, or anyone else.  ER-36-37.  This Court must accept her denial as true for purposes of summary adjudication under Fed. R. Civ. 56.  The offensiveness of the language purportedly used should never be used a reason for giving any credence to such a false allegation.[4]  Because this is a genuine issue of material fact, this allegation should never have been the basis for granting summary judgment.

Second, the evidence of the use of these two slurs was put before this Court in the form of inadmissible hearsay.  Hearsay is wholly inadmissible under Fed. R. Evid.

---

[3]  Ms. Foster's treating therapist filed for intermittent FMLA leave for Ms. Foster for the time period of June 30, 2018, to December 17, 2018.  ER-162.  Credit One claims that Ms. Foster allegedly used a racial and homophobic slur in the company lunchroom on December 18, 2018, *see, e.g.,* SER-305, the very next day after Ms. Foster's intermittent FMLA request expired and Ms. Foster no longer would have had the protections of intermittent FMLA leave.

[4]  It would be reasonable for a jury to infer that Mason believed he needed to make the accusation against Ms. Foster extreme and inflammatory in order to get this employee fired – one with whom Mason had been at loggerheads for years – right after that employee complained that Mason violated her FMLA rights and immediately after corporate vice presidents counseled Mason for violating Ms. Foster's FMLA rights.

802 unless it falls within one of the limited exceptions to the hearsay rule set forth in statute or the Federal Rules of Evidence. The oft-repeated allegation of a single use of this language was offered into evidence through the Affidavit of Megan Lago, Assistant Vice President of Human Resource, in order "to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c)(2). Credit One clearly wants this Court to believe its disputed claim that Ms. Foster indeed said the slurs that Credit One and Ms. Lago claim she said.

No exception to the hearsay rule applies here. Credit One does not even bother to tell this Court who the individuals were who accused Ms. Foster of using what is these two offensive slurs. Ms. Lago mentions only one Credit One employee by name. That was Rosinya Williams, who never alleged that Ms. Foster used inappropriate slurs in the workplace. SER-305. Otherwise, these allegations are made in the passive voice.[5] This completely diminishes any credibility that should be given.

---

[5] According to Ms. Lago's Affidavit:

> **I was notified** that Plaintiff made derogatory remarks to her coworkers referring to Team Manager Allen [Dale] Mason's race and sexual preference on December 18, 2018. Specifically, **it was reported** that Plaintiff called Mr. Mason a N***** and a F*****. **It was also reported** that Plaintiff said she was going to get Ms. Mason fired for discussing her personal information[.]

SER-305 (emphasis added).

9

The reason for the passive voice is clear. There is a significant chance that Ms. Lago did not hear these accusations directly from the two individuals accusing Ms. Foster. Testifying under oath at Ms. Foster's hearing over her claim for unemployment benefits, Vera Yanez-Tourigny, the Assistant Vice President of Human Resources, claimed that she was the one who heard this from two individuals unnamed by Ms. Lago. ER-36. In all likelihood, she heard the accusation from Mason himself, as the statements against Ms. Foster were addressed to Mason.[6] *Id.*

This means that Ms. Lago's affidavit testimony is, quite possibly, triple hearsay. Ms. Lago heard it from Ms. Yanez-Tourigny, who heard it from Mason, who said he heard it from two of his close friends that he supervised. Triple hearsay is essentially an extended game of "telephone," where a statement gets repeated from person to person to person, leading to a great risk of distortion in the re-telling. In the game, the results can be comical. Here, the results were deadly serious. The triple hearsay statements cost Ms. Foster her career.

These triple hearsay statements should not be admitted into evidence.

Third, Credit One falsely – or at least misleadingly – claims it is undisputed

---

[6] To the extent that this Court will consider these statements in the summary judgment adjudication and not deem them to be inadmissible hearsay, it should be pointed out that one of the accusations was made in an email to Mason, *see* ER-179, while the other was a hand-written note to Mason, *see* ER-180.

10

that Credit One received reports that Ms. Foster used a racial and a homophobic slur in the workplace. *See* Answering Brief at 19, DktEntry 20.1, at p. 27 of 56. Phrased in the passive voice, the statement appears to be correct. Apparently a report was made that Ms. Foster used two slurs, on one occasion, in a discussion about Mason. The report is inadmissible hearsay whether in active or passive voice. It also is very misleading because there is a genuine issue of fact as to who made the report. This may explain why Credit One used the passive voice. Ms. Yanez-Tourigny claimed that it was two of Ms. Foster's peers who heard it in the employee lunchroom. But the unauthenticated statements allegedly written by Ms. Foster's co-workers make it clear as these accusations were brought to human resources by Mason himself. Mason made these false accusations against Ms. Foster right after she caused two corporate vice presidents to counsel Mason because of Mason's violation of Ms. Foster's FMLA rights. ER-35. So this report is not undisputed because the source of this accusation is one of the key issues of material fact.

Ms. Yanez-Tourigny lied under oath. This is the actual "perjury" derided and minimized by Credit One. *See* Answering Brief at 2, DktEntry 20.1 at p. 10 of 56. This is a key part of the evidence that Credit One's FMLA violations were willful.

Finally, as inflammatory as this accusation is, Credit One fails at being honest with this Court as to what Ms. Foster was alleged to have said. Credit One falsely

11

and repeatedly claimed in its Answering Brief that someone, unnamed by Credit One, accused Ms. Foster of calling Dale Mason the n-word.  *See, e.g.,* Answering Brief at 5, DktEntry 20.1, at p. 13 of 56 ("the undisputed evidence shows that Foster was terminated as a result of her own conduct: violating Credit One's policies by using obscene language, referring to her former supervisor as a N**** and a F*****") There was no such allegation, period.  Ms. Foster, who is black/African-American, was falsely accused of saying that Mason "only mess with n_____ [.]" ER-180.  The phrasing indicates that the co-workers accused Ms. Foster of calling herself one of those with whom Mason would "mess."  This is not to minimize the fac that also would be offensive if it had happened.  However, when Defendant-Appellee is arguing to this Court that summary judgment should be upheld based on co-worker allegations against one of its former employees, it at least be honest with this Court as to what those allegations actually were, instead of mis-stating them in an attempt to make the allegation even worse.

**B.**

### Genuine Issue of Material Fact Preclude Summary Adjudication of Ms. Foster's FMLA Willful Interference and Retaliation Claims

The critical question of fact regarding Ms. Foster's FMLA interference and retaliation claims is the causal link among Ms. Foster's termination, her FMLA use,

and her complaint about Mason interfering with her rights under the FMLA. Credit One claims that it fired Ms. Foster for the sole and exclusive reason that she once used a racial slur and a homophobic slur when discussing Mason with co-workers in the company lunch room. Ms. Foster offered evidence to the contrary, evidence from which it reasonably may be inferred that Credit One fired her at Mason's behest because she got Mason in trouble with corporate management after he unlawfully violated her rights under the FMLA. That is the genuine issue of material that should preclude summary judgment on the FMLA interference and retaliation claims.

Ms. Foster offered evidence to support her position that Mason violated her FMLA rights. Mason docked her pay when she was on three days of FMLA leave. Immediately after she complained to Taylor and human resources after she discovered that her pay had been docked, *see* ER-34, Credit One fired her in retaliation for her complaint about Mason's interference with her FMLA rights. Mason was Ms. Foster's fill-in supervisor the first week of December 2018. Her regular supervisor was out and, for a critical few days, Ms. Foster once again was under the supervision of a person who had long bullied and harassed her, causing her to lose incentive bonuses. This unrelenting pattern of bullying and harassment was why Ms. Foster asked to be removed out from under Mason's supervision several months before.

In its Answering Brief, Credit One continued its pattern of refusing to

13

recognize the severity of Mason's animosity toward Ms. Foster. Credit One dismissed Ms. Foster's request to be transferred away from Mason as merely being about a performance evaluation: "Unsatisfied with her May 15, 2018[,] performance evaluation, Foster requested to be assigned to a different manager." Answering Brief at 7, DktEntry 20.1 at p. 15 of 56. This gross mischaracterization of Ms. Foster's problems with Mason is not supported by the Ms. Foster's deposition transcript section cited by Credit One. According to Ms. Foster's testimony, "the hostile work environment" was why she asked to be removed from Mason's supervision. SER-103. She agreed that the unfair performance evaluation was "the last straw," but it certainly was not her primary motivator. *Id.*

Credit One's attempt to minimize Ms. Foster's continuing problems with Mason, claiming them to be based on dissatisfaction with one performance evaluation, is an attempt to conceal the fact that when Mason's actions when he was her fill-in supervisor for that week in December 2018 was part of a long-term pattern of abusive misconduct and harassment by Mason toward Ms. Foster. This is the causal link between Ms. Foster's complaint about Mason violating her FMLA rights and Mason concocting the false allegation against Ms. Foster that Ms. Foster used inappropriate slurs in the company lunchroom when discussing Mason.

Credit One falsely claims that Ms. Foster failed to offer evidence that Mason

14

knew that Ms. Foster complained of her FMLA rights. Answering Brief at 14, DktEntry 20.1 at p. 22 of 56. In fact, the failure to present evidence on this point was from Credit One, not from Ms. Foster. Ms. Foster offered unrefuted evidence that Mason was counseled for violating Ms. Foster's FMLA rights. Ms. Foster stated in her affidavit that Terrence Taylor, her regular supervisor, told her that corporate vice presidents Rafe Dunlap and Rayna Jasper would "talk" with Mason about Mason violating Ms. Foster's FMLA rights. ER-35. This "talk" that Taylor referenced happened soon after Ms. Foster returned from FMLA leave on December 10, 2018. Thus, Mason knew. At least, it is a reasonable inference to be drawn from the evidence presented that Mason would have known that Ms. Foster formally complained about his violation of the FMLA immediately before he brought the false allegation to human resources that Ms. Foster used a racial slur and a homophobic slur in the workplace on one occasion, on December 18, 2018. Credit One offered no evidence in response, whether from Mason, or Taylor, or either of the corporate vice presidents.

Credit One insinuates that it was only Ms. Foster who believed that Mason interfered with her FMLA rights at that time. Answering Brief at 10, DktEntry 20.1 at p. 18 of 56. According to the evidence before this Court, it was not just Ms. Foster who thought this to be. Again, it is undisputed and unrefuted that Taylor, and Vice

15

Presidents Dunlap and Jasper, also believed that Mason unlawfully interfered with Ms. Foster's FMLA rights. Again, Credit One offered no evidence to the contrary from any of these key witnesses.

Finally, Credit One contends that it cannot be held liable for violating Ms. Foster's FMLA rights because it corrected the violation – and counseled Mason about it – soon after the wrong was brought to this attention. Answering Brief at 34, DktEntry 20.1 at p. 42 of 56. It is true that Credit One eventually paid Ms. Foster for the time it unlawfully docked from her pay, notwithstanding the company's email directive to Ms. Foster's supervisors, *see* ER-173, that Ms. Foster must use paid time off for her FMLA leave. However, Credit One did not pay Ms. Foster for the time incorrectly and unlawfully deducted from her pay until after Credit One fired Ms. Foster. ER-35. Ms. Foster was paid for this time off on her final paycheck, which she did not receive until after she was fired. Thus, when an employer corrects its error only after it has fired the employee who brought the error to its attention, this should not be used be to find that, as a matter of law, the company's violation of the FMLA was not "willful" and was not done in bad faith. It is a very small consolation when you get the money that had been illegally deducted from your pay paid to you on your final paycheck only after you have been fired and your 11-year career has been destroyed within days of reporting a violation of the FMLA. This was the

16

definition of a pyrrhic victory. It does not absolve Credit One of liability for willfully violating the FMLA.

Again, Credit One's entire argument can be reduced to its claim that Ms. Foster was a bad person, who used offensive language, and, therefore, she cannot be entitled to the protections of this nation's employment laws. This would explain why Credit One went into detail about Ms. Foster's disciplinary history even though Ms. Foster was not fired for reaching the final point in a multi-stage progressive disciplinary system. *See* Answering Brief at 6, DktEntry at p. 14 of 56. Ms. Foster's termination notice plainly states that Ms. Foster was fired because "two employees" allegedly "reported inappropriate, offensive comments relating to sexual orientation and race[.]" ER-195. Ms. Yanez-Tourigny testified under oath that this was the only reason why Ms. Foster was fired and that Ms. Foster "was not fired for any issues relating to problems with actual job performance, attendance, or production." ER-36. Thus, Credit One's fixation on Ms. Foster's prior disciplinary write-ups for attendance or job performance simply was done to argue that Ms. Foster was a bad person. It is not relevant to the issue of the propriety of Credit One's termination decision.

**C.**

## Genuine Issues of Material Fact Preclude Summary Adjudication of Ms. Foster's Disability Discrimination and Retaliation Claims

Ms. Foster also alleged that she suffered discrimination and retaliation on account of her disability, which was long-term depression and anxiety. She requested medical leave as an accommodation. She was fired within a few days of the second time she used leave, and within a few days of complaining that she was improperly docked three days' pay when she was on leave and had paid time off on the books. Ms. Foster offered evidence to create genuine issues of material fact that preclude summary adjudication of her two disability claims under the ADA.

First, Credit One claimed that Ms. Foster is not disabled. Answering Brief at 22, DktEntry 20.1, at p. 30 of 56 ("Foster is not disabled as defined by the ADA"). This is in dispute:

1. Ms. Foster was diagnosed with severe depression. Long-term depression is a covered disability under the ADA.[7] *See, e.g., Brown v. Verizon Directories Sales*

---

[7] In *Sanders v. Arneson Products, Inc.*, 91 F.3d 1351 (9th Cir. 1996), this Court analyzed this issue as follows:

> We consider here whether Sanders' psychological impairment is a "disability," as that term is used in the ADA. Section 12102(2)(A) defines disability as "a physical or mental impairment that substantially limits one or more of the major life activities of the individual." The

(continued...)

18

*Corp.*, 151 Fed. Appx. 527, 528 (9th Cir. 2005). In this case, according to Ms. Foster's therapist, Ms. Foster suffered from "severe depression," *see* ER-153, which went back to when Ms. Foster witnessed her boyfriend being murdered, *see* ER-150. That happened in 2007. ER-31. Thus, Ms. Foster had been suffering from depression and anxiety that went back to events that happened over a decade earlier.

2.     Ms. Foster's long-term depression affected one or more major life activities. Ms. Foster's treating therapist specifically identified "sleep disturbance" as a consequence of Ms. Foster's disability. ER-150.

3.     At the time of Ms. Foster's termination, the continuing duration of Ms.

---

[7](...continued)

> term "substantially limits" is defined in 29 CFR § 1630.2(j). Section 1630.2(j)(2) lists three factors to consider in determining whether an individual is substantially limited in a major life activity: "(i) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." Several courts have held that a temporary injury with minimal residual effects cannot be the basis for a sustainable claim under the ADA[.]
> Sanders' temporary psychological impairment, from December 19, 1992 to April 5, 1993, with no residual effects after April 5, 1993, was not of sufficient duration to fall within the protections of the ADA as a disability.

*Id.*, 91 F.3d at 1354. Thus, like a broken bone from which one is expected to heal, a mere five-month episode of depression was not a covered disability under the ADA. This is readily distinguishable from Ms. Foster's long-term condition.

19

Foster's depression was unknowable. In 2018, Ms. Foster twice needed to use FMLA leave because of her disabling stress and anxiety. The first time was that summer. The second was for three days during the first week of December 2018. Ms. Foster had experienced trauma going to back for more than a decade. It is reasonable to conclude, moving forward, that Ms. Foster's disabling depression and anxiety would continue indefinitely.

Second, Credit One claimed that Ms. Foster was not disabled because she could return from work following periods of FMLA leave. Answering Brief at 38, DktEntry 20.1, at p. 46 of 56. Ms. Foster needed an accommodation to perform the essential functions of her job. In her case, it was leave time. Again, leave time under the FMLA is a form of accommodation recognized under the ADA. *See, e.g., Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 185 (2d Cir. 2006). If being able to return after needing and receiving a medical leave of absence disqualified an employee from claiming to be disabled under the ADA, then no employee who returned to work from medical leave, and subsequently suffered an adverse employment action, would be able to allege unlawful discrimination or retaliation under the ADA. Returning from a brief leave does not mean one was "cured" of his or her disability. It means only that the employee can return to work after that period of accommodation.

Third, Credit One claims that it is dispositive that Ms. Foster "does not believe

20

that she was terminated because of her medical condition." Answering Brief at 12, DktEntry 20.1 at p. 20 of 56. Ms. Foster is not an expert on ADA law. Credit One never told Ms. Foster that she was fired because she suffered from depression and anxiety. Indeed, she went on FMLA leave back in June 2018 for these medical conditions and was not immediately fired then. However, when Ms. Foster used medical leave as a reasonable accommodation to her disability, and she complained that she had not been properly compensated for this period of accommodation, Ms. Foster suffered an adverse job action. Mason docked her pay. Without using legalistic magic words, Ms. Foster complained that Mason had violated her FMLA rights and failed to provide the necessary reasonable accommodation by not allowing her to use paid leave for the time off that she needed because of her disability. Within a few days of her complaint, she was fired. And she was paid for her leave time only after she had been fired. This is not the same thing as being fired directly because of her diagnosis.

That chain of events is undisputed. Credit One would argue that this line of reasoning omits a key fact. The key fact that Credit One would contend has been admitted is the genuine issue of material fact precluding summary judgment.

Credit One offered an allegedly non-discriminatory reason for firing Ms. Foster after 11 years on the job. Credit One stated for the sole and exclusive reason that it

fired Ms. Foster is because, on one occasion, right after she got Mason in trouble for violating her legal rights under the ADA and the FMLA, Ms. Foster used a racial slur and a homophobic slur in the company lunch room. Ms. Foster has offered indirect evidence of pretext in support of her disability claims that she was fired as a result of her use of medical leave as an accommodation to her disability and her complaint about the ADA violation. This dispute is for a jury to resolve.

## **CONCLUSION**

Credit One fundamentally misstated the de novo standard of review for motions granting summary judgment. According to Credit One:

> Instead, Foster offers an unsupported narrative full of accusations of sinister revenge, sordid collusion and outright lies, including even allegations of perjury before an administrative body. Her entire opposition to the District Court's granting of Credit One's summary judgment **hinges on this Court blindly accepting this narrative**, revealed not even through Foster's words, but mostly her attorney's argument consisting of generous, even extreme, extrapolation of what Foster does offer.

Answering Brief at 2, DktEntry 20.1, at p. 10 of 56 (emphasis added). Ms. Foster's argument against summary judgment does not "hinge" on this Court "blindly accepting" her version of events. We do not ask this Court to do so. We ask this Court only to recognize that there are two sides to this story. That means that there

22

are genuine issues of material fact. This is a question for the jury to decide.

What Credit One denigrates as "extrapolation" is a statement of the reasonable inferences that may be drawn from the evidence presented by Ms. Foster. Again, summary judgment is appropriate only where, "drawing all reasonable inferences supported by the evidence in favor of the non-moving party," the court finds "no genuine disputes of material fact exist." *Bodett v. CoxCom, Inc.*, 366 F.3d 736, 742 (9th Cir. 2004). Thus, it is reasonable and appropriate to point out the inferences, or what Credit One derisively dismisses as "extrapolations," that a jury reasonably may draw from the evidence presented.

Therefore, Nicolle Foster respectfully asks this Court to reverse the District Court's Order, ECF No. 48, granting summary judgment, and the subsequent Judgment, ECF No. 49, and to remand this matter to the District Court for trial.

Respectfully submitted,

LAW OFFICES OF ROBERT P. SPRETNAK

By: /s/ Robert P. Spretnak
    Robert P. Spretnak, Esq.

Attorney for Nicolle Foster, Plaintiff-Appellant

8275 S. Eastern Avenue, Suite 200
Las Vegas, Nevada 89123

23

**Certificate of Compliance Pursuant to Fed. R. App. P. 32(a)(7)(C)
and Circuit Rule 32-1 for Case Number 23-2983**

I certify that: **(check appropriate option(s))**

_x_ 1.  Pursuant to Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit Rule 32-1, the
attached opening/answering/reply/cross-appeal brief is

■    Proportionately spaced, has a typeface of 14 points or more and contains
**5,637** words (opening, answering, and the second and third briefs filed
in cross-appeals must not exceed 14,000 words; reply briefs must not
exceed 7,000 words),

**or is**

❏    Monospaced, has 10.5 or fewer characters per
inch and contains _____ words or _____ lines of
text (opening, answering, and the second and
third briefs filed in cross-appeals must not
exceed 14,000 words or 1,300 lines of text;
reply briefs must not exceed 7,000 words or 650
lines of text).

__ 2.  The attached brief is not subject to the type-volume limitations of Fed. R. App.
P. 32(a)(7)(B) because

❏    This brief complies with Fed. R. App. P. 32(a)(1)-(7) and is a principal
brief of no more than 30 pages or a reply brief of no more than 15 pages;

❏    This brief complies with a page or size-volume limitation established by
separate court order dated _____ and is

❏    Proportionately spaced, has a typeface of 14 points or more and
contains _____ words,

**or is**

❏    Monospaced, has 10.5 or fewer characters per
inch and contains _____ pages or _____ words
or _____ lines of text.

24

__ 3. *Briefs in Capital Cases*
> ❑ This brief is being filed in a capital case pursuant to the type-volume limitations set forth at Circuit Rule 32-4 **and is**
>> ❑ Proportionately spaced, has a typeface of 14 points or more and contains _____ words (opening, answering, and the second and third briefs filed in cross-appeals must not exceed 21,000 words; reply briefs must not exceed 9,800 words)
>
> **or is**
>> ❑ Monospaced, has 10.5 or fewer characters per inch and contains _____ words or _____ lines of text (opening, answering, and the second and third briefs filed in cross-appeals must not exceed 75 pages or 1,950 lines of text; reply briefs must not exceed 35 pages or 910 lines of text).

__ 4. *Amicus Briefs*
> ❑ Pursuant to Fed. R. App. P. 29(d) and 9th Cir. R. 32-1, the attached amicus brief is proportionally spaced, has a typeface of 14 points or more and contains 7000 words or less,
> **or is**
> ❑ Monospaced, has 10.5 or fewer characters per inch and contains not more than either 7000 words or 650 lines of text,
> **or is**
> ❑ **Not** subject to the type-volume limitations because it is an amicus brief of no more than 15 pages and complies with Fed. R. App. P. 32(a)(1)-(5).

July 18, 2024
Date

/s/ Robert P. Spretnak
Signature of Attorney or
Unrepresented Litigant

25

## <u>CERTIFICATION FOR BRIEF IN PAPER FORMAT</u>

U.S. Court of Appeals Docket Number: 23-2983

I, Robert P. Spretnak, certify that this brief is identical to the version submitted electronically on July 18, 2024, pursuant to Rule 6(c) of the Administrative Order Regarding Electronic Filing in All Ninth Circuit Cases.

Date: _____, 2024.

Signature:  LAW OFFICES OF ROBERT P. SPRETNAK


By: _____
        Robert P. Spretnak, Esq.

Attorney for Nicolle Foster, Plaintiff-Appellant

8275 S. Eastern Avenue, Suite 200
Las Vegas, Nevada 89123